IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO. 25-cv-01524

JAMIE MANNINA

       Plaintiff,

v.

O'KEEFE MEDIA GROUP,
JAMES O'KEEFE, and
HEIDI DOE,

       Defendants.

_____/

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND MOTION FOR A MORE DEFINITE STATEMENT**

       The Defendants, O'KEEFE MEDIA GROUP (hereinafter referred to as "OMG"), JAMES

O'KEEFE, hereby file their Rule 12(b)(6) Motion to Dismiss the Plaintiff's Complaint, and in

support thereof, states as follows:

       When assessing every allegation in Mr. Mannina's complaint and taking them as true, the

facts are legally insufficient to establish each of the claims in Mr. Mannina's complaint, as the

claims are simply do not sufficiently aver a claim in any of the 5 Counts.

***Count I - - Defamation***

       The Complaint alleges that:

> 47. Defendants falsely state or imply in their videos and articles that
> Mr. Mannina was a senior Pentagon Official providing direct advice
> to the CJCS and part of a subversive "Deep State" that held covert
> meetings with retired military leaders, including admirals and
> generals, who were collaborating from within the Pentagon on the
> means to undermine and counteract the incoming Trump
> administration. These meetings supposedly took place in highly
> secure locations, including "The Tank", (sic) that were "reserved for

critical defense deliberations." The Defendants further falsely state or imply that Mr. Mannina, in his official capacity, was lying, spying, conspiring to commit a coup, and acting unethically.

Additionally, the defamation claim rests on statements contained in paragraphs 41 through 45, which are labeled as the "*False Statements & False Implications."* These are identified and addressed below.

### A. **_The Alleged False Statements & False Implications are not Actionable._**

The Defamation claim rests on statements contained in Paragraphs 41 through 45, which the complaint labels as the "*False Statements & False Implications."* Mr. Mannina claims that several statements made by the Defendants were supposedly defamatory. However, these statements are either 1) facts, 2) opinions, and/or 3) immaterial, *de minimis non curat lex* mistakes, as the statements contained within the articles are merely restatements of Mr. Mannina's statements. Regardless, the statements in Count I are as follows:

**1. Mr. Mannina had "plans to utilize irregular strategies to undermine Donald Trump's presidency."**

That statement was an accurate description/opinion made by OMG based on Mr. Mannina's own recorded comment stating he was "in conversation with a couple of retired generals to try and explore what we can do" referring to interfering with the Trump Administration, between the 5:48-6:11 minute marks of the YouTube video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)."

Fundamentally, Mr. Mannina made a major mistake. In an effort to impress a young lady on a date, he spilled the beans which he was either sworn to keep private, or the beans of his seditious thoughts and plans. Mr. Mannina is nothing less than a traitor to our country, who got caught and had the gall to turn around and sue a news reporter to reveal the truth.

2

Mr. Mannina apparently believes that in a perfect world, if one plans to undermine the President of the United States, and expresses his plans, the recipient of his evil thoughts is honor bound to join and share to become a co-conspirator.

In any event, one cannot successfully be sued for defamation, making an untrue statement, for revealing the secrets of an insurrectionist which were revealed by that insurrectionist.

This statement, like all the others, is not defamatory.  To be defamatory, it must be a statement that is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'"  *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).

## 2.  Mr. Mannina took part in a meeting at the Pentagon regarding technology issues.

It is a fact that Mr. Mannina stated he took part in a secure meeting at the Pentagon regarding technology issues, and that his topic of expertise was Artificial Intelligence ("AI") between the 6:30-9:00 minute marks in the YouTube video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)."

Mr. Mannina did not indicate that this remark was false, other than to have had it in his list of false statements or false implications.  Unfortunately, he never distinguished between the two choices, and this needs to be corrected, as the Defendants cannot discern whether any of his alleged supposedly defamatory remarks are statements or implications.

In any event, if Mr. Mannina made the statement, and his statement is published, there is axiomatically an absence of malice or falsity.

