# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | * | |
| Jamie Mannina | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 25-01524 (APM) |
| | * | |
| O'Keefe Media Group, | * | |
| <u>et al.</u>, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S</u>
## <u>COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT</u>

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ........................................................................................................ 6

MR. MANNINA HAS SUFFICIENTLY PLED EACH OF HIS CLAIMS TO
DEMONSTRATE RELIEF IS POTENTIALLY AVAILABLE. ................................. 6

Mr. Mannina Has Sufficiently Alleged Claims For Defamation/Defamation *Per
Se*/Defamation By Implication (Count One)............................................................... 7

Mr. Mannina's Complaint Sets Forth Cognizable Allegations That He Could
Prove At Trial And Demonstrate He Was Per Se Defamed As Well As By
Implication ............................................................................................................... 8

Mr. Mannina Has Sufficiently Alleged Claims For False Light (Count Two)......... 14

Mr. Mannina Has Sufficiently Alleged Claims For Fraudulent Misrepresentation
And Conspiracy To Commit Fraudulent Misrepresentation (Counts Three and Four)
................................................................................................................................. 16

Mr. Mannina Has Adequately Pled That The Defendants Violated The Respective
Wire Tap Acts (Count Five) ..................................................................................... 19

THERE IS NO BASIS WARRANTING THE DEFENDANTS' REQUEST FOR A
MORE DEFINITE STATEMENT ............................................................................. 24

CONCLUSION ........................................................................................................ 26

TABLE OF AUTHORITIES

**Cases**

AFGE v. FLRA, 25 F. 4th 1 (D.C. Cir. 2022) .................................................................... 13

AFT Michigan v. Project Veritas, 397 F. Supp. 3d 981 (E.D. Mich. 2019) ...................... 4

Andrx Pharms. v. Biovail Corp. Int'l, 256 F.3d 799 (D.C. Cir. 2001) .............................. 6

Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc., 525 F.3d 8 (D.C. Cir. 2008) .6

Bartnicki v. Vopper, 532 U.S. 514 (2001) ........................................................................ 22

Beeton v. District of Columbia, 779 A.2d 918 (D.C. 2001) ............................................... 7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .............................................................. 6

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86 (D.D.C. 2003).................. 25

CAIR v. Gaubatz, 31 F. Supp. 3d 237 (D.D.C. 2014) ...................................................... 21

Carey v. Piphus, 435 U.S. 247 (1978) ................................................................................ 8

Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080 (D.C. Cir. 1998)
.................................................................................................................................... 25

Coleandrea v. Town of Orangetown, 490 F.Supp.2d 342 (S.D.N.Y. 2007) .................... 23

Concepcion v. Rivera, 2019 D.C. Super. LEXIS 930 (D.C. Super. Ct. Jul. 8, 2019)....... 14

Conway-Russell v. O'Keefe, No. 10-cv-00276 (E.D. Pa. filed Jan. 21, 2010) ................. 5

Coomer v. Make Your Life Epic LLC, 2025 U.S. Dist. LEXIS 79463 (D. Colo. April 25,
2025) .......................................................................................................................... 13

Couch v. Verizon Communs., Inc., 2021 U.S. Dist. LEXIS 188637 (D.D.C. Sept. 30,
2021) ............................................................................................................................ 7

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz, 891 F. Supp.2d
13 (D.C. 2012) ..................................................................................................... 20, 23

Davidian v. Paparian, 115 Conn. 718 (1932).................................................................. 13

*Democracy Partners v. Project Veritas Action Fund, 2025 U.S. Dist. LEXIS 69979
(D.D.C. Apr. 11, 2025) ............................................................................................... 4

\*Democracy Partners v. Project Veritas Action Fund, 285 F. Supp. 3d 109 (D.D.C. 2018) ................................................................................................................. 4, 18

\*Democracy Partners v. Project Veritas Action Fund., 453 F. Supp. 3d 261 (D.D.C. 2020) ............................................................................................................... 16, 20

Doe v. Smith, 429 F.3d 706 (7th Cir. 2005) ..................................................... 20

Dorsey v. Am. Express. Co., 499 F. Supp. 2d 1 (D.D.C. 2007) ......................................... 24

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) .................... 7

Flying Food Grp., Inc. v. NLRB, 471 F.3d 178 (D.C. Cir. 2006) .................................... 20

Guilford Transp. Indus., Inc. v. Wilner, 760 A.2d 580 (D.C. 2000) ................................. 7

Hilska v. Jones, 217 F.R.D. 16 (D.D.C. 2003) ................................................... 25

Hogan v. New York Times Co., 211 F. Supp. 99 (D. Conn. 1962)................................. 13

Howard Univ. v. Best, 484 A.2d 958 (D.C. 1984) ............................................... 8

Hurd v. District of Columbia, 864 F.3d 671 (D.C. Cir. 2017)............................................ 3

Jacobson v. Hofgard, 168 F. Supp. 3d 187 (D.D.C. 2016)................................................ 16

Jenkins v. Mason Harriman Grp., Inc., 2023 U.S. Dist. LEXIS 239390 (D.D.C. Dec. 14, 2023) ............................................................................................................. 24, 25

Katz v. U.S., 389 U.S. 347 (1967) ................................................................ 22

Keohane v. Stewart, 882 P.2d 1293 (Sup. Ct. Colo. 1994) ............................................ 11

Kitt v. Capital Concerts, Inc., 742 A.2d 856 (D.C. 1999) ................................................ 14

Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990)....................................................... 11

Nunes v. Wp Co. LLC & Shane Harris, 2022 U.S. App. LEXIS 8913 (D.C. Cir. Apr. 1, 2022)................................................................................................................ 8

Ollman v. Evans, 750 F.2d 970 (D.C. Cir. 1984) ........................................................ 11

Potts v. Howard Univ., 269 F.R.D. 40 (D.D.C. 2010).................................................... 25

\*Project Veritas Action Fund v. Conley, 244 F. Supp. 3d 256 (D. Mass. 2017)............... 23

Rosen v. Am. Isr. Pub. Affairs Comm., Inc., 41 A.3d 1250 (D.C. 2012)...........................8

Saucier v. Countrywide Home Loans, 64 A.3d 428 (D.C. 2013) .....................................16

Scurry v. Davis, 2025 U.S. Dist. LEXIS 60980 (D.D.C. March 31, 2025).......................6

Stewart v. City of Okla. City, 47 F.4th 1125 (10th Cir. 2022) .........................................21

Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991) .........................................................6

Sundberg v. TTR Realty, LLC, 109 A.3d 1123 (D.C. 2015)............................................16

Tabb v. District of Columbia, 477 F. Supp. 2d 185 (D.D.C. 2007)...................................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ..................................3

Thorp v. District of Columbia, 309 F.R.D. 88 (D.D.C. 2015)..........................................25

