IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO. 1:25-cv-01524-APM

JAMIE MANNINA

        Plaintiff,

v.

O'KEEFE MEDIA GROUP,
JAMES O'KEEFE, and
HEIDI DOE,

        Defendants.
_____/

### DEFENDANTS' SPECIAL MOTION
### TO DISMISS PLAINTIFF'S COMPLAINT (ANTI-SLAPP)

The Defendants, O'KEEFE MEDIA GROUP (hereinafter referred to as "OMG"), and JAMES O'KEEFE, hereby file their Special Motion to Dismiss the Plaintiff's Complaint pursuant to D.C. Code § 16-5502, and in support thereof, states as follows:

### Statement of Facts

James O'Keefe, founder and CEO of the news outlet OMG, is an experienced journalist who is known to sometimes infiltrate organizations by concealing his identity, which is referred to as being an "undercover journalist."  As he has been highly successful, James O'Keefe has successfully worked across the country with thousands of citizens who are not professional full-time journalists, but rather people in an organization who collect, report, analyze, and disseminate news.  These folk are known as "citizen journalists."  The Defendant, Heidi Doe, is a citizen journalist.

For over 15 years, Mr. O'Keefe investigated and exposed corruption, dishonesty in

business and government, self-dealing, waste, fraud, and other misconduct in both public and private institutions. Both OMG and Mr. O'Keefe are American public figures which are of international fame and prestige.

At all relevant times, James O'Keefe and OMG in collaboration with Heidi Doe, conducted an undercover investigation focused on a group of individuals in the federal government, commonly referred to as the "Deep State," whose aim was to undermine the goals of the Trump administration.

As part of the investigation into government subversion and the Deep State, Heidi Doe contacted the Plaintiff, Jamie Mannina in December of 2024 using a dating app. Heidi Doe and Mr. Mannina went on two dates, together in a two public places, two different busy restaurants. During their dates, Heidi Doe asked Mr. Mannina questions regarding his work, which he freely answered. The conversations were recorded by Heidi Doe and the OMG team using hidden audiovisual recording devices.

Over the course of the dates, Heidi Doe and Mr. Mannina conversed on multiple topics, including Defense Secretary Pete Hegseth, President Trump, and Mr. Mannina's work at a consulting firm (later identified as Booz Allen Hamilton), working directly with senior officials at the Pentagon.

Mr. Mannina described himself as a bureaucrat that was "embedded in the Pentagon," stating that he worked "in the Joint Staff, which is the top military command," and further stated the chairman of the Joint Chiefs was his boss. This quote is taken directly from Mr. Mannina between the 5:48-6:11 minute marks of the YouTube video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)."

Mr. Mannina referred to his commander-in-chief, President Trump, as "a sociopathic

2

narcissist who is only interested in advancing his name, his wealth, and his fame." Also, he claimed that Defense Secretary Pete Hegseth "has a drinking problem;" stating that "Secretary Hegseth] cheated on all his wives, all his girlfriends;" and that "he's had some sexual assault allegations." These quotes are taken directly from Mr. Mannina between the 9:55-10:45 minute marks of the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

During the first date, Heidi Doe asked Mr. Mannina if he could do anything to "protect the American people from stuff that [President Trump] might try to do." Mr. Mannina replied that he was "in conversation with a couple of retired generals to try and explore what we can do."[1] Mr. Mannina stated that between the 11:25-12:22 minute marks of the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

After the second date, Mr. O'Keefe confronted Mr. Mannina with Mr. Mannina's own words caught on recording. Mr. O'Keefe asked Mr. Mannina about his comments made to Heidi Doe, but Mr. Mannina denied having knowledge of any such statements and called Mr. O'Keefe a variety of vulgar expletives. See generally the YouTube video "WILD INTERACTION: O'Keefe Confronts Top Pentagon Official Caught on Tape."

