## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                              |   |                         |
|------------------------------|---|-------------------------|
|                              | * |                         |
| Jamie Mannina                | * |                         |
|                              | * |                         |
| Plaintiff,                   | * |                         |
|                              | * |                         |
| v.                           | * | Case No. 25-01524 (APM) |
|                              | * |                         |
| O'Keefe Media Group et al.   | * |                         |
|                              | * |                         |
| Defendants.                  | * |                         |
|                              | * |                         |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AS TO HEIDI DOE'S IDENTITY

Plaintiff Jamie Mannina ("Mr. Mannina") filed this straightforward lawsuit four months ago against the Defendants O'Keefe Media Group ("Defendant OMG"), James O'Keefe ("Defendant O'Keefe")(these two Defendants, who have been served and filed appearances, are collectively referred to as the "Defendants"), and Heidi Doe ("Defendant Doe"). Dkt. 1. Defendant Doe has yet to be served because her identity remains unknown, which is what led to the present dispute.

Mr. Mannina requested Defendants OMG and O'Keefe to provide Defendant Doe's identity and they declined. Dkt. 11-1 at ¶3 (Zaid Declaration). Therefore, Mr. Mannina filed a Motion for authorization from the Court to serve limited discovery, Dkt. 11, to which the Defendants failed to respond. The Court then *ordered* the Defendants to respond within seven days after service of the discovery requests, which occurred on September 8, 2025. Thus, this was not some routine discovery simply filed upon a party where objections could be raised. The questions served upon the Defendants were

submitted to the Court in advance and explicitly authorized. Yet, with less than two hours remaining in their deadline and no forewarning, on September 15, 2025, rather than comply with the Court's Order, the Defendants moved for a protective order regarding the identity of Defendant Doe. Dkt. 14 ("Defs' Mot.").

The Defendants' pleading is both procedurally improper and legally deficient. Respectfully, this Court should accordingly deny the Defendants' Motion, order compliance within twenty-four hours and consider whether the imposition of sanctions or a warning is appropriate.

## PROCEDURAL BACKGROUND

The present action was filed on May 14, 2025, seeking monetary damages in response to tortious activities by the Defendants implicating claims of false light, defamation, fraudulent misrepresentation, conspiracy to commit fraudulent misrepresentation, and violation of both federal and local wire tap laws. Dkt. 1. The Parties have already fully briefed two pending Motions to Dismiss (absent any Reply briefs) filed by the Defendants that remain awaiting resolution by this Court. Dkts. 7, 9.

On August 21, 2025, Mr. Mannina filed a Motion for Leave to Conduct Expedited Limited Discovery to learn the identity of Defendant Doe. Dkt. 11 ("Motion for Discovery"). The scope of the requested discovery, which was authorized through both interrogatories and document production requests, was the following:

(a) The true name of Defendant Doe;

(b) A valid address for Defendant Doe that would permit Mr. Mannina to properly serve her with the Summons and Complaint; and,

(c) Valid contact information, including a phone number and e-mail address, through which the undersigned counsel can communicate with Defendant Doe unless and until she retains legal counsel.

Id. at *6. Dkt. 11-2 (proposed discovery requests).

The Defendants failed to file a response to Mr. Mannina's Motion, and consequently he filed a Notice of Concession on September 6, 2025, bringing that intentional failure to the Court's attention. Dkt. 12. By way of a Minute Order on September 8, 2025, this Court granted Mr. Mannina's Motion:

> Defendant having failed to oppose Plaintiff's motion, the court grants it as conceded. LCvR 7(b). Defendant shall answer Plaintiff's Discovery Requests, ECF No. 11-2, within seven days of service.

Undersigned counsel promptly served the Court-authorized Requests for Interrogatories and Production of Documents on Defendants' counsel on September 8, 2025. Dkt. 13. On September 15, 2025, at the last minute, the Defendants filed their Motion for a Protective Order, Dkt. 14, and issued responses to Mr. Mannina's discovery requests objecting on the same legal grounds as set forth in their Motion. Dkts. 15, 16.[1]

## ARGUMENT

The Defendants have moved for a protective order pursuant to Federal Rules of Civil Procedure 26(d), and in reliance upon D.C. Code §§ 16-4701 (the "D.C. Shield Law"), to conceal the identity of Defendant Doe. Defs' Mot. at ¶¶2-8. They are wrong on both the facts and the law.

