IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jamie Mannina | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 25-01524 (APM) |
| | * | |
| O'Keefe Media Group, et al., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR PROTECTIVE ORDER AS TO HEIDI DOE'S IDENTITY AND RESTATEMENT OF TIMELY OBJECTIONS TO THE PLAINTIFF'S DISCOVERY REQUESTS**

For the better part of four months, Defendants O'Keefe Media Group and James O'Keefe (collectively "Defendants"), notwithstanding their vocal rhetoric of being fighters, have sought every procedural opportunity to disentangle themselves from this litigation. Some of the attempts were to be expected, such as the filing of a routine Motion to Dismiss at the outset. Yet in each instance only the minimal amount necessary was done to support their efforts. Reply briefs were surprisingly never filed to further defend their Motions, especially to counter the arguments offered in opposition. Even more atypical, opposition briefs were not filed in response to the Plaintiff's attempts to move this case forward. And every defense filing demonstrated a complete disregard of the local rules that govern litigation practices and attorney conduct before this Court, even after the initial errors were identified.

Plaintiff Jamie Mannina ("Mr. Mannina") will not burden this Court with a recitation of the factual and legal chronology surrounding the present case for a fourth time. That has already been done more than sufficiently in prior filings. See e.g., Dkts. 8 at *1-*5 (filed July 21, 2025)(Opposition to Rule 12(b)(6) Motion to Dismiss); 10 at *2 (filed August 6, 2025)(Opposition to Special Motion to Dismiss); 17 at *1-*3 (Opposition to Motion for Protective Order). Most relevant to this continuing debate, this Court previously denied the Defendants' Motion for Protective Order as to Heidi Doe's Identity ("Defs' First Protective Mot."), Dkt. 14 (filed September 15, 2025), and it ordered the Defendants to respond to Mr. Mannina's discovery requests by October 13, 2025. See Dkt. 19 ("Discovery Order") at 3-4 (filed October 6, 2025); see also id. at 3 (outlining steps Defendants could later take to seek leave of Court to seal Amended Complaint reflecting Heidi Doe's true identity).

Instead of complying with a second Order of this Court, see Discovery Order, the Defendants have once again refused and instead filed a Renewed Motion for Protective Order as to Heidi Doe's Identity, Dkt. 20 (filed October 10, 2025)("Defs' Renewed Mot."), which regurgitates some of the very same legal arguments this Court already explicitly rejected, particularly asserting that Defendant Heidi Doe ("Defendant Doe") is a "source". Id. at 3-7. Not only are the Defendants' arguments procedurally improper, untimely and erroneous with respect to the law, but the factual claims asserted by Defendant James O'Keefe in a styled "affidavit" (though the document is actually a sworn declaration) contradict his own past public statements, as well as his counsel's prior legal filings before this Court.

2

Respectfully, it is not enough for this Court to simply deny the Defendants' Renewed Motion and order them – for what would be a third time – to properly respond to Mr. Mannina's discovery requests. The Court should consider exercising its own inherent contempt authorities to issue a Show Cause Order or other appropriate mechanism to require an explanation from Defendants and their counsel for why they should not be held in contempt and subject to sanctions.[1]

## ARGUMENT

### I. THE DEFENDANTS' RENEWED MOTION IS PROCURALLY IMPROPER

The Defendants filed their Renewed Motion seeking the same relief this Court has already previously rejected. Absent from the Defendants' pleading is a single solitary piece of case law or reference to applicable rules – whether under the Federal Rules of Civil Procedure or the Local Rules of the U.S. District Court for the District of Columbia – that would permit the Defendants to just keep filing renewed motions because they disliked this Court's earlier ruling. If anything, given the procedural posture of the circumstances, the Defendants should have filed a motion to revise an interlocutory

---

[1] While the undersigned were preparing this filing, counsel for the Defendants unexpectedly reached out to indicate they were planning to file a Motion to Withdraw as counsel, as well as to seek an enlargement of time of the Defendants' obligation to comply with the Discovery Order. The undersigned noted that Mr. Mannina took no position on the requested relief, and the Defendants filed their Motions on October 14, 2025. Dkts. 21, 22. While Mr. Mannina still takes no position on whether Defendants' counsel should be permitted to withdraw, the proffered details outlined in the Defendants' Motion for Enlargement of Time to Comply with Court Order, Dkt. 21, raise troubling questions and concerns. Therefore, Mr. Mannina has accordingly filed a contemporaneous response for this Court's consideration. Dkt. 23.

