UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIE MANNINA,<br><br>    Plaintiff,<br><br>    v.<br><br>O'KEEFE MEDIA GROUP, *et al.*,<br><br>    Defendants. | No. 25-CV-01524-APM |

**THE DISTRICT OF COLUMBIA'S NOTICE OF
INTERVENTION UNDER RULE 5.1 TO DEFEND THE
CONSTITUTIONALITY OF A DISTRICT OF COLUMBIA STATUTE**

Plaintiff Jamie Mannina sued Defendants O'Keefe Media Group (OMG), James O'Keefe, and Heidi Doe alleging, among various other causes of action, that they illegally recorded private conversations he engaged in without his consent in violation of D.C. Code § 23-542 (D.C. Wiretap Statute). That statute, which generally forbids the interception of oral communications, allows interceptions by a party to the communication, but with an exception if that person is committing the interception with the purpose of committing a tort. Plaintiff asserts that is the case here—that Defendants recorded his conversations with the purpose of committing the torts of defamation and false light. Defendants argue in moving to dismiss the case that this tortious purpose exception violates the First Amendment. The District of Columbia (the District) files this brief in intervention under Rule 5.1 to defend the D.C. Wiretap Statute's constitutionality. Because the statute is constitutional, the Court should deny Defendants' motions to dismiss in this respect. The District takes no position on any other question, factual or legal, in this action.

**BACKGROUND**

The District's recitation of the factual background of this matter is drawn from the allegations in the Complaint [1].[1]  Mannina was formerly an employee of Booz Allen Hamilton, and, in April 2022, began working as a strategic analyst for the Joint Staff, under the overall leadership of the Chairman of the Joint Chiefs of Staff.  Compl. ¶¶ 11–12.  In December 2024, he was contacted by Heidi Doe on the dating app Bumble.  *Id.* ¶ 22.  After texting for a period, the two agreed to meet for a date at Jaleo, a restaurant in the District, on January 9, 2025.  *Id.* ¶ 23.  During that date, Doe "began to change the subject and ask questions about Mr. Mannina's work, pressing him for more details as he told her about what he did at the Pentagon and directly soliciting information about his political views."  *Id.* ¶ 25.  Mannina, among other statements, "expressed his own negative feelings about President-Elect Trump, and he relayed readily available information from media sources that put the incoming nominee to serve as Secretary of Defense in a bad light."  *Id.*  After that date, the two met for a second date near the Wharf on January 11, 2025.  *Id.* ¶ 28.  During this second date, Doe again "routinely steered the conversation back to politics and Mr. Mannina's work for the U.S. Government."  *Id.* ¶ 29.  Afterward, Mannina was unexpectedly approached outside the restaurant by O'Keefe and two other individuals recording him with cameras and microphones, who "repeatedly pestered him with questions and accusations."  *Id.* ¶¶ 30–31.

The following Monday, January 13, 2025, Mannina alleges upon information and belief that O'Keefe contacted the Department of Defense (DoD) Public Affairs office and provided

---

[1]     As of the date of filing, the Amended Complaint [33] remains sealed.  The District's brief cites the Complaint on the understanding that the factual and legal assertions in the Amended Complaint are identical, save for the substitution of Heidi Doe's true name.  *See* Nov. 11, 2025 Minute Order (conveying that the Amended Complaint "does no more than identify Doe by her true name as a defendant").

them "a copy of at least parts of the video of the two dates with Heidi," and Booz Allen "also became aware of the video." *Id.* ¶ 32. Mannina was removed from his work at the Pentagon that day and fired from Booz Allen the next day. *Id.* ¶¶ 32–33.

Also on January 14, 2025, O'Keefe published a video on YouTube that featured commentary by O'Keefe along with "numerous short clips and edits that spliced together various comments made by Mr. Mannina over the course of the two dates," *id.* ¶ 35 (referring to this video as the "Secret Video"), as well as a second video in which O'Keefe "takes credit for Mr. Mannina being fired," *id.* ¶ 37. On January 15, 2025, the O'Keefe Media Group posted an article on its website embedding the Secret Video, along with pictures taken from that video. *Id.* ¶ 39.

