UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIE MANNINA,<br><br>   Plaintiff,<br><br>  v.<br><br>O'KEEFE MEDIA GROUP, *et al.*,<br><br>   Defendants. | Civil Action No. 1:25-CV-01524-APM |

**THE DISTRICT OF COLUMBIA'S REPLY IN SUPPORT
OF ITS NOTICE OF INTERVENTION UNDER RULE 5.1 TO DEFEND
THE CONSTITUTIONALITY OF A DISTRICT OF COLUMBIA STATUTE**

The District of Columbia (the District) filed an intervention brief under Rule 5.1 in this matter to defend the constitutionality of D.C. Code § 23-542(b)(3), the tortious purpose exception for one-party consent to wiretapping, which Defendant Heidi Doe[1] argues is unconstitutional in seeking for Plaintiff Jamie Mannina's wiretapping claim to be dismissed. In her response to the District, Doe claims that the tortious purpose exception is content based and fails either intermediate scrutiny or strict scrutiny. She adds that the Court should decline to impose First Amendment-based restrictions to the extent Mannina may seek reputation-based damages for his wiretapping claim and should rather consider the statute unsalvageably unconstitutional. She concludes that application of the tortious purpose exception to her in this suit amounts to subjecting her to a "thought crime." In each respect, however, Doe is wrong. The Court should uphold the statute.

---

[1] Defendants James O'Keefe and the O'Keefe Media Group (OMG) also argue that the tortious purpose exception is unconstitutional. As Plaintiff's motion to strike these Defendants' joinder with Doe's argument remains pending, this brief refers only to Doe.

**ARGUMENT**

I.     <u>**The Tortious Purpose Exception Is Content Neutral.**</u>

As the District noted in its opening brief, D.C. Code § 23-542(b)(3) is content neutral because it relies not on the viewpoint, topic, or content of a wiretap, but rather the purpose of the wiretapper. *See* D.C. Not. Intervention Under R. 5.1 to Def. Constitutionality of a D.C. Statute (D.C. Not.) [52] at 6 (citing *Democracy Partners v. Project Veritas Action Fund* (*Democracy Partners II*), 453 F. Supp. 3d 261, 288 (D.D.C. 2020)). Doe argues *Democracy Partners II* is inapplicable, because the underlying tort in that case (breach of fiduciary duty) required only that the defendant intended to disclose private information, while the torts of false light or defamation require not merely disclosure but publication. *See* Def. Heidi Doe's Resp. D.C. Not. Intervention (Def.'s Resp.) [56] at 3–4. But once again she compares apples to oranges—having a tortious purpose is not the same as committing a tort. And as the District noted, invoking the tortious purpose exception for a wiretapping claim does not require that tort to have been actually committed. *See* D.C. Not. at 7 (citing *Democracy Partners II*, 453 F. Supp. 3d at 286 and *Council on Am. Islamic Relations Action Network, Inc. v. Gaubatz*, 123 F. Supp. 3d 83, 86 (D.D.C. 2015)). Nor is *Democracy Partners II* distinguishable, as there was never any factual dispute that the intercepted material in *Democracy Partners II* was intended to be publicized. *See* 453 F. Supp. 3d at 268–71.

At bottom, the tortious purpose turns not on the specific content of the communication that was intercepted, but the purpose of the person doing the intercepting. Doe characterizes the exception as amounting to "protect[ing] a journalist who records with the intent to exonerate a subject, yet labels a journalist a felon if they record with the intent to expose the same subject." Def.'s Resp. at 5. The statute does not make this distinction. If an interceptor has a non-criminal

2

and non-tortious intent to "expose" a subject, that would be lawful. D.C. Code § 23-542(b)(3). Equally, it is not beyond the scope of the statute that certain other tortious or criminal purposes, such as to commit a breach of fiduciary duty, might well be compatible with an interceptor's subjective "intent to exonerate a subject." Def.'s Resp. at 5. In sum, the statute is not a "targeted restriction of the newsgathering process" dependent on "the substance of [] investigative goals," *id.*, but rather permits non-criminal and non-tortious interceptions and restricts those that have such purposes—whether in the course of newsgathering or not.

**II.     The Tortious Purpose Exception Satisfies Intermediate Scrutiny.**

Next, Doe disputes whether the tortious purpose exception satisfies intermediate scrutiny. "A statute survives intermediate scrutiny if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 495–96 (2025) (quotations omitted). In essence, Doe accuses the District of being unable to "reconcile" the purposes of protecting privacy and preventing crimes and torts. *See* Def.'s Resp. at 5.