Moreover, for reasons stated above, the remark is not defamatory.

3

**3. Mr. Mannina had made "critical remarks" about President Trump's nominee for Secretary of Defense, Pete Hegseth.**

It is a fact that Mr. Mannina made critical remarks about Trump's nominee for Secretary of Defense, Pete Hegseth between the 9:55-10:45 minute marks of the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

Half the country made negative remarks about Pete Hegseth when he was a nominee for becoming Secretary of Defense.  This is not defamatory.

**4. Mr. Mannina collaborated with senior retired military leaders "to devise methods to counteract Trump's administration."**

This statement is an accurate description/opinion of what Mr. Mannina said; specifically, Mr. Mannina stated he was "in conversation with a couple of retired generals to try and explore what we can do" between the 11:25-12:22 minute marks of the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

The argument in regard to Point 1 above applies to this statement.

**5. Mr. Mannina's meetings with senior retired military leaders "occurred in high-security environments, including 'The Tank,' a secure room within the Pentagon reserved for critical defense deliberations."**

In the video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'," Mr. Mannina explained that he was going to have a meeting with

4

others in the "Tank" at  minute mark 7:25-7:46.  It appears that OMG mistakenly conflated two separate meetings when it stated in the article accompanying the above referenced video that Mr. Mannina's meetings with the retired military leaders were in the Tank.

However, this miniscule mistake is beneath the level of concern which this Court should consider, and the defense of *de minimis non curat lex* applies.  He met with others in the Tank, not necessarily retired generals.  So what?

This statement is not defamatory.  It does not expose him to ridicule.  In fact, it makes him seem more important than he is or was at the time.

To be defamatory, it must be a statement that is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'"  *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).  Furthermore, when evaluating the statement in its full context, which includes the video, as required in *Clawson v. St. Louis Post-Dispatch, LLC*, the publication corrects its own inconsequential error by making it clear that there were two separate meetings, one that happened in the Tank, and one that did not.

6. **Mr. Mannina's "role extended beyond advising military officials" and included work with an advocacy group during the prior election which opposed the re-election of President Trump.**

This is a fact first stated by Mr. Mannina.  At the 12:00-12:20 minute mark of the video titled  <u>BREAKING VIDEO: Top Pentagon Advisor Reveals On Hidden Camera Conversation</u> <u>"with a Couple of Retired Generals to Explore What We Can Do" to 'Protect People from Trump'</u> <u>- O'Keefe Media Group</u>, Mr. Mannina replied to a question about what he can do to stop President Trump from "stuff me might try to do," by stating that "outside of [Mr. Mannina's job], I'm in

5

conversation with a few retired generals to try to explore what we can do."  Furthermore, Mr.

Mannina also confessed to Heidi Doe about his work against President Trump in the most recent

election at the 16:30-18:30 minute mark of the same video.

**7. The "confrontation" between Mr. O'Keefe and Mr. Mannina followed Defendant "OMG's release of undercover footage that detailed Mannina's admission to conversations about plans involving retired generals to take potential actions against President-elect Donald Trump."**

This statement stems from a misunderstanding on Mr. Mannina's part; the word

"confrontation" is referring to the video of the confrontation, and not the confrontation itself.

However, when taking the Complaint true and accurate, the error is ultimately *de minimis non*

*curat Lex*.  It is not damaging or defamatory to fail to specify that the actual confrontation between

Mr. Mannina and Mr. O'Keefe happened at the end of the second date rather than at some other

time.  As previously indicated, a statement is only defamatory when it is "more than unpleasant or

offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson*

*v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).