Trita Parsi v. Seid Hassan Daioleslam, 595 F. Supp. 2d 99 (D.D.C. 2009) ....................11

U.S. v. Longoria, 177 F.3d 1179 (10th Cir. 1999)...........................................................22

U.S. v. Sullivan, 116 F. Supp. 480 (D.D.C. 1953)...........................................................19

United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251 (D.C. Cir. 2004) ..............................................................................................................................16

United States v. Dale, 991 F.2d 819 (D.C. Cir. 1993)......................................................21

United States v. O'Keefe, No. 10-cr0081 (E.D. La. May 27, 2010) ..................................5

Vera v. O'Keefe, 2012 U.S. Dist. LEXIS 112406 (S.D. Cal. 2012)...................................5

Wentz v. Project Veritas, 2019 U.S. Dist. LEXIS 67899 (M.D. Fla. Apr. 16, 2019)..... 4, 5

White v. Fraternal Order of Police, 909 F.2d 512 (D.C. Cir. 1990)...................8, 9, 10

Zimmerman v. Al Jazeera Am., LLC, 246 F. Supp. 3d 257 (D.D.C. 2017)........................8

**Statutes**

18 U.S.C. § 2384.............................................................................................................16

18 U.S.C. § 2385.............................................................................................................17

18 U.S.C. 793..................................................................................................................13

18 U.S.C.§ 2511 ..................................................................................... 19, 20

47 U.S.C. § 605 ............................................................................................ 22

D.C. Code § 23-542 ............................................................................... 19, 20

**Other Authorities**

F. Harper, et al., The Law of Torts § 5.4 (1986) ........................................... 9

*https://okeefemediagroup.com/breaking-video-top-pentagon-advisor-reveals-on-hidden-camera-conversation-with-a-couple-of-retired-generals-to-explore-what-we-can-do-to-protect-people-from-trump* ..................................................................... 11

*https://okeefestore.com/collections/all* ....................................................... 9

*https://protectdemocracy.org/work/weisenbach-v-project-veritas* ................... 5

*https://www.instagram.com/jamesokeefeiii* .................................................. 3

*https://www.nytimes.com/2022/03/13/business/media/fox-news-first-amendment-sullivan.html* ....................................................................................... 9

*https://www.rollingstone.com/politics/politics-features/project-veritas-james-okeefe-rise-fall-1235036748* ....................................................................... 3

*https://www.theguardian.com/world/2013/mar/08/james-o-keefe-settlement-acorn* ......... 5

*https://www.youtube.com/@okeefemedia* ................................................... 3

*https://x.com/JamesOKeefeIII* .................................................................. 3

*https://x.com/JamesOKeefeIII/ status/1910329510970401193* ...................... 3

*https://x.com/JamesOKeefeIII/status/1889002739260105007* ...................... 3

Prosser, The Law of Torts § 116, 5th Ed. (Supp. 1988) ............................. 10

Restatement (Second) of Torts § 563 (1977) ............................................... 9

Restatement (Second) of Torts § 652B ........................................................ 22

**Rules**

FRCP 12 .......................................................................................................... 2, 6, 18, 24, 25

Local Civil Rule 5 ...................................................................................................... 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                          |   |                        |
|--------------------------|---|------------------------|
| Jamie Mannina            | * |                        |
|                          | * |                        |
| Plaintiff,               | * |                        |
|                          | * |                        |
| v.                       | * | Case No. 25-01524 (APM) |
|                          | * |                        |
| O'Keefe Media Group,     | * |                        |
| <u>et al.</u>,           | * |                        |
|                          | * |                        |
| Defendants.              | * |                        |
|                          | * |                        |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S
<u>COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT</u>**

**<u>(REQUEST FOR ORAL ARGUMENTS)</u>**

Plaintiff Jamie Mannina ("Mr. Mannina"), who has devoted his entire professional career of more than two decades to public service or to support the interests of the United States, was victimized by the Defendants. As countless people across the country do every day, Mr. Mannina went on a dinner date with someone he hoped might become his soulmate. Instead, he learned he had been maliciously targeted as part of a tortious plot to secretly film individuals for the purpose of embarrassing them and promoting a partisan agenda.

Mr. Mannina has brought this action to seek relief from Defendants O'Keefe Media Group ("OMG"), James O'Keefe ("Defendant O'Keefe"), and Heidi Doe ("Defendant Doe")(collectively referred to as the "Defendants") in response to their tortious activities. Specifically, this action, which was filed on May 14, 2025, Dkt. 1, seeks monetary damages for claims of false light, defamation, fraudulent misrepresentation, conspiracy to

commit fraudulent misrepresentation, and violation of both federal and local wire tap laws.

At the outset, the Defendants seek to immediately dismiss this action under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) or, alternatively (presumably), for a more definite statement. Dkt. 7 (filed July 7, 2025)("Defs' Mot.").[1] Respectfully, Defendants' Motion is a hodgepodge of inflammatory remarks and confusing and disorganized arguments. It presents little in the way of substantive explanations that should warrant the requested relief.[2] Indeed, the argument of "So what?" simply cannot be allowed to substantively carry the day. Id. at 5.

Whether Mr. Mannina will ultimately prevail before a jury on the merits of his allegations is yet to be seen, but for the reasons outlined below this Court should respectfully deny the Defendants' Motion and allow this case to proceed accordingly.

## FACTUAL BACKGROUND

Given the nature of the pending Motion, the facts in Mr. Mannina's Complaint are, of course, accepted as true so undersigned counsel will spare the Court any unnecessary repetition unless specific facts are relevant for an underlying argument. See generally Complaint, ¶¶8-45 (factual allegations), Dkt. 1. But no doubt it would be helpful to

---

[1] The Defendants' Motion was filed only on behalf of OMG and Mr. O'Keefe. Defendant Doe, whose identity remains unknown, has not yet been served.

[2] The Defendants' Motion does not reflect the typical format relied upon by attorneys regularly practicing before this Court, but certainly that is not unexpected from counsel who primarily practices in other jurisdictions and substance over form is what is important. That said, certain obligations are imposed equally on all Members of the Bar. For example, Defendants' counsel of record must be a member in good standing with this Court, which he was not at the time of the filing of his Notice of Appearance (although the undersigned pointed this out as a professional courtesy and the deficiency was apparently remedied before the filing of this Motion). Other local rules, though admittedly somewhat trivial in nature, were also violated. See LCvR 5.1 (c), 5.1 (d).

provide some factual background on the primary Defendant O'Keefe, who has a long history of misconduct, all of which this Court can take judicial notice.[3] To be sure, Defendant O'Keefe has created a sizable presence for himself and he maintains significant influence over a particular swarth of the population. Indeed, at the time of the filing of this brief, on X (formerly Twitter) he has 3.2 million followers[4], on Instagram he has 1.5 million followers,[5] and Defendant OMG's YouTube page has 381,000 subscribers.[6] Few would likely dispute that Defendant O'Keefe is quite the controversial figure.[7] More details, of course, will be presented as this lawsuit progresses, particularly after discovery closes and as this matter reaches trial.