After Mr. Mannina fled from Mr. O'Keefe, a nearby group of college students who witnessed the confrontation engaged in a dialogue with Mr. O'Keefe. One of the college students went onto say that it's "the right for the public to know. So whatever questions that [Mr. O'Keefe] have asked him, I hope that he answered truthfully." This quote is taken directly from unnamed bystanders between the 8:59-9:15 minute marks of the YouTube video titled "WILD INTERACTION: O'Keefe Confronts Top Pentagon Official Caught on Tape".

Following the interactions with Mr. Mannina, OMG alone posted three separate videos to

3

its website and various video sharing platforms regarding Mr. Mannina, two of which contained the undercover recording taken of Mr. Mannina.

Thereafter, Mr. Mannina filed his five count Complaint. The five causes of action are:

1) Defamation/Defamation Per Se/Defamation by Implication,

2) False Light,

3) Fraudulent Misrepresentation,

4) Conspiracy to Commit Fraudulent Misrepresentation, and

5) Violation of 18 U.S.C. § 2511 and D.C. Code § 23-542 – Wire Tap Acts.

This motion does not directly address Counts IV and V, as they are not concerning the freedom of political speech. These are directly addressed in the Rule 12(b)(6) Motion to Dismiss for failure to state a cause of action.

On January 23, 2025, House Resolution 697, titled "End the Deep State Act,"[1] was introduced and referred to the House Committee on Oversight and Government Reform by Congressman Andrew Ogles. More recently, President Trump addressed the entrenched bureaucratic resistance of the Deep state during his address to Congress on March 4, 2025, stating that "it is very simple. The days of rule by unelected bureaucrats are over."

### Alleged Defamatory Statements

In Paragraphs 41 through 45 of Mr. Mannina's Complaint, Mr. Mannina claimed that a number of statements made by the Defendants were supposedly defamatory. They are:

1. Mr. Mannina had "plans to utilize irregular strategies to undermine Donald Trump's presidency."

2. Mr. Mannina took part in a meeting at the Pentagon

---

[1] See H.R.697 - 119th Congress (2025-2026): End the Deep State Act, H.R.697, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/697/text/ih.

4

>    regarding technology issues.
>
> 3. Mr. Mannina had made "critical remarks" about President Trump's nominee for Secretary of Defense, Pete Hegseth.
>
> 4. Mr. Mannina collaborated with senior retired military leaders "to devise methods to counteract Trump's administration."
>
> 5. Mr. Mannina's meetings with senior retired military leaders "occurred in high-security environments, including 'The Tank,' a secure room within the Pentagon reserved for critical defense deliberations."
>
> 6. Mr. Mannina's "role extended beyond advising military officials" and included work with an advocacy group during the prior election which opposed the re-election of President Trump.
>
> 7. The "confrontation" between Mr. O'Keefe and Mr. Mannina followed Defendant "OMG's release of undercover footage that detailed Mannina's admission to conversations about plans involving retired generals to take potential actions against President-elect Donald Trump."
>
> 8. Mr. Mannina is a "Top Pentagon Advisor," a "Senior Advisor, Joint Staff, Department of Defense" and a "Top Pentagon Official."

## Argument

**1.    Mr. Mannina had "plans to utilize irregular strategies to undermine Donald Trump's presidency."**

That statement was an accurate description/opinion made by OMG based on Mr. Mannina's own recorded comment stating he was "in conversation with a couple of retired

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

generals to try and explore what we can do" referring to interfering with the Trump Administration, between the 5:48-6:11 minute marks of the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

The issue of whether a person who is "embedded in the pentagon" or otherwise working for a government agency can actively take steps to undermine the executive branch of the federal government is exactly the kind of issue of public interest which D.C. Code § 16-5502 is intended to assure can be published. Mr. Mannina's comments go directly toward the economic and community well-being of the entire country, and Mr. Mannina's comments are directly aimed at President Trump, possibly the most public figure of all time.

D.C. Code § 16-5502 provides:

> If a special motion to dismiss . . . makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted.