---

[1] The Defendants filed their discovery responses on the public docket, Dkt. Nos. 15, 16, ostensibly in contravention of Local Rule 5.2(a). Along with other rule violations outlined in this Opposition pleading, as well as those that have been previously brought to the attention of this Court, see e.g., Dkt. 8 at *2, n.2, Dkt. 10 at *2, n.4, they reflect a continued pattern of conduct by Defendants and their counsel of failing to comply with standards of professional conduct and the rules of, as well as showing disrespect to, this Court.

First, the Defendants had a clear and unmistakable opportunity to raise this argument once before and failed to do so. The Defendants could have more than reasonably raised this argument, along with any other possible defenses, in response to Mr. Mannina's Motion for Discovery. Dkt. 11. It was the deliberative decision of the Defendants to simply ignore that filing and concede the issue. They should not be permitted a second bite of the apple without at least demonstrating sufficient justification for why they failed to address this point originally. Otherwise, this latest Motion gives every appearance of an effort to intentionally delay the prosecution of this lawsuit. Even if that failure does not constitute a binding waiver of the Defendants' ability to raise the defense now, this Court would be well within its discretion to take note of the Defendants' conduct in this regard when assessing the merits of its current pleading.

Second, the Defendants' filing is procedurally improper, as it fails to comply with both the requirements of FRCP 26(d) and the Local Rules of the U.S. District Court for the District of Columbia. In seeking a protective order, the movant party "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(d)(1). The Defendants' Motion lacks any such certification, particularly because their counsel failed to contact undersigned counsel about any effort to resolve the dispute.[2]

---

[2] Furthermore, the Defendants failed to include a Proposed Order, as required by Local Rule 7(c), again failed to list their counsel's D.C. Bar identification number, as required by Local Rule 5.1(c)(1), and failed to confer with the undersigned regarding their planned Motion, as required by Local Rule 7(m). While these violations may seem petty, it has not even been three months since the Defendants appeared in this case, Dkt. 6 (which was filed while counsel was not in good standing), and there has been a continuing pattern of disregard by their counsel, who though residing outside of the jurisdiction is now currently licensed to practice law before this Court and should be required to abide by applicable rules and procedures.

Finally, and most importantly, the D.C. Shield Law (known as the District of Columbia Free Flow of Information Act) does not apply to the present action for a simple reason: Defendant Doe is not a "source" but is – according to the Defendants – a "reporter" or "journalist" affiliated with Defendants OMG and O'Keefe who took part in the underlying tortious activities.[3] The Defendants specifically rely on D.C. Code § 16-4702, which states the following:

> [N]o judicial, legislative, administrative or other body with the power to issue a subpoena shall compel any person who is or has been employed by the news media in a new gathering or news disseminating capacity to disclose (1) the source of any news or information procedure by the person while employed by the news media and acting in an official news gathering capacity…

Defs' Mot. at ¶¶4-5. The Defendants further rely upon a sole District Court case from 31 years ago as support for the invocation of this statutory provision. Id. at ¶¶6-8; citing Grunseth v. Marriott Corp., 868 F. Supp. 333 (D.D.C. 1994). That case, which of course is not binding upon this Court, concerned an effort by the plaintiff to compel the disclosure of the identity of a confidential source who provided information to a reporter, even though the plaintiff had already actually secured a copy of the specific information that had been disclosed to the reporter. Id. at 334-35.[4]

Neither the text of the D.C. Shield Law nor the principle outlined in Grunseth supports granting the Defendants requested protective order in the present case. The

---

[3] Notably, Mr. Mannina does not concede that any of the Defendants should be considered journalists or members of the news media, whether as a matter of fact or law. That is an issue that will likely be the subject of further motion practice. But for purposes of this Opposition, the point is irrelevant as the law does not support the Defendants' Motion regardless of Defendant Doe's true status.

[4] There are other distinctions between Grunseth and this matter that should influence this Court's declination to apply its protections, including that Grunseth involved discovery requests served on non-parties. 868 F. Supp. at 334.

statutory text specifically refers to protecting the "source" of information who consequently provided that information to a person employed in a news gathering capacity. See D.C. Code Ann. §§ 16-4072(1). Grunseth specifically refers to the concept of a protected source being an individual working for a third party (in that case, a hotel) who then provided information to a reporter employed by a media outlet (the Minneapolis Star Tribune). Id., 868 F. Supp. at 334-36.