3

decision under Federal Rules of Civil Procedure 54(b)("FRCP 54(b)")[2] or a motion for reconsideration under Federal Rules of Civil Procedure 60(b)("FRCP 60(b)").[3]

On this ground alone, the Court would be warranted in denying relief.

## II. THE DEFENDANTS' MOTION STILL FAILS AS A MATTER OF LAW

### A. The Defendants' Misunderstandings And Mistakes Do Not Excuse Their Previous Failures

Mr. Mannina – through the undersigned – has complied with the rules of this Court and binding case law throughout these proceedings. Before ever seeking leave of this Court to initiate the discovery process concerning the identity and contact information of Defendant Doe, the undersigned sought voluntarily cooperation from the Defendants regarding this information but were denied. Dkt. 11-1, ¶3 (Declaration of Mark S. Zaid, Esq.). Mr. Mannina thereafter sought leave of this Court to conduct limited, expedited discovery concerning that narrow set of information, and conferred with Defendants' counsel before filing his Motion. Dkt. 11 ("Mot. for Leave").

The Motion for Leave was clear in its requested relief: court authorization to serve limited discovery upon the Defendants that would require the disclosure of Defendant

---

[2] A district court may revise its own interlocutory decisions at any time before the entry of judgment adjudicating all the claims and the parties' rights and liabilities. See Nyambal v. Alliedbarton Sec. Servs., LLC, 2024 U.S. Dist. LEXIS 244477, *1 (D.D.C. May 28, 2024), citing Johnson v. Mukasey, 248 F.R.D. 347, 353 (D.D.C. 2008)(internal quotations omitted). Relief may be granted pursuant to Rule 54(b) "as justice requires" — a standard that may be met where, for instance, the court "has patently misunderstood" the parties, strayed far afield of the issues presented, or failed to consider "a controlling or significant change in the law or facts . . . since the submission of the issue." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)(internal citations and quotation marks omitted). None of these factors exist here.

[3] The more exacting motion for reconsideration under FRCP 60(b) requires a court to find "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." See Campbell v. Dep't of Justice, 231 F. Supp. 2d 1, 7 (D.D.C. 2002). Nothing within the Defendants' Motion meets this standard.

Doe's true name, a residential address at which she can be properly served, and other available contact information. Id. at *2. The Defendants, however, chose not to file an Opposition brief (or any response for that matter), and this Court subsequently granted the Motion for Leave and *ordered* the Defendants to respond to Mr. Mannina's discovery requests within seven days of service. See Minute Order (issued September 8, 2025).[4]

When Mr. Mannina opposed the Defendants' First Motion for Protective Order, he clearly argued that the Defendants had forfeited their right to raise their asserted defense under the D.C. Shield Law when they failed to file any opposition. See Dkt. 14 at *4. This Court explicitly concurred, noting that the Defendants had forfeited their right to object to the discovery requests, see Discovery Order at 1-2, and that their failure to provide any proof supporting their assertion that Defendant Doe was a "source" was "fatal". Id. at 2.

Without a single case citation in support, the Defendants now insist they did not forfeit or waive their right to object. See Defs' Renewed Mot., ¶¶4, 6. Instead, they argue the only thing they waived, at most, was an objection to discovery being expedited. Id.,