Ultimately, Mannina alleges that "[t]hrough numerous edits and splices from statements made throughout both dates, and even between each date, the various videos and articles were created to intentionally provide false or implied evidence to support Defendants OMG and O'Keefe's fabricated claims that Mr. Mannina was essentially attempting to launch an unlawful coup against President Trump." *Id.* ¶ 45. Elsewhere, Mannina asserts that "this was not the first time the Defendants used dating apps to arrange dates with individuals whom Defendants OMG and O'Keefe sought to target as part of their efforts to further their extreme partisan political agenda." *Id.* ¶ 34.

Mannina brought suit against the Defendants on May 14, 2025. *See id.* He asserts claims for defamation, false light, fraudulent misrepresentation, conspiracy to commit fraudulent misrepresentation, and violations of the D.C. Wiretap Statute, as well as 18 U.S.C. § 2511, the federal equivalent. *See id.* ¶¶ 46–72. To invoke the tortious purpose exception, he alleges that "the Defendants intended to obtain recordings of statements under false pretenses from Mr. Mannina which would be manipulated, edited and spliced together along with written comments

that were designed to place Mr. Mannina in a false light and/or defame him." *Id*. ¶ 71. For relief, he primarily seeks damages, *see id.* at 20, and for his wiretapping claim he seeks "actual damages, to include any profits made by the violations, along with punitive damages and attorneys' fees and costs given the deliberate and outrageous nature of the resulting defamation and/or false light," *id*. ¶ 72.

After a period of early discovery, an Amended Complaint containing Heidi Doe's identity was filed under seal on November 3, 2025. On November 24, 2025, all Defendants moved to dismiss, with Heidi Doe arguing, among other points, that the D.C. Wiretap Statute is unconstitutional under the First Amendment. *See* Def. Heidi Doe's Mot. Dismiss Pl.'s First Am. Compl. (Doe MTD) [40] at 32–36.[2] Manina opposed on December 22, 2025, *see* Pl.'s Mem. Opp. Def. Heidi Doe's Mot. Dismiss Pl.'s First Am. Compl. (Pl.'s Opp.) [50], and Doe replied on January 5, 2026, *see* Def. Heidi Doe's Reply Supp. Mot. Dismiss Pl.'s First Am. Compl. (Doe Reply) [51]. On December 10, 2025, Doe filed a notice under Rule 5.1 notifying the Court that she challenged the constitutionality of a federal statute, 18 U.S.C. § 2511(2)(d), and the D.C. Wiretap Statute. *See* Not. of Const'l Question [47].

---

[2] The District understands that the other two Defendants have sought to join that motion, *see* Defs. O'Keefe Media Grp. & James O'Keefe's Not. Joinder to Def. Heidi Doe's Mot. Dismiss [41], and that Mannina opposed this joinder and moved to strike certain of Doe's arguments for dismissal, *see* Pl.'s Mot. Sever Defs. O'Keefe Media Grp. & James O'Keefe's Joinder From And/Or Striking of Def. Heidi Doe's Mot. Dismiss [44]. The District takes no position on either filing, except in two respects. First, the District asks the Court to resolve the motion to strike first, because if it is granted and Doe's constitutional challenge is struck, the question of the D.C. Wiretap Statute's constitutionality will be mooted. *See Council on Am.- Islamic Relations Action Network v. Gaubatz* (*CAIR IV*), 31 F. Supp. 3d 237, 256 n.7 (D.D.C. 2014) (remarking on courts' "obligation to avoid constitutional questions if at all possible"). Second, if that argument is not struck and motion to sever is denied, the District's arguments about the constitutionality of the D.C. Wiretap Statute apply equally to the O'Keefe Media Group and O'Keefe as they do to Doe.