In her view, "[o]ne-party consent recognizes that a communication to a known party is generally not private." *Id.* For this, she cites *United States v. White*, 401 U.S. 745 (1971), a case concluding that the government's warrantless use of information intercepted by informants does not violate the Fourth Amendment. Def.'s Resp. at 5; *see* 401 U.S. at 751. Doe extrapolates that, "[u]nder *White*, once a person speaks to another, they assume the risk that the listener is a government agent or is recording the conversation," and "[t]he District's theory that conversational privacy is somehow restored by the interceptor's intent is a logical fallacy that contradicts *White*." Def.'s Resp. at 5–6.

It is not clear what Doe means by conversational privacy being "restored" in this context.

3

The wiretap statute operates to prevent interceptions, which helps to protect privacy, and the exceptions clearly lay out the limits of such privacy interests: A person may generally expect that their conversations will not be recorded by a unknown third party, *see* D.C. Code § 23-542(a), but cannot expect privacy to the extent the government may be lawfully intercepting the communication, *see id*. § 23-542(b)(2) (exception for government use of informants); *see also id*. § 23-547 (laying out procedure for court approval of government wiretaps), nor can they expect privacy to the extent their conversational counterpart may be recording the communication for a private, lawful (*i.e.*, a non-criminal and non-tortious) purpose, *see id*. § 23-542(b)(3). As such, the statute protects a privacy interest insofar as people generally may not mind if a conversational partner records a conversation for a benign purpose but would be concerned if that same conversation was recorded with a criminal or tortious motive.

Finally, Doe claims that the statute is underinclusive as to "the interest of preventing crimes or torts" as applied to defamation or false light, Def.'s Resp. at 6–7 (quoting *TikTok Inc. v. Garland*, 122 F.4th 930, 965 (D.C. Cir. 2024)), arguing that "because reputation is distinct from privacy, the wiretapping law does not fairly protect one from reputational harm," *id*. at 7. The tortious purpose exception clearly offers more than "ineffective or remote support"—which is the applicable standard for underinclusiveness, *see TikTok*, 122 F.4th at 965—for deterring defamation or false light, or, more specifically, defamation or false light relying on or facilitated by interceptions. Fewer interceptions committed for the purpose of defamation would logically lead to less instances of defamation occurring, or at least defamations that are fueled by intercepted private communications. In this way, the purposes of the statute complement one another and independently support the statute, rather than rendering it "underinclusive," and the statutes survives intermediate scrutiny.

4

### III.  Alternatively, the Tortious Purpose Exception Satisfies Strict Scrutiny.

On strict scrutiny, Doe recognizes that preventing crimes and torts and protecting individual privacy are compelling interests. Def.'s Resp. at 7.[2] Instead, Doe focuses her fire on the tailoring, which she describes as "both protecting one's reputation and privacy." *Id*. But the wiretapping statute's tortious purpose exception cannot fairly be characterized as aimed at protecting one's "reputation" writ large. It is only intended to protect "reputation" insofar as one potential tortious purpose with which one may commit an interception is defamation (or false light). As Doe rightly points out, there are also independent causes of action for defamation and false light, which Mannina has invoked. *See id*. at 8; Compl. ¶¶ 46–57. But these causes of action address only what statement may have been made after the interception at issue took place, not the interception itself. It is entirely possible for an interception to have been committed with a non-tortious, non-criminal purpose, but the interceptor then makes a defamatory statement using the interception—in this case the interceptor is liable for defamation but not wiretapping. Or, an interceptor may have a nefarious, defamatory purpose, but their subsequent statement does not amount to defamation—in this case the interceptor is liable for wiretapping but not defamation. The cause of action for defamation protects against acts of defamation and the cause of action for wiretapping protects against wiretapping, including wiretapping with one-party consent but a tortious or criminal purpose. As the District outlined above, to the extent the wiretapping statute also protects "reputation," it does so by hindering actors who intend to commit interceptions with the ultimate purpose or goal of defamation. "It

---

2  Doe caveats her concession by positing that "privacy does not even register under the Fourth Amendment" "when it comes to law enforcement and one-party consent." *Id*. at 7 n.4. While the District questions whether that is a correct statement of law, it is ultimately irrelevant for this matter, as neither Doe nor Mannina appears to have been acting "under color of law," D.C. Code § 23-542(b)(2), while they were on their dates.

bears emphasis that, under the strict-scrutiny standard, a restriction must be narrowly tailored, not perfectly tailored." *TikTok*, 122 F.4th at 961 (quoting *In re Sealed Case*, 77 F.4th 815, 830–31 (D.C. Cir. 2023)).  The tortious purpose exception easily meets this requirement.