**8. Mr. Mannina is a "Top Pentagon Advisor," a "Senior Advisor, Joint Staff, Department of Defense" and a "Top Pentagon Official."**

Mr. Mannina spoke to Heidi Doe regarding his role in the pentagon at the 5:47-6:10 minute

mark of the video titled  BREAKING VIDEO: Top Pentagon Advisor Reveals On Hidden Camera

Conversation "with a Couple of Retired Generals to Explore What We Can Do" to 'Protect People

from Trump' - O'Keefe Media Group; Mr. Mannina styled himself as a Top/Senior Pentagon

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

Advisor to the Joint Staff, saying he was "at this top consulting firm and my client is the Pentagon," and that he was "embedded in the Pentagon" by working "in the Joint Staff, which is the top military command." Furthermore, Mr. Mannina went on to say that his boss is the chairman of the Joint Chiefs.

Again, a statement is only defamatory when it is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).

Additionally, given the context of the titles "Top Pentagon Advisor," a "Senior Advisor, Joint Staff, Department of Defense" and a "Top Pentagon Official," the titles themselves are incapable being defamatory. This issue is similar to the *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308 (D.C. 2006) matter, where the Court held the word "informer" to be not either defamatory or reasonably capable of having a defamatory meaning. *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 310 (D.C. 2006).

**B.**  ___Mannina failed to plead each Element of Defamation___

No part of Mr. Mannina's defamation claim (Count I) indicated that the Defendants fault in publishing the statement amounted to at least negligence. Under the applicable law, defamation consists of four elements:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (emphasis added).

Without the inclusion of language that the Defendants fault in publishing the statement

7

amounted to at least negligence, Count I of the Complaint must be dismissed.

***Mr. Mannina failed to plead each Element of Defamation by Implication***

Mr. Mannina also failed to both identify the particular manner or language the Defendants conveyed any statements that supply the additional, affirmative evidence suggesting that the Defendants endorsed any defamatory inference.  This is a required part of a claim for defamation by implication, as "a communication can be defamatory by implication if, by the particular manner or language in which the true facts are conveyed, [the communication] supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *Armstrong v. Thompson*, 80 A.3d 177, 184 (D.C. 2013) (internal quotation omitted).

Without the required language identified in the complaint, Count I must be dismissed.

***Count II - - False Light***

The Complaint alleges that:

> 53. Defendants falsely state or imply in their videos and articles that Mr. Mannina was a senior Pentagon Official providing direct advice to the CJCS and part of a subversive "Deep State" that held covert meetings with retired military leaders, including admirals and generals, who were collaborating from within the Pentagon on the means to undermine and counteract the incoming Trump administration. These meetings supposedly took place in highly secure locations, including "The Tank", (sic) that were "reserved for critical defense deliberations." The Defendants further falsely state or imply that Mr. Mannina, in his official capacity, was lying, spying, and acting unethically.

Similar to Count I for defamation, Count II has many of the same issues as the defamation claim; specifically, the statements published by OMG are true.  The only portions of the publications that were marginally incorrect were immaterial, *de minimis non curat lex* mistakes.

> An invasion of privacy--false light claim requires a showing of: 1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

4) which places the plaintiff in a false light that would be offensive to a reasonable person. *Kitt v. Capital Concerts, Inc*., 742 A.2d 856, 859 (D.C. 1999)

Count I and Count II have many of the same issues because Count I and Count II are based off the same statements and allegations. This was likely done to avoid the problems associated with a defamation claim.

This is not uncommon, as this was addressed by the courts before; "a plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Armstrong v. Thompson*, 80 A.3d 177, 180 (D.C. 2013). "Where the plaintiff rests both his defamation and false light claims on the same allegations the claims will be analyzed in the same manner." Morgan Banks v. Hoffman, 301 A.3d 685, 690 (D.C. 2023).

Additionally, Mr. Mannina's false light claim conspicuously omits the "invasion of privacy" aspect of a false light claim, because Mr. Mannina made every in public statement, in plain view of others.