---

[3] A federal court may take judicial notice of "a fact that is not subject to reasonable dispute" if it either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, the D.C. Circuit has approved, for various purposes, of taking judicial notice of court records from other cases. Hurd v. District of Columbia, 864 F.3d 671, 686 (D.C. Cir. 2017). Additionally, matters judicially noticed are not considered matters outside the pleadings. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[4] *https://x.com/JamesOKeefeIII.*

[5] *https://www.instagram.com/jamesokeefeiii/.*

[6] *https://www.youtube.com/@okeefemedia.*

[7] See e.g., Rolling Stone, "Inside the Rise and Fall of Project Veritas", June 20, 2024, at *https://www.rollingstone.com/politics/politics-features/project-veritas-james-okeefe-rise-fall-1235036748/*; See also *https://x.com/JamesOKeefeIII/status/1889002739260105007* (Defendant O'Keefe tweet that posts pictures of his probation travel paperwork dated August 16, 2010); *https://x.com/JamesOKeefeIII/ status/1910329510970401193* (Defendant O'Keefe tweet saying "Ok, we're going to publish now. I find people who want to 'negotiate' with me. I will spend every dollar I have standing by our reporting or suing those who seek to destroy it. They call that 'irrational.' I call it being 'honest.' Also, I need to hire full time lawyers. DM me.").

But suffice to say, Defendant O'Keefe's "investigative" methods, particularly during the time he spent with his prior organization, Project Veritas (a non-profit he created and led, but which later turned against him and is now engaged in litigation between each other), and through today, have spawned multiple civil lawsuits, including before this Court, as well as a criminal judgment against him. For particularly relevant background on the behavior and legal issues that pertain to this litigation, see Democracy Partners v. Project Veritas Action Fund, 285 F. Supp. 3d 109 (D.D.C. 2018)(Defendants Motion to Dismiss denied) and its progeny.[8] See also AFT Michigan v. Project Veritas, 397 F. Supp. 3d 981 (E.D. Mich. 2019)(Project Veritas employee allegedly obtained internship at labor union using false identity and credentials and secretly recorded private conversations and accessed confidential documents, which Project Veritas then published; court denied motion to dismiss claims for breach of the duty of loyalty, fraudulent misrepresentation, trespass, and unlawful interception of conversations under state and federal law); Wentz v. Project Veritas, 2019 U.S. Dist. LEXIS 67899, 2019 WL 1716024 (M.D. Fla. Apr. 16, 2019)(Project Veritas employees secretly recorded conversations with plaintiff in public locations, which Project Veritas then published;

---

[8] This case, which also directly involves Defendant O'Keefe and similar legal claims, has a lengthy history in this Court dating back to 2017. Not only was Defendant O'Keefe's Motion to Dismiss denied, but he (and the other defendants) lost at trial on two claims of wiretapping and one claim of fraudulent misrepresentation, Democracy Partners v. Project Veritas Action Fund, 2025 U.S. Dist. LEXIS 69979 *4 (D.D.C. Apr. 11, 2025), and their Motion for Judgment as a Matter of Law was also denied by the Honorable Paul Friedman, who took over the case. Id. at *2. According to the Court docket, the Defendants appealed to the D.C. Circuit on May 29, 2025.

court ultimately granted summary judgment for defendants)[9]; <u>Vera v. O'Keefe</u>, 2012 U.S. Dist. LEXIS 112406, 2012 WL 3263930 (S.D. Cal. 2012)(O'Keefe and another individual secretly videotaped and recorded plaintiff at place of work; court denied defendants' motion for summary judgment on plaintiff's claim for invasion of privacy); <u>Conway-Russell v. O'Keefe</u>, No. 10-cv-00276 (E.D. Pa. filed Jan. 21, 2010)(O'Keefe and another individual secretly recorded conversations and publicly disseminated video and audio recordings; case settled and dismissed before any legal rulings); <u>United States v. O'Keefe</u>, No. 10-cr0081 (E.D. La. May 27, 2010)(convicted of entry by false pretenses in violation of 18 U.S.C. § 1036(a)(1), (2)).[10]

As William Shakespeare wrote in Act 2, Scene 1 of *The Tempest*, "what's past is prologue."

---

[9] This case, which also directly involved Defendant O'Keefe, not surprisingly pertained to very similar factual circumstances as to the instant matter, albeit it applied different state laws that were determinative. That said, the Defendants there not coincidentally filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) on many of the same grounds as now being asserted and it was denied there too as well. <u>Wentz v. Project Veritas</u>, 2018 U.S. Dist. LEXIS 242025 (M.D. Fla. Jan. 31, 2018), attached as Exhibit "1" for the Court's convenience.

[10] Defendant O'Keefe also paid a $100,000 settlement to resolve a lawsuit brought by an employee of the Association of Community Organizations for Reform Now (often known as ACORN), who accused Defendant O'Keefe of portraying him in a false light and filming him without his knowledge. *https://www.theguardian.com/world/2013/mar/08/ james-o-keefe-settlement-acorn*. More recently, in 2024, Defendant O'Keefe issued a public apology to resolve a defamation lawsuit. *https://protectdemocracy.org/work/ weisenbach-v-project-veritas/*.

## ARGUMENT

### I.   MR. MANNINA HAS SUFFICIENTLY PLED EACH OF HIS CLAIMS TO DEMONSTRATE RELIEF IS POTENTIALLY AVAILABLE

The Defendants notably failed to articulate in their Motion any of the standards that underly a motion to dismiss for failure to state a claim under FRCP 12(b)(6) but of course those standards are well-settled. Such a motion should only be granted if it appears beyond doubt that a plaintiff will be unable to prove any set of facts that support his claim entitling him to relief. See Tabb v. District of Columbia, 477 F. Supp. 2d 185, 188 (D.D.C. 2007), citing Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); see also Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8 (D.C. Cir. 2008) ("We conclude that [Bell Atl. Corp. v. ] Twombly [550 U.S. 544 (2007)] leaves the long-standing fundamentals of notice pleading intact."); Scurry v. Davis, 2025 U.S. Dist. LEXIS 60980, *4 (D.D.C. March 31, 2025)(acknowledging Aktieselskabet remains precedent).

Most importantly, as the Defendants concede, Defs' Mot. at 1, this Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in favor of Mr. Mannina. See Tabb, 477 F. Supp. 2d at 188, citing Andrx Pharms. v. Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556. In evaluating a Rule 12(b)(6) motion under this framework, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the

Court] may take judicial notice," <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997)(footnote omitted).