Further, D.C. Code § 16-5501(3) defines an "issue of public interest" as:

> <u>an issue related to health or safety; environmental, economic, or community well-being;</u> the District government; <u>a public figure</u>; or a good, product, or service in the marketplace. The term "issue of public interest" shall not be construed to include private interests, such as statements directed primarily toward protecting the speaker's commercial interests <u>rather than toward commenting on or sharing information about a matter of public significance</u>. (Emphasis added.)

Fundamentally, Mr. Mannina made a major mistake. In an effort to impress a young lady on a date, he spilled the beans which he was either sworn to keep private, or the beans of his seditious thoughts and plans. Mr. Mannina is nothing less than a traitor to our country, who got caught and had the gall to turn around and sue a news reporter to reveal the truth.

Mr. Mannina apparently believes that in a perfect world, if one plans to undermine the

President of the United States, and expresses his plans, the recipient of his evil thoughts is honor bound to join and share to become a co-conspirator.

In any event, one cannot successfully be sued for defamation, making an untrue statement, for revealing the secrets of an insurrectionist which were revealed by that insurrectionist. This statement, like all the others, is not defamatory. To be defamatory, it must be a statement that is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).

## 2. Mr. Mannina took part in a meeting at the Pentagon regarding technology issues.

It is a fact that Mr. Mannina stated he took part in a secure meeting at the Pentagon regarding technology issues, and that his topic of expertise was Artificial Intelligence ("AI") between the 6:30-9:00 minute marks in the YouTube video titled "Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'."

Mr. Mannina's admissions fall under the definition of issues of public interest which D.C. Code § 16-5502 is intended to assure can be published. AI is a cutting-edge field of technology that has already started to impact health, safety, environmental, economic, and the general community well-being. Moreover, the government utilization of AI has been at the forefront of public interest even prior to its creation. More recently, AI regulation has been a hot button issue for the United States Congress.[2]

Moreover, Mr. Mannina did not indicate that this remark was false, other than to have had it in his list of false statements or false implications. Unfortunately, he never distinguished

---

[2] See the CRS report titled Regulating Artificial Intelligence: U.S. and International Approaches and Considerations for Congress

7

between the two choices, and this needs to be corrected, as the Defendants cannot discern whether any of his alleged supposedly defamatory remarks are statements or implications.

In any event, if Mr. Mannina made the statement, and his statement is published, there is axiomatically an absence of malice or falsity, and the remark is not defamatory.

**3.     Mr. Mannina had made "critical remarks" about President Trump's nominee for Secretary of Defense, Pete Hegseth.**

It is a fact that Mr. Mannina made critical remarks about Trump's nominee for Secretary of Defense, Pete Hegseth between the 9:55-10:45 minute marks of the YouTube video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)."

Mr. Mannina's comments on the Secretary of Defense falls under the D.C. Code § 16-5501(3) as it is an issue related to a public figure and the publishing of such comments was in furtherance of the right of advocacy on issues of public interest. Furthermore, half the country made negative remarks about Pete Hegseth when he was a nominee for becoming Secretary of Defense.  This is not defamatory.

**4.     Mr. Mannina collaborated with senior retired military leaders "to devise methods to counteract Trump's administration."**

This statement is an accurate description/opinion of what Mr. Mannina said; specifically, Mr. Mannina stated he was "in conversation with a couple of retired generals to try and explore what we can do" between the 11:25-12:22 minute marks of the YouTube video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)."

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

As the argument against this statement is essentially identical to that of the first alleged defamatory statement, the Defendants hereby incorporate the arguments by reference the points raised in response to the first alleged defamatory statement above.

**5. Mr. Mannina's meetings with senior retired military leaders "occurred in high-security environments, including 'The Tank,' a secure room within the Pentagon reserved for critical defense deliberations."**

In the video titled "[Pentagon Advisor Reveals Conversation "to Explore What We Can Do" to 'Protect People from Trump'](#)," Mr. Mannina explained that he was going to have a meeting with others in the "Tank" at minute mark 7:25-7:46. It appears that OMG mistakenly conflated two separate meetings when it stated in the article accompanying the above referenced video that Mr. Mannina's meetings with the retired military leaders were in the Tank.