Defendant Doe is none of those things. She was not, for example, an anonymous employee or casual bystander who happened to be present at the D.C. restaurants where the video recordings of Mr. Mannina took place. See Dkt. 1, ¶¶23, 28. She is not the "source", whether confidential or otherwise, of a journalist but rather she is herself – as the Defendants assert – an "undercover reporter", see Defs' Mot. at ¶5, who reached out to Mr. Mannina on the dating application Bumble under false pretenses and in violation of the company's terms and conditions, initiated the possibility of a connection under false pretenses, and secretly recorded Mr. Mannina throughout the course of two dates, see Dkt. 1, ¶¶22, 24-26, 28-29. The Defendants themselves have referred to Defendant Doe as a "journalist", not a "source", who collects, reports, analyzes and disseminates news. See Dkt. 9 at *1.[5]

---

[5] Alternatively, if for some reason the Court concludes the D.C. Shield Law applies, there is an exception "if the court finds by clear and convincing evidence that the news or information sought 'is relevant to a significant legal issue', that it 'could not, with due diligence, be obtained by any alternative means', and that there is an 'overriding public interest in the disclosure'." Grunseth, 868 F. Supp. at 336. See Dkt. 11-1 at *passim* (Zaid Declaration).

Quite simply, the D.C. Shield Law's provisions no more protect the identity of Defendant Doe than they would Defendant O'Keefe.[6] They are not "sources" but, by their own assertion, are employed as individuals engaged in news gathering activities. Neither the D.C. statutory provision, or any other applicable media shield law, applies to them or Defendant Doe, and the Defendants certainly have not cited any case in which the provision has been applied in a similar factual context.[7]

---

[6] It is unclear from the substance of the Defendants' Motion if they are arguing or even suggesting that a self-described "undercover reporter" would qualify for protection under the D.C. Shield Law in a manner distinct from a public-facing reporter. The undersigned are not aware of any case law within the D.C. Circuit addressing that notion. Ultimately, it is not Mr. Mannina's burden to proactively flesh out the parameters of such an argument. As the movant party, it is the burden of the Defendants to properly frame and explain their arguments, and if indeed this is their legal position they have failed to meet their burden to do so. See United States v. Phillip Morris USA, Inc., 396 F.3d 1190, 1195 (D.C. Cir. 2005)("[A] litigant does not properly raise an issue by addressing it in a 'cursory fashion,' with only 'bare-bones arguments …[]"), quoting Cement Kiln Recycling Coalition v. EPA, 255 F.3d 855, 869 (D.C. Cir. 2001)(per curiam); Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

[7] The off-handed remark by the Defendants suggesting that recent tragic events involving political violence somehow alters the legal equation surrounding Defendant Doe's legal entitlement to anonymity, Defs' Mot. at ¶3, is an exploitative red herring. It has no relevance to the application of the D.C. Shield Law or their Motion as a matter of law. Furthermore, lead counsel for Mr. Mannina, Mark S. Zaid, is well acquainted with the realities of threats to personal safety in our current political environment having been the subject of numerous death threats as a result of his work as a whistleblower attorney, including from one individual who was prosecuted and sentenced to over one year in jail. See e.g., *https://www.nbcnews.com/news/us-news/bleed-you-out-pig-feds-bust-man-threatening-trump-whistleblower-n1139996* (last accessed September 17, 2025).; *https://www.politico.com/news/2021/06/10/man-threatened-whistleblower-gets-sentence-493159* (last accessed September 17, 2025). It is worth noting, particularly for later use, that the Defendants recognize, while trying to conceal the identity of Defendant Doe, that the dangers that Mr. Mannina has suffered are real. Defs' Mot. at ¶12.

## **CONCLUSION**

For the reasons outlined above, this Court should deny the Defendants' Motion for

Protective Order as to Heidi Doe's Identity, order compliance within twenty-four hours

and impose, if viewed as justified, any appropriate sanctions or warnings.[8]

Date: September 17, 2025

Respectfully submitted,

*s/ Mark S. Zaid*

_____

Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700 – PMB 5287
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for the Plaintiff

---

[8] The Defendants' final argument that "Ms. Doe's identity has a high probability of being rendered as moot, as there are two pending motions to dismiss that, if granted, would resolve this matter in its entirety," Defs' Mot. at ¶11, is completely disingenuous. Defendant Doe is not yet a party to this litigation, is not represented by the same counsel (which would have mooted the need for these efforts), has offered no arguments in support of the pending Motions to Dismiss and may be subject to liability completely separate and apart from the other Defendants, particularly depending upon what actual substantive discovery might ultimately reveal.