---

[4] The Defendants' surprising assertion in their Renewed Motion that they apparently did not file an Opposition because they "had no objection to Mr. Mannina's request to expedite the Defendants' responses to the limited discovery", Defs' Renewed Mot., ¶3, is more than puzzling. Mr. Mannina accurately noted in his Motion for Leave that the Defendants, through counsel, had noted their opposition to Mr. Mannina's requested relief. See Dkt. 11 at *2. That was premised on a clear and explicit statement by Defendants' counsel via e-mail on August 19, 2025, in which he indicated the Defendants' opposition to Mr. Mannina's Motion for Leave. See Exhibit "1" (e-mail from Defendants' counsel regarding Motion for Leave). It is axiomatic that Mr. Mannina's Motion for Leave would have been filed as a consent motion if the Defendants "had no objection" to it. Moreover, Mr. Mannina purposefully included the proposed text of the discovery requests, see Dkt. 11-2, so that the Defendants could object to or comment on the specific language. By pursuing this tactic, it was intended by Mr. Mannina that any Order issued by the Court authorizing limited discovery would then avoid subsequent litigation, such as this, concerning the scope of the approved requests.

5

¶6. This is nothing short of ridiculous and does not come close to justifying a revision of this Court's Order. A diligent and responsible officer of this Court would have raised all available defenses at the outset in opposition to Mr. Mannina's Motion for Leave. The Court noted that specifically. See Discovery Order at 1-2 ("Defendants cannot now be heard to complain about having to disclose Doe's identity, when they had the opportunity to object to such disclosure but stayed silent.").

If the Defendants misunderstood something or made a mistake in how they handled their response to Mr. Mannina's Motion for Leave, that is not a legal basis to overturn the Court's two Orders.

### B. This Court Already Concluded The Defendants Have Not Demonstrated Defendant Doe Ever Qualified As A "Source"

In its Discovery Order, this Court expressly concurred with Mr. Mannina that the Defendants could not invoke the D.C. Shield Law to object to the disclosure of Defendant Doe's true name and contact information. Id. at 2. This Court correctly noted that the evidentiary burden generally falls on the moving party who is invoking the privilege, and that Defendants had not satisfied that burden given the absence of evidence that Defendant Doe qualified for protection pursuant to the D.C. Shield Law, if even applicable. Id. at 2-3.

The Defendants now try to wiggle their way out of their own created legal jam by reviving their original argument that Defendant Doe was a "source" but now attempt to support their position through an untimely sworn declaration by Defendant James

6

O'Keefe, see Dkt. 20-5.[5] Of course, this newly supported factual claim is completely inconsistent with everything the Defendants have publicly stated previously.

Defendant Doe, along with numerous other individuals who have engaged in these "gotcha" dating sting operations for the Defendants, has been described repeatedly as an undercover reporter or citizen journalist, including on multiple occasions by Defendant O'Keefe. See, e.g., *https://www.youtube.com/watch?v=V28YKcP-ljk&list=PPSV* (video from first date, time stamp at 0:32, which identifies Defendant Doe with title "OMG Journalist"); id. (same video, time stamp at 7:00, Defendant O'Keefe describes Defendant Doe as "undercover reporter" and "undercover journalist"); id. (same video, time stamp at 13:53, Defendant O'Keefe again identifies Defendant Doe as "undercover reporter"). And as this Court noted, the Defendants during this very litigation have similarly described Defendant Doe in that same vein. See Discovery Order at 3; see also Dkt. 9 at 1 (Defendants' Special Motion to Dismiss)("The Defendant, Heidi Doe, is a citizen journalist.")(filed July 28, 2025). The Defendants cannot just rewrite history when confronted with legal consequences they do not like.

Nor is this a new method of operations for the Defendants: it is quite arguably their entire business model. Defendant O'Keefe asks for donations to support OMG's "army of journalists." See *https://www.youtube.com/watch?v=YEfak30GGvg* (Defendant O'Keefe

---

[5] The Defendants' assertion they "mistakenly" forgot to previously offer a sworn affidavit in support of their Original Motion, see Defs' Renewed Mot., ¶9, raises more questions than it answers. In the Defendants' First Motion, they clearly identified Defendant Doe as an "undercover reporter" who was "acting in a news gathering capacity." See Defs' First Protective Mot., at 2, ¶5. Defendants argued that the law protected the disclosure of the identity of undercover reporters, not that Defendant Doe was actually not an undercover reporter. Are the Defendants' suggesting that if Defendant O'Keefe had properly and timely submitted a sworn affidavit/declaration earlier alleging Defendant Doe was actually a "source", then Defendants' counsel would have contradicted that clear characterization in their own Motion?