**ARGUMENT**

I. **The Tortious Purpose Exception Is Constitutional Under the First Amendment.**

At issue is the D.C. Wiretap Statute, which establishes a criminal penalty for "any person who in the District of Columbia willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication."  D.C. Code § 23-542(a)(1); *see also id*. § 23-542(a)(2), (3) (similar prohibitions on the disclosure and use of intercepted communications).  "Any person whose wire or oral communication is intercepted, disclosed, or used in violation" of the D.C. Wiretap Statute also "[has] a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use, such communications."  D.C. Code § 23-554(a)(1).  The D.C. Wiretap Statute has a few exceptions, including as relevant here that "[i]t shall not be unlawful under this section for a person not acting under color of law to intercept a wire or oral communication, where such person is a party to the communication, . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of . . . laws of . . . the District of Columbia . . . ."  *Id*. § 23-542(b)(3).

The tortious purpose exception has already survived a similar constitutional attack as the one posed by Defendant Doe.  *See* Doe MTD at 33 (citing *Democracy Partners v. Project Veritas Action Fund* (*Democracy Partners II*), 453 F. Supp. 3d 261, 288–89 (D.D.C. 2020) (Huvelle, J.)); Pl.'s Opp. at 39 (same).  In *Democracy Partners*, one of the defendants obtained an internship at the offices of one of the plaintiffs under false pretenses, secretly recorded everything she had access to, and transmitted the recordings to O'Keefe and the other defendants, who published a series of videos depicting the plaintiffs in an unflattering light.  *Democracy Partners II*, 453 F. Supp. 3d at 269–71.  The *Democracy Partners II* plaintiffs brought a claim under the D.C. Wiretap Statute and the defendants sought summary judgment

5

arguing that the tortious purpose exception violates the First Amendment. *See id.* at 288. The court rejected that argument and upheld the statute. *Id.* at 289. Although this decision is currently on appeal, *see* Doe MTD at 33, its reasoning is sound and should be adopted here.

This Circuit applies a 3-step test in evaluating whether a statute that regulates speech violates the First Amendment. *Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011). First, courts "determin[e] whether the First Amendment protects the speech at issue." *Id.* Second, courts "identify[] the nature of the forum." *Id.* And finally, courts "assess[] whether the District's justifications for restricting [the] speech satisfy the requisite standard." *Id.* Even if the First Amendment protects the speech at issue, *but see Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 342 (1974)) (recognizing that the First Amendment permits restrictions on defamatory speech), and assuming that the statute covers public forums, the D.C. Wiretap Statute is constitutional because it is content neutral and satisfies intermediate scrutiny. Alternatively, if the Court finds that it is content based, the statute is still constitutional because it satisfies strict scrutiny.

### A. The Tortious Purpose Exception Is Content Neutral.

First, the tortious purpose exception is content neutral. *Democracy Partners II*, 453 F. Supp. 3d at 288 (acknowledging the defendants' concession that "courts analyzing interception statutes have generally considered them content-neutral and thus subject to intermediate scrutiny") (citing *Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 603 (7th Cir. 2012) and *Martin v. Gross*, 340 F. Supp. 3d 87, 105 (D. Mass. 2018), *aff'd sub nom.*, *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020)). By its plain text, the tortious purpose exception does not discriminate based on viewpoints or topics, it instead prohibits interceptions for particular purposes. D.C. Code § 23-542(b)(3).

Defendants resist this holding in *Democracy Partners II* by arguing that, unlike the tortious purpose invoked in *Democracy Partners II* (breach of fiduciary duty), the tortious purposes here (false light and defamation), "are torts that require publication." Doe MTD at 35.[3] This argument makes no difference. Although the torts of false light and defamation may "require publication," the cause of action for wiretapping does not. *See* D.C. Code § 23-542(a)(1). Nor does the tortious purpose exception, as it only requires that the interceptor have a particular tortious purpose, not that such a tort is ultimately carried out. *See Council on Am.-Islamic Relations Action Network, Inc. (CAIR VI) v. Gaubatz*, 123 F. Supp. 3d 83, 86 (D.D.C. 2015) ("Whether the tortious purpose exception to the one-party consent rule is applicable rightfully depends on the interceptor's intentions *ex ante*—not on whether, *ex post*, any injury actually occurred."); *see also Democracy Partners II*, 453 F. Supp. 3d at 286 (allowing a claim for wiretapping with the tortious purpose of breaching a fiduciary duty to proceed, even though a standalone breach of fiduciary duty claim was dismissed for lack of injury). To put it simply, the wiretapping claim here is not reliant on any publication at all and thus remains content neutral regardless of the underlying tortious purpose alleged.