## IV. Doe's First Amendment Concerns Regarding Reputation-Based Damages Are Protected by Independent Standards of Proof for Such Damages.

Finally, Doe highlights again her concerns that a request for reputation-based damages for a wiretapping claim would "enable an unconstitutional end-run around the First Amendment's strictures on defamation."  Def.'s Resp. at 9.  She claims that "[b]y criminalizing the *intent* to cause reputational harm before a single word is ever published, the District has constructed a system of prophylactic censorship that sidesteps decades of First Amendment protections."  *Id*.  It bears repeating that the wiretapping statute does not criminalize intent, it criminalizes an act, the act of wiretapping.  *See* D.C. Code § 23-542(a).  To the extent a plaintiff seeks damages for reputational harm he or she believes to be caused by the act of wiretapping, the law plainly requires that plaintiff to meet a defamation-based standard to be awarded such damages, thus guaranteeing there is no First Amendment "sidestep."  *See* D.C. Not. at 12–13 (citing *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 332 (D.D.C. 2011)).  Doe herself clearly recognizes this principle.  *See* Def.'s Resp. at 9 (citing *Steele v. Isikoff*, 130 F. Supp. 2d 23, 29 (D.D.C. 2000)).  And it appears Mannina does as well.  *See* Pl. Resp. to D.C. Not. Intervention [55] (indicating that Mannina "joins with and adopts the arguments set forth by the District").

To the extent Doe's argument is that the entire wiretapping cause of action cannot stand at all under the First Amendment when reputation-based damages are sought, because it would amount to "a prophylactic tool of censorship," that argument is untethered to the statute and contradicted by her authority.  Def.'s Resp. at 9.  The First Amendment protections described by

6

*Steele*, as derived from *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), are not exclusive to causes of action for wiretapping. In *Hustler*, the cause of action at issue was intentional infliction of emotional distress. 485 U.S. at 48. The *Steele* causes of action were breach of contract, promissory estoppel, fraud, negligent misrepresentation, unjust enrichment, intentional infliction of emotional distress, and breach of fiduciary duty, and arose in the context of obtaining information for publication. 130 F. Supp. 2d at 25–27. The *Steele* court did not analyze any of these causes of action individually to determine if they would amount to "censorship" to the extent reputational damages were sought. *Id*. at 28–29. Rather, it applied the *Hustler* standard to all of them and held that reputational damages would be barred but that "complete dismissal on First Amendment grounds would be inappropriate because the character of Steele's damages is not definite at this early stage." *Id*. at 29.[3]

It is difficult to reconcile Doe's theory that the mere *potential* for reputational damages under the wiretapping cause of action here amounts to intolerable First Amendment censorship, mandating outright dismissal on constitutional grounds, with the fact that other non-defamation torts like intentional infliction of emotional distress, breach of contract, or breach of fiduciary duty could have proceeded in *Steele*. Just as the *Steele* court did, this Court will be fully and adequately protecting the First Amendment if it holds Mannina to the appropriate First Amendment standard for reputational damages (to the extent he seeks them at all) under his wiretapping claim. *See id*.[4] Put another way, Doe and the other Defendants are perfectly free to

---

[3]   The *Steele* court ultimately dismissed the complaint in the same opinion, because none of the causes of action stated a valid claim for relief on their own terms. *See id*. at 30–37.

[4]   The question of what particular standard Mannina would have to meet is in dispute. Doe argues that Mannina "is at least a limited-purpose public figure or public official for purposes of this controversy," Def. Heidi Doe's Mot. Dismiss Pl.'s First Am. Compl. [40] at 11, while Mannina argues that he "should not be treated as a limited-purpose public figure" or alternatively

argue that reputational damages against them are barred because Mannina cannot meet the *Hustler* standard, *regardless* of what cause of action Mannina has pled.  But that argument does not implicate the constitutionality of the cause of action itself.  No "workaround," "narrowing construction," or "convincing argument," Def.'s Resp. at 9–10, is necessary; the statute is fully constitutional as it is.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's Notice, the Court should hold that D.C. Code § 23-542(b)(3) is constitutional under the First Amendment.

Dated:  March 4, 2026.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Brendan Heath*
BRENDAN HEATH [1619960]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 442-9880
(202) 769-6157 (cell)
brendan.heath@dc.gov

*Counsel for the District of Columbia*

---

that his pleadings meet the threshold for actual malice, Pl.'s Mem. Opp. Def. Heidi Doe's Mot. Dismiss Pl.'s First Am. Compl. [50] at 14, 16.  The District takes no position on these issues.