### *Count III - - Fraudulent Misrepresentation*

The Complaint alleges that:

> 59. At the behest of Defendants OMG and O'Keefe, Defendant Heidi Doe knowingly and deliberately misrepresented herself to Mr. Mannina for the purpose of targeting and entrapping him into making remarks that could be distorted for political and harmful purposes. Heidi offered up a false version of herself through her Bumble profile and throughout the course of her interactions with Mr. Mannina during their two dates, particularly to provide a false image of her political views. She deliberately misrepresented her intent in posting her profile on Bumble, which violated the terms and conditions and community guidelines by creating an "inauthentic profile." Heidi was not interested in seeking romantic connections, nor was she personally interested in Mr. Mannina. She was simply part of an intentional targeted operation against individuals perceived to be Democrats to materially and falsely discredit them.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

If this Court accepts the notion that it should weigh in on, and ultimately rule on, a fraudulent misrepresentation made in furtherance of an ulterior motive during a date, every teenager would be a defendant, and every first date would be a law school hypo.

Regardless, Mr. Mannina's claim falls flat as to OMG and Mr. O'Keefe, as the complaint makes no mention of any false misrepresentation made by OMG or Mr. O'Keefe to Mr. Mannina. To the contrary, Mr. Mannina clearly states that "Heidi's false misrepresentations were material to inducing Mr. Mannina to engage with her."

> In order to prove fraudulent misrepresentation, a plaintiff must prove "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages. *Kumar v. D.C. Water & Sewer Auth*., 25 A.3d 9, 15 n.9 (D.C. 2011) (internal citations omitted).

To maintain a claim for fraud, one must indicate exactly what the false statement is, where it was made, and when. Averments of fraud require that the Complaint provides particularity. See Rule 9(b) of the F.R.Civ.P. The Complaint fails to provide this information.

This is not just a technicality. The Plaintiff has a difficult time describing the tort, which is in reality no tort, at all. If women could be blamed for looking interested when they are not truly interested, or for claiming a political affiliation, for access or information, the entire world would be standing on its head.

Instead of blaming himself for having a big mouth and spilling secrets, he blames a lady for not being honest as to her motives. This was Mr. Mannina's chance in life to measure up for his cause of sedition against the government of the United States, and for a pretty smile, he chose to brag and reveal his secrets. This cannot be Mr. Mannina's fault, according to Mr. Mannina. It

10

is her fault, because she did not reveal that she did not share his values.  The audacity is similar to

a man who kills his parents and then throws himself upon the mercy of the court, claiming that he

is an orphan.

Here, the alleged fraudulent misrepresentation cited in the complaint allegedly caused Mr.

Mannina to go on a date with Heidi Doe; any Fraudulent Misrepresentation that took place did not

cause Mr. Mannina to divulge information regarding Mr. Mannina's work at the Pentagon, nor did

it cause Mr. Mannina to speak about his work to undermine the Trump Presidency.

### _Count IV - - Conspiracy to Commit Fraudulent Misrepresentation_

Any conspiracy must include the underlying wrong.  Here, the claim of conspiracy is to

commit fraud.  Therefore, all the arguments in the previous section pertaining to the Fraud count

apply to the conspiracy to commit fraud.

The Complaint alleges that:

> 65. The Defendants conspired to have Heidi knowingly and
> deliberately misrepresent herself to Mr. Mannina for the purpose of
> entrapping him into making inflammatory and damaging remarks.
> The Defendants arranged for Heidi to knowingly provide Mr.
> Mannina with false information regarding herself, particularly with
> respect to her political views.

> 66. Defendants OMG and/or O'Keefe employed or contracted with
> Heidi for the purpose of targeting former or current civil servants
> such as Mr. Mannina in order to entrap them into making
> inflammatory and damaging remarks that could be manipulated and
> sensationalized in videos that would be posted online.  The
> Defendants conspired with each other to knowingly provide Mr.
> Mannina with false information in order to secretly record his
> conversations and distribute selected excerpts and clips without his
> authorization.