In evaluating each of the Defendants' arguments as to why they believe Mr. Mannina's Complaint should be dismissed for failure to state a claim, the Court will find that the Defendants barely address the lengthy factual chronology that serves as the basis of this litigation. Complaint, ¶¶8-45. Indeed, the only paragraphs the Defendants even cite to are ¶¶47, 53, 59, 65, 69, 70, all of which are derived from the sections outlining Mr. Mannina's individual causes of action and none of which introduce additional factual details. It would seem difficult as presented for any court to assess the merits of the Defendants' arguments when so little is proffered in support.

Regardless, as should respectfully be evident from the face of the Complaint itself, Mr. Mannina has more than sufficiently pled facts that could prove his claims thereby demonstrating dismissal would be unwarranted at this early stage of his litigation.

## A. Mr. Mannina Has Sufficiently Alleged Claims For Defamation/Defamation *Per Se*/Defamation By Implication (Count One)

To bring a standard claim of defamation for libel or slander, Mr. Mannina must demonstrate the Defendants made a false and defamatory statement concerning him and that the statement was actionable as a matter of law. <u>See</u> <u>Beeton v. District of Columbia</u>, 779 A.2d 918, 923 (D.C. 2001). Of course, even more straightforward are those claims of defamation *per se*, the foundational elements of which mirror that of defamation but occurs where a defendant has also falsely accused the plaintiff of committing a crime or other unlawful act. <u>See</u> <u>Couch v. Verizon Communs., Inc.</u>, 2021 U.S. Dist. LEXIS 188637, *14 (D.D.C. Sept. 30, 2021), <u>citing</u> <u>Guilford Transp. Indus., Inc. v. Wilner</u>,

760 A.2d 580, 594, 600 n.19 (D.C. 2000). The statement must "imput[e] to a person a …

matter affecting adversely a person's fitness for trade, business or profession [.]"

See Zimmerman v. Al Jazeera Am., LLC, 246 F. Supp. 3d 257, 273 (D.D.C. 2017),

quoting Carey v. Piphus, 435 U.S. 247, 262 n.18 (1978). The statement "must be more

than unpleasant or offensive; the language must make the plaintiff appear 'odious,

infamous or ridiculous.'" Rosen v. Am. Isr. Pub. Affairs Comm., Inc., 41 A.3d 1250,

1256 (D.C. 2012), Howard Univ. v. Best, 484 A.2d 958, 989 (D.C. 1984).

But this is admittedly not a standard defamation case, as it calls into play the notion

of defamation by implication, which "stems not from what is literally stated, but from

what is implied." White v. Fraternal Order of Police, 909 F.2d 512, 518 (D.C. Cir.

1990). Such a claim requires a plaintiff to allege facts showing that (1) "a defamatory

inference can reasonably be drawn" from the statement(s), and (2) "the particular

manner or language in which the true facts are conveyed" supplies "additional,

affirmative evidence suggesting that the defendant *intends* or *endorses* the

defamatory inference [.]" See Nunes v. Wp Co. LLC & Shane Harris, 2022 U.S.

App. LEXIS 8913, *7-*8 (D.C. Cir. Apr. 1, 2022), quoting White, 909 F.2d at 520

(emphasis in original).

> i. *Mr. Mannina's Complaint Sets Forth Cognizable Allegations That He Could Prove At Trial And Demonstrate He Was Per Se Defamed As Well As By Implication*

As the D.C. Circuit cautioned in White, "[i]n entertaining claims of defamation by

implication, courts must be vigilant not to allow an implied defamatory meaning to be

manufactured from words not reasonably capable of sustaining such meaning. The

difficulty lies in applying a standard that has both subjective and objective components:

> The usual test applied to determine the meaning of a defamatory utterance
> is whether it was reasonably understood by the recipient of the
> communication to have been intended in the defamatory sense. . . . When
> one uses language, one is held to the construction placed on it by those
> who hear or read, if that construction is a reasonable one.

F. Harper, et al., The Law of Torts § 5.4 (1986)(emphasis added). Under this standard, in
order to prevail on a defamation claim, the language used must be, as a matter of law,
reasonably capable of a defamatory interpretation and a jury must find that the language
was actually understood by the recipient in that sense. It is no defense that the defendant
did not actually intend to convey the defamatory meaning, so long as the defamatory
interpretation is a reasonable one." White, 909 F.2d at 519. Importantly, "the meaning of
a communication is that which the recipient correctly, or mistakenly but reasonably,
understands that it was intended to express." Restatement (Second) of Torts § 563 (1977).

   The entire tortious enterprise embraced by the Defendants was intended to place
Mr. Mannina in as negative, and if necessary false, light as possible. More precisely, it
was intended to ensure the Defendants' readers/viewers would come away with a very
specific interpretation of the dangerous threat and disgrace Mr. Mannina represented to
the United States, or at least to the administration of President Donald J. Trump and his
supporters, who are also the Defendants' targeted audience.[11] "If the communication, by
the particular manner or language in which the true facts are conveyed, supplies
additional, affirmative evidence suggesting that the defendant intends or endorses the
defamatory inference, the communication will be deemed capable of bearing that

---

[11] Through his Foundation, President Trump even once donated $10,000 to Defendant
O'Keefe and his prior organization. See *https://www.nytimes.com/2022/03/13/business/
media/fox-news-first-amendment-sullivan.html*. And Defendants OMG and O'Keefe use
their support of President Trump and case such as this instant one to raise funds by
selling various products. See *https://okeefestore.com/collections/all*.

meaning." <u>White</u>, 909 F.2d at 520. The D.C. Circuit further explained that "it is the defamatory implication – not the underlying assertions giving rise to the implication – which must be examined to discern whether the statements are entitled to full constitutional protection. Prosser makes this clear in discussing defamation by implication:

> If the defendant juxtaposes [a] series of facts so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication . . . he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct.

Prosser, The Law of Torts § 116, 5th Ed. (Supp. 1988)." <u>White</u>, 909 F.2d at 523.

The Defendants deliberately sought, by using edited and incomplete videos that were tied together with commentary by Defendant O'Keefe, to "intentionally provide false or implied evidence to support Defendants OMG and O'Keefe's fabricated claims that Mr. Mannina was essentially attempting to launch an unlawful coup against President Trump." Complaint, ¶¶35, 41, 42, 45. One does not need to infer or speculate as to the Defendants' intent. Their own Motion readily makes the case for Mr. Mannina and amplifies his defamation by implication (as well as *per se*) arguments in that he is specifically accused of two different major crimes: sedition and insurrection. <u>See e.g.</u>, Defs' Mot. at 2 ("Mr. Mannina is nothing less than a traitor to our country…"); 3 (referring to Mr. Mannina as "insurrectionist"); 10 ("This was Mr. Mannina's chance in life to measure up for his cause of sedition against the government of the United States, and for a pretty smile, he chose to brag and spill his secrets.").