However, this *de minimis non curat lex* mistake is not even a tempest in a teapot. It is a nothingburger. It is not defamatory to have it said about one that he meets retired military leaders in high security environments such as the Tank. To be defamatory, it must be a statement that is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006). Furthermore, when evaluating the statement in its full context, which includes the video, as required in *Clawson v. St. Louis Post-Dispatch, LLC*, the publication corrects its own inconsequential error by making it clear that there were two separate meetings, one that happened in the Tank, and one that did not.

Regardless, even if the statement was defamatory, it is of public interest. In fact, the conversation was videotaped and recorded because it is of public interest. An individual who was

9

embedded in the Pentagon and working with retired military leaders to undermine the President is necessarily related to the safety and community well-being of the Country.

**6. Mr. Mannina's "role extended beyond advising military officials" and included work with an advocacy group during the prior election which opposed the re-election of President Trump.**

This is a fact first stated by Mr. Mannina. At the 12:00-12:20 minute mark of the video titled [BREAKING VIDEO: Top Pentagon Advisor Reveals On Hidden Camera Conversation "with a Couple of Retired Generals to Explore What We Can Do" to 'Protect People from Trump' - O'Keefe Media Group](#), Mr. Mannina replied to a question about what he can do to stop President Trump from "stuff me might try to do," by stating that "outside of [Mr. Mannina's job], I'm in conversation with a few retired generals to try to explore what we can do." Furthermore, Mr. Mannina also confessed to Heidi Doe about his work against President Trump in the most recent election at the 16:30-18:30 minute mark of the same video.

As the argument against this statement is essentially identical to that of the first alleged defamatory statement, the Defendants hereby incorporates by reference the Response to the first alleged defamatory statement herein.

**7. The "confrontation" between Mr. O'Keefe and Mr. Mannina followed Defendant "OMG's release of undercover footage that detailed Mannina's admission to conversations about plans involving retired generals to take potential actions against President-elect Donald Trump."**

This statement stems from a misunderstanding on Mr. Mannina's part; the word "confrontation" is referring to the video of the confrontation, and not the confrontation itself.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

However, when taking the Complaint true and accurate, the error is ultimately *de minimis non curat Lex*. It is not damaging or defamatory to fail to specify that the actual confrontation between Mr. Mannina and Mr. O'Keefe happened at the end of the second date rather than at some other time. As previously indicated, a statement is only defamatory when it is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).

**8.    Mr. Mannina is a "Top Pentagon Advisor," a "Senior Advisor, Joint Staff, Department of Defense" and a "Top Pentagon Official."**

Mr. Mannina spoke to Heidi Doe regarding his role in the pentagon at the 5:47-6:10 minute mark of the video titled [BREAKING VIDEO: Top Pentagon Advisor Reveals On Hidden Camera Conversation "with a Couple of Retired Generals to Explore What We Can Do" to 'Protect People from Trump' - O'Keefe Media Group](#); Mr. Mannina styled himself as a Top/Senior Pentagon Advisor to the Joint Staff, saying he was "at this top consulting firm and my client is the Pentagon," and that he was "embedded in the Pentagon" by working "in the Joint Staff, which is the top military command." Furthermore, Mr. Mannina went on to say that his boss is the chairman of the Joint Chiefs.

Here, Mr. Mannina's statements tie into the ultimate story he represented to Heidi Doe that he is a high-level individual in the Pentagon who was working with retired military leaders to undermine the President.

As the argument against this statement is essentially identical to that of the first alleged defamatory statement, the Defendants hereby incorporates by reference the Response to the first alleged defamatory statement herein.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

Additionally, as indicated in the response to the 5th alleged defamatory statement, a statement is only defamatory when it is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006).  If anything, stating that Mr. Mannina was a "Top Pentagon Advisor," a "Senior Advisor, Joint Staff, Department of Defense" and a "Top Pentagon Official" would be a pleasant and unoffensive promotion in the Pentagon hierarchy that he was "embedded" in.