7

video, time stamp 1:25, seeking donations to support "army of journalists"); *https://www.youtube.com/watch?v=iEXwRlKKcRg* (Defendant O'Keefe video discussing sending "hundreds of hidden cameras to citizen journalists"); *https://www.youtube.com/watch?v=OpdLBkDwkLw* (video trailer for "O'Keefe Academy Masterclass on Journalism Ethics", time stamp at 0:52, includes Defendant O'Keefe stating "the citizen journalism army at OMG"); *https://www.youtube.com/ watch?v=AbhOLlcn7jE* (video trailer for OMG training event for "American swipers", a term describing undercover journalists using fake dating profiles);

    Defendants' activities regarding Mr. Mannina was not the first time they have targeted someone for one of their reports and secretly recorded these fake dates. The undersigned counsel have confirmed at least three other men who connected with Defendant Heidi Doe on the dating app Bumble and whose subsequent dates were secretly recorded and posted in sensational videos around the same time that Defendants recorded the dates with Mr. Mannina, including one which occurred prior to the dates with Mr. Mannina.

    Defendant Doe, based on years of descriptions and videos posted by Defendants O'Keefe and OMG, was what the Defendants describe as an undercover reporter or journalist, or more specifically an "American swiper". She was never a source, and certainly not as that term is commonly defined under law or even common usage.

    This Court should respectfuly deny the Defendants' Renewed Motion on this basis alone as well.[6]

---

[6] If this Court were to even substantively consider providing any weight to Defendant O'Keefe's untimely sworn declaration replete with its speculative and unproven factual assertions, it should not constitute the end of the debate. Instead, it should open

8

> i. *The Court Identified The Next Proper Step For The Defendants To Seek To Shield Defendant Doe's Identity From The Public*

The proper course of action by the Defendants in complying with the Court's two Orders would have been to truthfully and fully respond to the authorized discovery requests and then, when Mr. Mannina amended his Complaint to include the newly revealed Defendant Doe's identity and filed it under seal per the Court's Order, the Defendants could attempt to justify to the Court why her identity should remain under seal. As the Court explained:

> That said, if Plaintiff amends his complaint to reflect Doe's true identity, such amended pleading shall be filed under seal. Thereafter, within seven days, Doe may move to keep her identity under seal. If she fails to do so, the court will publicly docket the complaint.

Discovery Order at 3. Then, and only then, could the Defendants seek to meet the five-factor balancing test articulated in In re Sealed Case, 971 F.3d 324 (D.C. Cir. 2020), which determines whether a party has met the burden needed to overcome the presumption in favor of disclosing litigants' identities. The Defendants certainly have not met that burden simply by submitting a questionable declaration from Defendant O'Keefe.[7] Mr. Mannina will be prepared to substantively respond to any such attempt to hide Defendant Doe's identity from the public at that time.

---

Defendant O'Keefe to an immediate deposition and written discovery to explore the accuracy of the Defendants' claims and particularly whether the claims are perjurious in light of prior assertions by his counsel on his behalf, as well as the numerous public statements he has made over the years about his "undercover journalists". See *infra*.

[7] A party seeking anonymity "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d at 326. At a minimum one would expect a sworn declaration from Defendant Doe herself regarding why her identity needs to be protected. The latest filing from the Defendants seem to suggest that is forthcoming, Dkt. 21, ¶4, but Defendant Doe has not (nor counsel for her) entered an

### III. THIS COURT SHOULD RESPECTFULLY ISSUE A SHOW CAUSE ORDER TO THE DEFENDANTS AND THEIR COUNSEL

> Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)(internal citations omitted).