Doe also adds a related theory, that the tortious purpose exception is content-based as applied to her because it is "entirely based on the content of what Doe, OMG and O'Keefe recorded and the content of what they published or intended to publish." Doe MTD at 35; *see also* Doe Reply at 21 (claiming that she "must have sought specific content, edited specific content and published specific content" for Mannina to make out a claim for wiretapping with

---

[3] Although Doe does not make clear whether her constitutional challenge to the tortious purpose exception is brought solely as-applied or whether she also believes it to be invalid facially, a facial challenge would fail because Doe makes no effort to show "whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quotation omitted).

defamatory or false light purpose). But this argument is little different from the one advanced by the *Democracy Partners II* defendants, that tortious purpose of breach of fiduciary duty in that matter was content-based because the underlying tort of breach of fiduciary duty "could only have occurred if [the defendant] intended to record and disclose oral communications containing confidential information," and "in order to determine whether an oral communication contains confidential information, its content must be analyzed and its substance distinguished from non-confidential information." *Democracy Partners II*, 453 F. Supp. 3d at 289. The *Democracy Partners II* court noted, however, that "a law is not considered content based simply because a court must look at the content of an oral or written statement in order to determine whether a rule of law applies." *Id*. So too here. To prevail on the D.C. Wiretap Statute claim, Mannina will have to prove that the Defendants' wiretapping was, at least in part, for the purpose of defamation or false light, but the fact that the Court (or the jury) may have to "look at the content of" what Defendants had the purpose of seeking, editing, and publishing to determine liability does not render the statute content-based. And, as noted above, it is simply false that the tortious purpose of defamation is based on "the content of what [defendants] published," Doe MTD at 35 or that defendants "edited specific content and published specific conduct," Doe Reply at 21, rather than "the interceptor's intentions *ex ante*." *CAIR VI*, 123 F. Supp. 3d at 86.

     For these reasons, the Court should hold that the tortious purpose exception is content-neutral, and therefore subject to intermediate scrutiny.

     **B.**     **The Tortious Purpose Exception Satisfies Intermediate Scrutiny.**

     Doe's primary line of attack is that the tortious purpose exemption is content-based (and consequently fails under strict scrutiny), but she also argues that "the law's tailoring does not even survive intermediate scrutiny." *See* Doe MTD at 36. She notes that *Democracy Partners II* upheld the provision under intermediate scrutiny but criticizes the holding as "all of three

sentences," which she claims is inappropriate for "a law that turns a legal audio recording into a felony or even, as here, a civil cause of action based strictly on the thoughts of the person making it . . . ." *Id*. at 35–36. She cites *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 468 (2007), as having "reject[ed] an intent-based test to distinguish between permissible and banned speech activities." *Id*. at 36. The difference is that the "speech activity" the Court was assessing in that case was political ads, *Wis. Right to Life*, 551 U.S. at 470 (opinion of Roberts, C.J.), that is, a category of speech that is already content-based, while the D.C. Wiretap Statute's tortious purpose exception applies to interceptions which, if they can be categorized as a "speech activity," are content neutral.

Doe's only argument directly addressing intermediate scrutiny tailoring is to assert that the fact that "[h]aving the wrong purpose while engaging in even innocuous audio recording makes interception a felony if the conversation is private" is "gibberish." *Id*. at 36. Not so. If the conversation at hand is "private," and a non-participant records it, that is not "innocuous," it is criminal wiretapping. *See* D.C. Code § 23-542(a)(1). In other words, Doe does not challenge the Wiretap Statute's general prohibition, which would have criminalized her conduct regardless of her purpose had she not been a participant in the conversation. Rather, the one-party consent provision, taken as a whole, permits her to record under circumstances she otherwise would not have been able to, namely, when she is a party to the communication. *See id*. § 23-542(b)(3). That it only forbids recording when done with a criminal or tortious purpose simply evidences that the statute is narrowly tailored to its purpose of deterring crimes and torts that wiretaps facilitate, while fully allowing for "innocuous" recordings that lack such purposes. *See Democracy Partners II*, 453 F. Supp. 3d at 289.