For there to be a justiciable claim for conspiracy, the Plaintiff is required to plead that he

suffered injury because of the fraudulent misrepresentation.  In Count IV of the Complaint, there

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

was no claim that Mr. Mannina suffered injury because of fraudulent misrepresentation.  Every

claim in the complaint must allege that there was damage, and because count IV does not, it must

be dismissed.  Additionally, should this Court dismiss Count III of the Complaint, Count IV should

also be dismissed, as it is not an independent claim.  *See Robertson v. District of Columbia,* 269

A.3d 1022, 1034 (D.C. 2022).

### *Count V - - Violation of 18 U.S.C. § 2511 and D.C. Code § 23-542 – Wire Tap Acts*

The Complaint alleges that:

> 69. Defendants recorded both dates and the ambush without the consent or authorization of Mr. Mannina.  Mr. Mannina was not aware the dates were being recorded and he objected numerous times to being recorded as part of the ambush by Defendants OMG and O'Keefe.

> 70. Notwithstanding the District of Columbia being a one-party consent jurisdiction, 18 U.S.C.§ 2511 and D.C. Code § 23-542 nonetheless prohibit the interception and recording of a communication if it was for the purposes of committing a tortious act.

As plead, the facts do not allege that any of the Defendants intercepted the specific types

of communications covered by 18 U.S.C. § 2511 or D.C. Code § 23-542.  It was always understood

that D.C. Code § 23-542, which broadly mirrors the 18 U.S.C. § 2511, specifically refers to oral

communications originating from electronic sources, as described in United States v. Sullivan, 116

F. Supp. 480 (1953):

> It is obvious from the phraseology of the statute that it was aimed at actions of two types: first, it sought to prohibit a telephone switchboard operator from divulging any conversation that may be overheard, or telegraph or radio operator from disclosing the contents of a telegram or radiogram; and second, it sought to preclude any unauthorized person from surreptitiously attaching some mechanical apparatus to a telephone or telegraph wire and thereby listening to or otherwise intercepting communications passing over the wire, without the knowledge of the parties to the

12

conversation or message as the case may be.  *United States v. Sullivan*, 116 F. Supp. 480, 481 (1953)

Additionally, and similar to this case, *Stewart v. City of Okla. City*, 47 F.4th 1125 (10th Cir. 2022) states that 18 U.S.C. § 2511 did not apply, as the statements at issue occurred in full public view and were plainly visible—and audible—to any passersby.

With this context, Count V fails to state a cause of action upon which relief can be granted.

WHEREFORE, the Defendants, O'KEEFE MEDIA GROUP (hereinafter referred to as "OMG"), JAMES O'KEEFE, and HEIDI DOE, ask this honorable Court to grant the Defendants' Motion to Dismiss the Plaintiff, JAMIE MANNINA's Complaint with prejudice, and further award such further and other relief as this honorable Court may deem just and proper.

13

## DESIGNATION OF EMAIL ADDRESSES FOR SERVICE

The undersigned attorneys of The Ticktin Law Group, hereby designate the following Email Address(es) for service in the above styled matter. Service shall be complete upon emailing to the following email address(es) in this Designation, provided that all provisions for the District of Columbia regarding service via email are met.
**Serv512@LegalBrains.com** and **Serv536@LegalBrains.com**

**SERVICE IS TO BE MADE TO EACH AND EVERY EMAIL ADDRESS LISTED IN THIS DESIGNATION AND TO NO OTHERS.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been emailed this **7th day of June 2025**, to **MARK S. ZAID, ESQUIRE,** Mark@MarkZaid.com, **BRADLEY P. MOSS, ESQUIRE,** Brad@MarkZaid.com, and **GEOFFREY DEWEESE, ESQUIRE,** Geoffrey@MarkZaid.com Mark S. Zaid, P.C., Attorneys for the Plaintiff, 1250 Connecticut Avenue, N.W. Suite 700 Washington, D.C. 20036

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757


 */s/ Peter Ticktin*
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935

14