The Defendants' published article for the first secretly filmed video describes:

> In a recent undercover revelation, Jamie Mannina, a Pentagon advisor to the Joint Chiefs of Staff and former FBI Special Agent, revealed

10

strategies and covert meetings aimed at influencing public perception and undermining the presidency of Donald Trump.

Mannina acknowledged collaborating with retired military leaders, including generals and admirals, to devise methods to counteract Trump's administration. "I've been in conversation with a couple of retired generals to explore what we can do," he admitted during the undercover conversation. These discussions reportedly occurred in high-security environments, including "The Tank," a secure room within the Pentagon reserved for critical defense deliberations.

See BREAKING VIDEO: Top Pentagon Advisor Reveals On Hidden Camera Conversation "with a Couple of Retired Generals to Explore What We Can Do" to 'Protect People from Trump', *https://okeefemediagroup.com/breaking-video-top-pentagon-advisor-reveals-on-hidden-camera-conversation-with-a-couple-of-retired-generals-to-explore-what-we-can-do-to-protect-people-from-trump/*. See also Complaint, ¶39 (citing to existence of article). Additional videos and articles followed, id. at ¶¶36-40, all of which continued to falsely portray Mr. Mannina in as negative a light as possible. Id. at ¶¶41-45.

The full context of challenged statements, not isolated words, determines whether statements are ones of fact or opinion. See e.g., Trita Parsi v. Seid Hassan Daioleslam, 595 F. Supp. 2d 99, 110 (D.D.C. 2009)(noting statements must be more than intangible or imprecise words with widely divergent definitions), citing Ollman v. Evans, 750 F.2d 970, 980-81 (D.C. Cir. 1984). To distinguish between facts and opinion, courts should evaluate: (1) the common usage or meaning of the specific language used in the statement; (2) the statement's verifiability; (3) the full context of the statement; and (4) the broader context in which the statement appears. Id. at 979. See also Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990)(factual assertions may be implied); Keohane v. Stewart, 882 P.2d 1293, 1302 (Sup. Ct. Colo. 1994)(concluding that a question, "though

not phrased in the form of a declaration of fact, may imply the existence of a false and defamatory fact").

Mr. Mannina's Complaint outlines numerous false statements made by the Defendants regarding him including: (1) that he was a "Top Pentagon Advisor", a "Senior Advisor, Joint Staff, Department of Defense, or a "Top Pentagon Official" providing direct advice to the Chairman of the Joint Chiefs of Staff; (2) that he held covert meetings with retired military leaders within the Pentagon, including within a classified room known as "The Tank", for the purpose of undermining the incoming Trump administration; and (3) that he had been working with *National Security Leaders for America*, a non-profit organization, after the election as part of the covert effort to plan how best to undermine the presidency of Donald Trump. Complaint, ¶¶25, 29, 35, 42, 44. While standing alone these individual assertions may not rise to actionable defamation, the implication of what the intended message was conveys a far greater defamatory meaning, as well as a *per se* application: according to the Defendants, Mr. Mannina was admitting to being an operative of the Deep State who was engaging in criminal activities, including sedition and insurrection, to launch a coup against the President of the United States. <u>See</u> Defs' Mot. at 2, 3, 10.

None of these false material statements can reasonably be construed as mere hyperbole or opinion. They are facts easily capable of verification. Post hac efforts by Defendants' counsel to claim these were nothing but mere mistakes, <u>id.</u> at 5, 6, is not sufficient to defeat this lawsuit, especially at this early motion to dismiss stage. These were not, as the Defendants would suggest, mere small or trifling errors.

See <u>AFGE v. FLRA</u>, 25 F. 4th 1, 3 (D.C. Cir. 2022)(explaining phrase "*de minimis non curat lex*" as referencing idea "the law does not take care for, or take notice of, very small or trifling matters"). The so-called "trifling" mistakes by the Defendants consisted of falsely accusing Mr. Mannina of having admitted to meeting in "The Tank", a highly classified room reserved for some of the Department of Defense's most sensitive classified discussions, for plotting purposes on how to counteract the Trump administration from within the Pentagon. Complaint, ¶42.

Moreover, the Defendants' own arguments in their Motion also amplify Mr. Mannina's defamation *per se* arguments in that he is specifically and outright accused of two different major crimes: sedition and insurrection. Defs' Mot. at 2, 3. <u>See</u> <u>id.</u> at 2 ("Mr. Mannina is nothing less than a traitor to our country…"); 3 (referring to Mr. Mannina as "insurrectionist"); 10 ("This was Mr. Mannina's chance in life to measure up for his cause of sedition against the government of the United States, and for a pretty smile, he chose to brag and spill his secrets.").[12] The crime of sedition can result in a fine and imprisonment of up to twenty years, 18 U.S.C. § 2384, whereas the crime of insurrection is subject to a penalty of up to ten years in prison, a fine of up to $250,000, and also the disqualification of holding any U.S. office. <u>Id.</u> at § 2383.[13] <u>See also</u>

_____

[12] The assertion that Mr. Mannina was spilling "secrets", particularly given he was simultaneously portrayed as a senior Pentagon Advisor with a security clearance, would also imply, if not assert *per se*, violations of the Espionage Act as well. <u>See</u> 18 U.S.C. § 793. In fact, the blatantly over-the-top accusations against Mr. Mannina that are contained within the Defendants' Motion, while legally protected, not only help prove defamation by implication but will also be relied upon as a measure of enhanced damages. <u>See</u> <u>Hogan v. New York Times Co.</u>, 211 F. Supp. 99, 116 (D. Conn. 1962); <u>Davidian v. Paparian</u>, 115 Conn. 718, 719, 161 A. 796, 797 (1932).

[13] <u>See e.g.</u>, <u>Coomer v. Make Your Life Epic LLC</u>, 2025 U.S. Dist. LEXIS 79463, *36 (D. Colo. April 25, 2025)(insinuation that individual committed treason, sedition, and subversive activities constitutes defamation *per se*).

18 U.S.C. § 2385 (criminalizing various act associated with advocating for overthrow of Government).

This is exactly what Mr. Mannina alleges through the facts in his Complaint that the Defendants intended to convey, i.e., the knowingly false and defamatory assertion that Mr. Mannina had admitted to participating in meetings with retired military leaders in a classified room within the Pentagon called "The Tank" to launch a coup against the incoming Trump Administration. Complaint, ¶¶42, 47.[14]

Respectfully, there can be no reasonable dispute, especially at this early stage where the factual assertions must be accepted as true, that Count One of Mr. Mannina's Complaint survives this initial motion to dismiss.