**The Acts were in Furtherance of the Right of Advocacy**

Mr. Manina's claims rest on the above-mentioned publications that were published by OMG.  However, those publications were made in furtherance of the right of advocacy on issues of public interest, which falls under D.C. Code § 16-5501(1)(A), and/or D.C. Code § 16-5501(1)(B).

According to D.C. Code § 16-5501 an act in furtherance of the right of advocacy on issues of public interest is defined as:

> (A) Any written or oral statement made:
>
>> (i) In connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or
>>
>> (ii) In a place open to the public or a public forum in connection with an issue of public interest; or
>
> (B) Any other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest.

OMG's written and video publications were all made in connection with issues under

consideration and review by both the legislative and executive branches of government, particularly those concerning unelected bureaucrats subverting the federal government. Specifically, House Resolution 697, titled "End the Deep State Act," was introduced and referred to the House Committee on Oversight and Government Reform, and President Trump addressed the issue directly during his address to Congress on March 4, 2025, stating that "it is very simple. The days of rule by unelected bureaucrats are over."

Additionally, all the written and video publications which Mr. Mannina's Complaint is based upon was done on a public forum in connection with issues of public interest.

Moreover, all the written and video publications involved the communication of views to members of the public in connection with an issue of public interest, as is the nature of journalism.

**Issues of Public Interest**

The speech at issue in the complaint is all related to Mr. Mannina, a person who is not elected and by his own admission was "embedded in the pentagon" who was also working to subvert President Trump's administration. The issue of unelected individuals working to undermine the federal government is directly related to the safety, economic, and community well-being of The United States of America, as the main goal of the federal government is to ensure the safety, economic, and community well-being of The United States of America.

Mr. Mannina also commented on and criticized President Trump and Defense secretary Pete Hegseth, two of the most public figures in the country, if not the planet.

These facts are relevant because D.C. Code § 16-5501(3) defines an "issue of public interest" as:

> an issue related to health or safety; environmental, economic, or community well-being; the District government; a public figure; or a good, product, or service in the marketplace. The term "issue of

>public interest" shall not be construed to include private interests, such as statements directed primarily toward protecting the speaker's commercial interests <u>rather than toward commenting on or sharing information about a matter of public significance</u>. (Emphasis added.)

As the stories published by OMG address topics concerning the safety, economic, and community well-being of The United States of America, as well as two public figures, the publications deal with issues of public interest as defined under D.C. Code § 16-5501(3).

WHEREFORE, the Defendants, O'KEEFE MEDIA GROUP (hereinafter referred to as "OMG"), JAMES O'KEEFE, and HEIDI DOE, ask this honorable Court to grant the Defendants' Special Motion to Dismiss the Plaintiff, JAMIE MANNINA's Complaint and dismiss the Plaintiff's Complaint with prejudice, and award the Defendants their costs, expenses, and attorneys' fees pursuant to D.C. Code § 16-5504(a), and further award such other and further relief as this honorable Court may deem just and proper.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

**DESIGNATION OF EMAIL ADDRESSES FOR SERVICE**

The undersigned attorneys of The Ticktin Law Group, hereby designate the following Email Address(es) for service in the above styled matter.  Service shall be complete upon emailing to the following email address(es) in this Designation, provided that all provisions for the District of Columbia regarding service via email are met.

Serv512@LegalBrains.com and Serv536@LegalBrains.com

**SERVICE IS TO BE MADE TO EACH AND EVERY EMAIL ADDRESS LISTED IN THIS DESIGNATION AND TO NO OTHERS.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been emailed this 28th day of July 2025, to **MARK S. ZAID, ESQUIRE,** Mark@MarkZaid.com, **BRADLEY P. MOSS, ESQUIRE,** Brad@MarkZaid.com, and **GEOFFREY DEWEESE, ESQUIRE**, Geoffrey@MarkZaid.com Mark S. Zaid, P.C., Attorneys for the Plaintiff, 1250 Connecticut Avenue, N.W. Suite 700 Washington, D.C. 20036

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757


 /s/ Peter Ticktin
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935