Throughout this litigation, which has only existed for several months, the Defendants – and particularly their listed counsel – have repeatedly engaged in a series of violations of the Federal Rules of Civil procedure and the Local Rules. The undersigned highlighted these violations in each of their filings responding to the Defendants' previous dispositive motions. See Dkt. 17 at 3 n.1, 4 n.2 (delineating both past and new violations). Not to be outdone, the Defendants nonetheless repeated some of the same violations in their Renewed Motion, namely violations of the Local Rules by filing their discovery responses on the public docket and failing to include a Proposed Order or their counsel's D.C. Bar identification number. They also violated FRCP (26)(c)(1) violation for failing to include a statement of certification regarding good faith efforts to confer and avoid the need for a protective order.[8] The Defendants' counsel is a Member of this Court (although his renewal was filed only after the undersigned demonstrated the professional courtesy of notifying him his registration was not current when he filed his Notice of

---

appearance in this case and she would still need to meet the high standard explained above.

[8] The Defendants did, to be sure, confer with the undersigned to seek Mr. Mannina's position regarding the Renewed Motion, which obviously was opposed. It is unclear why, in the context of that outreach, the Defendants did not attempt to comply with the conferral obligations of FRCP 26(c)(1).

Appearance) and should be required to maintain the proper standards and adherence to the rules that govern all attorneys who are afforded the privilege of being admitted to practice here.

In addition to denying the Defendants' Renewed Motion, Mr. Mannina respectfully believes the circumstances warrant the Court issuing a Show Cause Order requiring the Defendants to explain why they should not be held in contempt and subject to sanctions. The undersigned do not make this request lightly or without due regard for the ability of an attorney to zealously advocate for the interests of a client. Contempt citations understandably are only to be issued with caution and "only when the rules do not provide the court with sufficient authority to protect their integrity and to prevent abuses of the judicial process." See United States v. Shelton, 539 F. Supp. 2d 259, 262 (D.D.C. 2008), quoting Cobell v. Babbitt, 37 F. Supp. 2d 6, 11 (D.D.C. 1999); see also Shepherd v. ABC, 62 F.3d 1469, 1475 (D.C. Cir. 1995)(outlining additional inherent sanction remedies, such as awards of attorneys' fees and expenses).

To impose monetary sanctions, a court must make specific findings by clear and convincing evidence that a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. See Priority One Servs. V. W&T Travel Servs., LLC, 987 F. Supp. 2d 1, 4 (D.D.C. 2013)(internal quotations and citations omitted). For example, a demonstration of bad faith "would require finding an intent unreasonably to delay the proceedings". See id. at 5, quoting United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992); see also Robertson v. Cartinhour, 883 F. Supp. 2d 121, 129 n.26 9 (D.D.C. 2012)("[B]ad faith … can be proven indirectly through evidence of objective actions that lead to an inference of subjective intent....").

Given the Defendants' repeated violations of the Federal Rules of Civil Procedure and the Local Rules, as well as their frivolous effort to delay this proceeding through an improper and meritless second attempt to disregard two Court orders, this Court would be well within its discretion to issue a Show Cause Order regarding whether any sanctions should be imposed. The undersigned respectfully submit those sanctions should at a minimum include, but not be limited to, payment to cover all attorneys' fees tied to preparing the current Opposition pleading.[9]

## CONCLUSION

For the reasons outlined above, this Court should deny the Defendants' Renewed Motion for Protective Order as to Heidi Doe's Identity, order compliance within twenty-four hours and issue, if viewed as appropriate, a Show Cause Order regarding the nature of sanctions to be imposed.

---

[9] That Defendants' current counsel may be withdrawing from the litigation, Dkt. 22, is irrelevant. Mr. Mannina was still required to have to spend the time and resources responding to these Motions and challenging the Defendants' continuing noncompliance with the Court's Orders.

Date: October 15, 2025

                                            Respectfully submitted,

                                              *s/ Mark S. Zaid*
                                          _____
                                          Mark S. Zaid, Esq.
                                          D.C. Bar #440532
                                          Bradley P. Moss, Esq.
                                          D.C. Bar #975905
                                          Mark S. Zaid, P.C.
                                          1250 Connecticut Avenue, N.W.
                                          Suite 700 – PMB 5287
                                          Washington, D.C. 20036
                                          (202) 498-0011
                                          Mark@MarkZaid.com
                                          Brad@MarkZaid.com

                                          Attorneys for the Plaintiff