## C. Alternatively, the Tortious Purpose Exception Would Satisfy Strict Scrutiny.

Even if the Court considers the tortious purpose exception to be content-based and analyzed under strict scrutiny, it should still be upheld. Doe's argument that the provision would fail strict scrutiny because "the least restrictive means of remedying bona fide defamation and false light is to sue for defamation and false light," Doe MTD at 35, is a red herring. The D.C. Wiretap Statute deters wiretaps, and the tortious purpose exception deters wiretapping done for tortious purposes. *Cf. Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 965 n.3 (9th Cir. 1978) (citing legislative history of equivalent federal provision, which was added to address interceptions for "insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts"). Similarly, in reply Doe argues that while "one may sue someone for bona fide defamation and/or false light," "one may not sue someone for merely having that purpose while gathering information." Doe Reply at 21. But once again, Doe has deflected. The allegation is not that Doe was "gathering information," it is that she wiretapped Mannina. Compl. ¶ 69. So, if she is liable under the D.C. Wiretap Statute, it is not "for merely having" a certain purpose, but for committing a forbidden interception which is not protected by her one-party consent because of her tortious purpose. D.C. Code § 23-542(b)(3).

Properly understood, the tortious purpose exception should be upheld under strict scrutiny. The government's interest in preventing crime is compelling. *See Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013). Additionally, "individual privacy is an "interest[] of the highest order," *Bartnicki v. Vopper*, 532 U.S. 514, 518 (2001), and when citizens can be sure that their conversations will be kept in confidence, they will speak more freely, *see id*. at 532–33. Finally, for the reasons detailed above, the statute is narrowly tailored: the exception can be invoked only by citing a specific, relevant crime or tort.

## II. The Tortious Purpose Exception Does Not Implicate First Amendment Protections for Publication.

Doe also argues that Mannina's D.C. Wiretap Statute claim is unconstitutional because it "is trying to avoid the strict requirements for establishing a libel or defamation claim by bringing a claim that only requires recording for a defamatory or false light purpose—whether the resulting publication is defamatory or not." Doe MTD at 34 (quotations omitted). As noted above, a wiretapping violation for a particular tortious purpose does not require establishing that the defendant is liable for that underlying tort as well. *See CAIR VI*, 123 F. Supp. 3d 83, 86; *Democracy Partners II*, 453 F. Supp. 3d at 286. But that does not mean that a plaintiff need not do more than just allege a tortious purpose, a plaintiff must also *prove* the purpose. *See CAIR IV*, 31 F. Supp. 3d at 256–57 ("In order to prevail, [plaintiff] must show either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation in intercepting the conversation was to commit a criminal or tortious act.") (quotations omitted).

As this principle readily implies, a defendant can attack a wiretapping claim by showing that she did not have the asserted purpose, or even that she could not have had the asserted purpose. In *Democracy Partners II*, the plaintiffs' wiretapping claim originally asserted that defendants additionally had the tortious purposes of trespass and fraudulent misrepresentation, but the court rejected those theories as a matter of law, noting that both those asserted torts had taken place before any recordings were made. 453 F. Supp. 3d at 124. Then, as the case proceeded to trial, each side put on evidence and made arguments calculated to either buttress or attack the proposition that the defendants had the tortious purpose of breaching a fiduciary duty when committing the wiretapping at issue. *See, e.g.*, *Democracy Partners, LLC v. Project Veritas Action Fund*, CV 17-1047 (PLF), 2021 WL 4272606, at *2–3 (D.D.C. Sept. 21, 2021) (ruling in limine on evidence asserted to be probative of defendants' claim that they lacked the

11

asserted tortious purpose); *Democracy Partners, LLC v. Project Veritas Action Fund*, CV 17-1047 (PLF), 2021 WL 4785853, at *3 (D.D.C. Oct. 14, 2021) (same).