### B.  Mr. Mannina Has Sufficiently Alleged Claims For False Light (Count Two)

A false light claim requires proof of "1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and 4) which places the plaintiff in a false light that would be offensive to a reasonable person." Kitt v. Capital Concerts, Inc., 742 A.2d 856, 859 (D.C. 1999). The Defendants vaguely assert that Mr. Mannina's claim must be dismissed because it has "many of the same issues" as his claim for defamation (Count One). Defs' Mot. at 8, 9. While Defendants do not specifically identify what these "issues" are, they do assert that the "statements published by OMG are true." Id. at 8. That would be an excellent argument,

---

[14] The Defendants' contention that Mr. Mannina's lawsuit should be dismissed because he failed to allege that publishing the defamatory statements amounted to at least negligence, see Defs' Mot. at 7, is belied by the very clear verbiage in the Complaint to the contrary. See Complaint, ¶51 ("The Defendants had actual knowledge of the falsity of the statements at issue."). By asserting the Defendants had actual knowledge is obviously of a degree that exceeds negligence. See Concepcion v. Rivera, 2019 D.C. Super. LEXIS 930, *4-*5 (D.C. Super. Ct. Jul. 8, 2019)(denying motion to dismiss given allegations in Complaint sufficiently pled factual allegations).

if true, for a possible future defense motion for summary judgment, but it is unavailing for the purposes of a motion to dismiss.

Notwithstanding the Defendants' vague argument, the facts alleged in Mr. Mannina's Complaint sufficiently demonstrate that the Defendants posted the articles and videos on their own website as well as YouTube, Complaint, ¶¶35-40, that the statements were false, id. at ¶¶41-45, that it concerned Mr. Mannina, and that it placed him in a false light that would be offensive to a reasonable person. Id. at ¶¶45, 53-56. That is all that is needed at this early stage of the litigation.

The Complaint more than sufficiently demonstrates false statements and imputations that can be interpreted as placing Mr. Mannina in a false light that would be offensive to a reasonable person. Indeed, again, Defendants' Motion itself makes that abundantly clear. The Defendants intended for Mr. Mannina to be falsely portrayed as "attempting to launch an unlawful coup against President Trump." Id. at ¶45. And their Motion only amplifies this portrayal by asserting Mr. Mannina held "seditious thoughts and plans," as well as being a "traitor" harboring "evil thoughts." Defs' Mot. at 2,3. The Defendants proudly exclaim that Defendants intended to portray Mr. Mannina as having engaged in criminal conduct akin to sedition or insurrection, something that would obviously be offensive to any reasonable person. Id. at 3, 10. This was the intention of the Defendants the entire time with respect to their posting of the videos and articles, and now they double down to proudly demonstrate that was and remains their intent.[15]

---

[15] Finally, Defendants argue that Mr. Mannina's Complaint "conspicuously omits" the words "invasion of privacy," Defs' Mot. at 9, but they fail to articulate exactly how this omission supports their Motion to Dismiss, particularly because it does not.

Respectfully, there can be no reasonable dispute, especially at this early stage where the factual assertions must be accepted as true, that Count Two of Mr. Mannina's Complaint survives this initial motion to dismiss.

### C.  Mr. Mannina Has Sufficiently Alleged Claims For Fraudulent Misrepresentation And Conspiracy To Commit Fraudulent Misrepresentation (Counts Three and Four)

A claim for fraudulent misrepresentation requires proof of (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken in reliance upon the representation, (6) which consequently resulted in provable damages. See Jacobson v. Hofgard, 168 F. Supp. 3d 187, 195 (D.D.C. 2016). "A false representation may be either 'an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.'" Sundberg v. TTR Realty, LLC, 109 A.3d 1123, 1131 (D.C. 2015)(citations omitted). The D.C. Circuit requires that these claims state the time, place, and content of the false misrepresentations, the facts misrepresented, and what was retained or given up as a consequence of the fraud, as well as the individuals allegedly involved in the fraud. See United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004). Furthermore, a claim of civil conspiracy to commit fraudulent misrepresentation requires "(1) an agreement between two or more person (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." See Democracy Partners v. Project Veritas Action Fund., 453 F. Supp. 3d 261, 290 (D.D.C. 2020), quoting Saucier v. Countrywide Home Loans, 64 A.3d 428, 446 (D.C. 2013).

The Defendants' Motion does little to substantively address with factual or legal citations the basis for its argument that Mr. Mannina has not sufficiently pled these two claims. Indeed, the arguments presented can primarily be described as ad hominem, if not abusive ad hominem. See e.g., Defs' Mot. at 10 ("[E]very teenager would be a defendant, and every first date would be a law school hypo."); id. ("If women could be blamed for looking interested when they are not truly interested, or for claiming a political affiliation, for access or information, the entire world would be standing on its head."); id. ("This was Mr. Mannina's chance in life to measure up for his cause of sedition against the government of the United States, and for a pretty smile, he chose to brag and reveal his secrets."); 11 ("The audacity is similar to a man who kills his parents and then throws himself upon the mercy of the court, claiming that he is an orphan."). The Defendants cite simply two cases, neither of which adds anything of substantive relevance beyond restating the basic legal framework of the claims, see id. at 10, 12, and does nothing to properly cite back to relevant portions of the factual record when arguing that these two claims should be dismissed.

For purposes of defeating a motion to dismiss for failure to state a claim, Mr. Mannina has sufficiently pled the requisite facts as a matter of law to proceed forward. His Complaint clearly alleges that: (1) Defendant Doe, in coordination with and at the behest of Defendants OMG and O'Keefe, deliberately and knowingly misrepresented herself to Mr. Mannina for the express malicious and tortious purpose of entrapping him into making remarks that could be used to damage his professional and personal reputation. Complaint, ¶¶59-61; (2) the crux of Defendant Doe's misrepresentation concerned her knowingly false statements regarding her political

17

affiliation, her views on particular topics, her purpose for meeting with individuals on the Bumble dating application, and her professional reason for working and living in D.C. Id. at ¶¶ 22-23; (3) Defendant Doe took these steps upon the instructions of the other Defendants and in violation of the dating app Bumble's explicit terms; Id. at ¶18-20, 22, 25, 59; (4) Mr. Mannina reasonably relied in good faith upon these false representations (as well as the good faith belief that Defendant Doe was in compliance with Bumble's explicit terms of service, although she was not) when agreeing to meet with Defendant Doe for two dates, during which Mr. Mannina made the remarks that were secretly captured on video without his consent and subsequently edited and posted online by Defendants OMG and O'Keefe. Id. at ¶¶ 35-40; and (5) the posting of the videos consequently resulted in termination of Mr. Mannina's employment and has undermined his ability to obtain future employment. Id. at ¶62.