Similarly, *CAIR IV* featured a wiretapping claim asserting the tortious purpose of breach of fiduciary duty. 31 F. Supp. 3d at 257. The court reasoned that this claim necessarily raised the question of whether that defendant had a fiduciary duty or not. *Id.*; *see also Democracy Partners, LLC v. Project Veritas Action Fund* (*Democracy Partners VI*), CV 17-1047 (PLF), 2025 WL 1088090, at *5–8 (D.D.C. Apr. 11, 2025) (ruling on the defendants' Rule 50 motion that argued, in part, that the evidence was insufficient to show that the defendant had a fiduciary duty to the plaintiff or that she acted with the purpose to breach that duty).

As applied here, if Doe shows that, as a matter of law, she could not have had the purpose of committing defamation or false light, the D.C. wiretapping claim should be dismissed pretrial; or should she demonstrate to the jury that Mannina has failed his burden of showing that her purpose was to commit those torts, she would win judgment in her favor. Crucially, this analysis would need to consider the actual elements of those underlying claims, including whatever First Amendment protections are necessarily implicated in assessing whether those torts would have been possible for Doe to have had as her purpose. On the other hand, if Mannina does show that Doe had a defamatory purpose, there is no First Amendment concern because defamatory speech lies outside the First Amendment's protection. *See Counterman*, 600 U.S. at 73 (citing *Gertz*, 418 U.S. at 340, 342).

Similarly, Doe's concern that Mannina may be seeking reputational damages for his D.C. Wiretap Statute claim does not jeopardize that statute under the First Amendment. *See* Doe MTD at 34. As Doe herself notes, a claim for damages based on harm to the plaintiff's reputation *independently* requires a plaintiff to "meet[] the constitutional requirements of a

12

defamation claim." *Id*. (quoting *Steele v. Isikoff*, 130 F. Supp. 2d 23, 29 (D.D.C. 2000)). This principle applies to wiretapping claims as well. *See Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz* (*CAIR I*), 793 F. Supp. 2d 311, 332 (D.D.C. 2011). In *CAIR I*, the court recognized that "where the plaintiff seeks damages for reputational or emotional harm allegedly flowing from the publication of protected speech," "regardless of how a claim is labeled, a plaintiff will often be required to satisfy the more onerous showing required to recover what are referred to loosely as 'publication damages.'" *Id*.

The upshot for this matter is simple: if Mannina seeks such damages, including for his D.C. Wiretap Statute claim, he will have to satisfy the First Amendment standard for defamation in order to get them. If he does not, then he will not. *See id*. (noting that the *CAIR I* plaintiffs "have expressly disclaimed damages for reputational or emotional harm"); *Democracy Partners v. Project Veritas Action Fund* (*Democracy Partners I*), 285 F. Supp. 3d 109, 125 (D.D.C. 2018) (noting that the *Democracy Partners I* plaintiffs "are not seeking damages based on the publication of the videos"). "Where the underlying conduct is not expressive, and the damages sought are non-reputational, there is no First Amendment issue." *Democracy Partners I*, 285 F. Supp. 3d at 126; *see also Democracy Partners VI*, CV 17-1047, 2025 WL 1088090, at *4 ("[T]here is no suggestion that [the D.C. Wiretap Statute is] not generally applicable or that [it] single[s] out the press specifically."). Whether or not any such non-reputational damages are available, and in what amounts, is a factual question that will determine what, if anything, Mannina can recover, not grounds under the First Amendment to overturn the statute. *See Democracy Partners I*, 285 F. Supp. 3d at 125–26; *see also* Pl.'s Opp. at 26 (arguing that Mannina sustained non-reputational damages, citing the loss of his employment); *id*. at 31 n.20 (citing the $230 he paid on the two dates); Compl. ¶ 72 (seeking "actual damages, to include any

profits made by the violations, along with punitive damages and attorneys' fees and costs"); D.C. Code § 23-554(a)(2)(A)–(C) (authorizing "actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000 whichever is higher," "punitive damages," and "reasonable attorney's fee and other litigation costs reasonably incurred").

## CONCLUSION

For these reasons, the Court should hold that D.C. Code § 23-542(b)(3) is constitutional under the First Amendment.

Dated:  February 9, 2026.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Marcus D. Ireland*
BRENDAN HEATH [1619960]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 702-2910
Email:  marcus.ireland@dc.gov

*Counsel for the District of Columbia*