These factual allegations more than sufficiently meet the threshold set by the D.C. Circuit, as outlined above, supra at 16. The Complaint identifies with particularity the who, what, when and how of the civil conspiracy implicating all three Defendants, as well as the fraudulent misrepresentations by Defendant Doe that served as the catalyst for Mr. Mannina's remarks that have now cost him his employment and possibly his ability to continue work in his chosen profession of two decades. The ad hominem commentary by the Defendants to the contrary, see Defs' Mot. at 10-11, does nothing to contradict this reality and simply does not come close to warranting dismissal of this action at this early stage under Rule 12(b)(6).[16]

---

[16] Defendant O'Keefe similarly tried to dismiss fraud claims through a Rule 12(b)(6) Motion in Project Veritas Action Fund, 285 F. Supp. 3d 109. The Honorable Ellen Huvelle rejected the request to "throw out a fraud claim pre-discovery." Id. at 117 fn. 7.

Respectfully, there can be no reasonable dispute, especially at this early stage where the factual assertions must be accepted as true, that Counts Three and Four of Mr. Mannina's Complaint survive this initial motion to dismiss.

### D. Mr. Mannina Has Adequately Pled That The Defendants Violated The Respective Wire Tap Acts (Count Five)

Count Five of Mr. Mannina's Complaint very clearly alleges that the Defendants violated the Federal and D.C. wiretap provisions found in 18 U.S.C.§ 2511 and D.C. Code § 23-542, particularly in that they secretly recorded conversations for the purposes of committing a tortious act. Complaint, ¶¶69-71. In less than a page of arguments, Defs' Mot. at 12-13, Defendants seek to casually dismiss this claim by arguing that these statutes only apply to "oral communications originating from electronic sources," citing a single 72-year old non-binding District Court decision, U.S. v. Sullivan, 116 F. Supp 480 (D.D.C. 1953). Sullivan did not even address the laws at issue here, particularly because the relevant Federal statute was passed nearly twenty years later as Title III of The Omnibus Crime Control and Safe Streets Act of 1968. Instead, Sullivan analyzed 47 U.S.C. § 605 and applied a version of that statute which no longer exits.[17] That alone disqualifies the Defendants' attempt to undermine this claim.

In any event, under the current applicable statutory framework, it is a violation if a person "willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication." See 18 U.S.C. § 2511(1)(a); D.C. Code § 23-542(a)(1). There are similar prohibitions on disclosure or use of those illegally obtained intercepts. Id. at (a)(2), (a)(3). The term "oral

---

[17] See Amendment Notes, 1968, 47 U.S.C.S. § 605, which notes that the entirety of the section referenced in Sullivan (§605(a)) was substituted with a new section in 1968.

communications" means "any oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying the expectation." See 18 U.S.C § 2510(2); D.C. Code § 23-541(2). See also 18 U.S.C. § 2510(2)(excludes electronic communications from term); D.C. Code § 23-541(2). Interception occurs when the "aural" (D.C. Code) or "aural or other acquisition" (U.S. Code) of an oral communication is obtained through the use of any electronic, mechanical or other device. See 18 U.S.C. § 25110(4),(5); D.C. Code § 23-541(3),(4).

While it is true that the law in Washington, D.C. allows for recordings of oral communications when one of the parties' consents, otherwise known as the single-party consent rule, the analysis does not stop there. An outright exception to this rule exists in both the Federal and D.C. laws when "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States, any State, or the District of Columbia, or for the purpose of committing any other injurious act." Id. at § 23-542(b)(3); 18 U.S.C. § 2511(2)(d).

Defendant O'Keefe is more than aware of this exception because he has litigated the identical issue in Democracy Partners v. Project Veritas Action Fund, et al., 453 F. Supp 3d 261 (D.D.C. 2020), and one of this Court's brethren, the Honorable Ellen Huvelle, upheld the tortious purpose exception to the single-party consent rule. Id. at 288-290. Moreover, as the Honorable Colleen Kollar-Kotelly noted in Council on American-Islamic Relations Action Network, Inc. v. Gaubatz, 891 F. Supp.2d 13, 25 (D.C. 2012), "this is a defense and, as such, Plaintiffs need not anticipate it or 'plead around' it." Id. at 25. See Doe v. Smith, 429 F.3d 706, 709 (7th Cir. 2005)(18 U.S.C. § 2511(2)(d) reflects a defense that cannot be used to justify dismissal); see also Flying Food Grp., Inc. v.

NLRB, 471 F.3d 178, 183 (D.C. Cir. 2006)(Plaintiffs need not negate affirmative defenses in their complaints).

That the Defendants knew or should have known, given how many times they have previously litigated this identical claim before more than one court, that this argument would not survive a motion to dismiss reflects disingenuousness on their part. It also confirms the Defendants knew at the time they conspired to set up their fake dating scheme, specifically targeted Mr. Mannina, and then secretly filmed him for the purposes of publicizing the video online that their actions before, during and after could constitute tortious acts.

Of course, ultimately, to prove a tortious purpose, Mr. Mannina will have to demonstrate "'either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation in intercepting the conversation was to commit' a criminal or tortious act." CAIR v. Gaubatz, 31 F. Supp. 3d 237, 257-61 (D.D.C. 2014), quoting United States v. Dale, 991 F.2d 819, 841 (D.C. Cir. 1993). Mr. Mannina has expressly factually asserted that the Defendants selectively edited and spliced together statements in order "to intentionally provide false or implied evidence to support Defendant OMG and O'Keefe's fabricated claims that Mr. Mannina was essentially attempting to launch an unlawful coup against President Trump." Complaint, ¶45. Along with the written articles posted, the Defendants "designed to place Mr. Mannina in a false light and/or defame him, which are tortious acts." Id. at ¶71.

The Defendants further argue through just a single sentence that this claim cannot apply because there can never be a private conversation if it is held in a public area. Defs' Mot. at 13. They point to one case in support, Stewart v. City of Okla. City, 47 F.4th

1125 (10th Cir. 2022), which obviously is not binding upon this Court. Putting that aside,

Stewart was decided on the specific facts of that case, where the parties engaged in a loud

and profane argument in full public view. Id. at 1134.  This is a fact-based question

which will depend on whether "(1) the defendant had an actual, subjective expectation of

privacy—i.e., that his communications were not subject to interception; and (2) the

defendant's expectation is one society would objectively consider reasonable." Id.,

quoting U.S. v. Longoria, 177 F.3d 1179, 1181-82 (10th Cir. 1999), citing Katz v. U.S.,

389 U.S. 347, 361 (1967). Indeed, there would be no need to lay out a two-part analysis if

merely being in public meant that no privacy expectations ever existed for conversations.

Only in the dystopian world of George Orwell's 1984 would a person be unable to

believe that a conversation held in public could not still possess some level of privacy

protection.

Of course, Mr. Mannina did not file this lawsuit in the Tenth Circuit so it is important

to examine what legal analysis applies here. D.C. follows the Restatement (Second) of

Torts § 652B, which requires:

1. Intentional intrusion by physical, visual, or auditory means;
2. Into a place or private affairs where someone has secluded themselves;
3. Such intrusion must be "highly offensive to a reasonable person."

The Supreme Court has held that "[p]rivacy of communication is an important

interest." Bartnicki v. Vopper, 532 U.S. 514, 532 (2001)(involving illegal tape-recording

and broadcast of private conversation about matter of public concern published by media

in union dispute). "Moreover, the fear of public disclosure of private conversations might

well have a chilling effect on private speech." Id. at 532-33.

Once again we can look to an earlier case that directly involved Defendant O'Keefe.

The decision in <u>Project Veritas Action Fund v. Conley</u>, 244 F. Supp. 3d 256 (D. Mass.

2017) provides useful guidance on this topic:

> Project Veritas argues that it has the First Amendment right to record
> private conversations of individuals speaking in public places where there
> is no reasonable expectation of privacy. But, "private talk in public places
> is common." [<u>Am. Civil Liberties Union of Ill. v.</u>]<u>Alvarez</u>, 679 F.3d [583]
> at 606 [7th Cir. 2012]. Individuals have conversations they intend to
> be private, in public spaces, where they may be overheard, all the time -- they
> meet at restaurants and coffee shops, talk with coworkers on the walk to
> lunch, gossip with friends on the subway, and talk too loudly at holiday
> parties or in restaurant booths. These types of conversations are ones
> where one might expect to be overheard, but not recorded and broadcast.
> There is a significant privacy difference between overhearing a
> conversation in an area with no reasonable expectation of privacy and
> recording and replaying that conversation for all to hear. <u>See</u> <u>Alvarez</u>,
> 679 F.3d at 605-06 (recognizing that the First Amendment permits greater
> protection for conversational privacy than for the public conversations of
> public officials); <u>see also</u> <u>State v. O'Brien</u>, 774 A.2d 89, 96 (R.I. 2001)
> ("Although we may expect individuals with whom we are communicating
> to hear and even to remember what we are saying (and perhaps how we
> have said it), we usually do not expect them to acquire surreptitiously an
> exact audio reproduction of the conversation that they can later replay at
> will for themselves or for others.").

<u>Conley</u>, 244 F.Supp.3d at 264.

Finaly, the question of whether an expectation of privacy is woefully premature at the

motion to dismiss stage, as "[t]he relevant inquiry calls for the consideration of a host of

intensely fact-bound circumstances." <u>Gaubatz</u>, 891 F. Supp.2d at 25; <u>see also</u> <u>Coleandrea</u>

<u>v. Town of Orangetown</u>, 490 F.Supp.2d 342, 347- 48 (S.D.N.Y. 2007)(declining to rule

on whether communications were made with reasonable expectation of non-interception

at motion to dismiss stage). At this stage, Mr. Mannina need only show an inference that

the communications were made with a reasonable expectation that they would not be

subject to interception. <u>Gaubatz</u>, 891 F. Supp. 2d at 25. Because establishing that a

conversation was a protected oral communication is a fact-intensive inquiry requiring evidence of both Mr. Mannina's subjective expectation of privacy and the objective circumstances that justify the expectation, it is a question for summary judgment or the jury.

Given this matter is at the motion to dismiss stage, and all allegations have to be accepted as true, Mr. Mannina has sufficiently pled his claim.

## II.  THERE IS NO BASIS WARRANTING THE DEFENDANTS' REQUEST FOR A MORE DEFINITE STATEMENT

Although the Defendants refer to a motion for a more definite statement in the title of their Motion, their pleading does not remotely outline the relevant legal framework nor its relevant application to specific citations in the Complaint. It certainly does not "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). This deficiency, in and of itself, is sufficient to deny the Defendants requested relief.

If this Court is nonetheless willing to consider the issue, the fact remains the Defendants are not entitled to this relief. A motion for a more definite statement pursued under FRCP 12(e) allows a party to "move for a more definite statement of a pleading … which is so vague or ambiguous that the party cannot reasonably prepare a response." See Jenkins v. Mason Harriman Grp., Inc., 2023 U.S. Dist. LEXIS 239390, *3 (D.D.C. Dec. 14, 2023), quoting Fed. R. Civ. P. 12(e); see also Dorsey v. Am. Express. Co., 499 F. Supp. 2d 1, 3 (D.D.C. 2007)(granting motion because "facts currently alleged in the complaint are too vague to give the defendants the notice to which they are entitled."). A complaint "need not allege all the facts necessary to prove its claim so long as it provides enough factual information to make clear the substance of that claim."

See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 1086 (D.C. Cir. 1998); see also Thorp v. District of Columbia, 309 F.R.D. 88, 90 (D.D.C. 2015) ("mere lack of detail" is insufficient to compel more definite statement), quoting Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 110 (D.D.C. 2003).

The basis for requiring a more definite statement is "unintelligibility", id., and FRCP 12(e) motions are generally only granted if the Complaint is "so egregiously deficient that the allegations are entirely inscrutable or incomprehensible", see Jenkins, 2023 U.S. Dist. LEXIS 239390 at *4. Indeed, these types of motions are disfavored because of their "dilatory effect on the progress of litigation", see Potts v. Howard Univ., 269 F.R.D. 40, 44 (D.D.C. 2010), and that they are generally denied if the information sought may be reasonably obtained through discovery. See Hilska v. Jones, 217 F.R.D. 16, 21 (D.D.C. 2003).

The Defendants' Motion does not remotely approach the necessary threshold to demonstrate additional information is needed, and perhaps that is why the Defendants failed to identify any. The Defendants were clearly and succinctly put on notice of the various alleged facts and claims as evidenced by their pursuit to dismiss this lawsuit for failing to state a claim. No part of the factual allegations in the Complaint can reasonably be viewed as incomprehensible or unintelligible. To the extent there are elements of the claims that the Defendants believe require greater factual context prior to this matter going to trial, that is something that can and should be properly addressed through the ordinary course of civil discovery.

Indeed, Mr. Mannina believes fulsome discovery will help bring considerable additional clarity to these issues prior to this matter going to trial, particularly with

respect to the conduct of the individual defendants. That, such as the identity of Defendant "Heidi Doe" and insight into the Defendants' underlying motives, is information that is solely in the possession of the Defendants at this time.

## **CONCLUSION**

For the reasons outlined above, this Court should respectfully deny the Defendants' Motion.

Date: July 21, 2025

Respectfully submitted,

*s/ Mark S. Zaid*
_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Geoffrey Deweese, Esq.
(*Pro Hac Vice* forthcoming)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700 – PMB 5287
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com
Geoffrey@MarkZaid.com

Attorneys for the Plaintiff