# EXHIBIT "1"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

        Plaintiff,

v.

PROJECT VERITAS and
MARISA L. JORGE,

        Defendants.

_____/

Case No. 17-cv-13292
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case arises from Defendant Marisa L. Jorge's infiltration of Plaintiff AFT Michigan, while working on behalf of Defendant Project Veritas. Jorge undisputedly used a false identity to secure an internship at AFT Michigan, which enabled her to access and copy internal documents and record conversations. The following counts in AFT Michigan's Second Amended Complaint remain pending: (1) fraud; (2) trespass; (3) wiretapping in violation of Michigan law, Mich. Comp. Laws § 750.539 *et seq.*; (5) conspiracy; (7) breach of duty of loyalty;[1] and (8) violations of the federal wiretap statute, 18 U.S.C. § 2511.

---

[1] In Count Seven, titled "breach of duty of loyalty," AFT Michigan alleged that Jorge breached a duty of loyalty and a fiduciary duty. (*See* ECF No. 72 at PageID.2050-51.) On Defendants' motion to dismiss, the Court addressed the duty of loyalty and fiduciary duty as independent, found no fiduciary duty in this

The matter is presently before the Court on AFT Michigan's motion for summary judgment as to these remaining claims, which has been fully briefed.[2] (ECF Nos. 233, 248, 250.)  It also is before the Court on Defendants' motion for summary judgment as to AFT Michigan's wiretapping claims and its breach of duty of loyalty claim, which also is fully briefed.  (ECF No. 242, 249, 251.)  The Court finds that oral argument is not needed to address the parties' motions.  It, therefore, is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.      Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is

---

context, and dismissed that "claim."  (*See* ECF No. 104 at PageID.2539-40.) Looking back, the Court should not have treated the two as distinct.  The duty of loyalty is simply one prong of a fiduciary's duties.  "A breach of fiduciary duty claim requires that the plaintiff reasonably imposed faith, *confidence*, and *trust* in the fiduciary."  *Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*, 466 F.3d 508, 516 (6th Cir. 2006) (quoting *Rose v. Nat'l Auction Grp., Inc.*, 646 N.W.2d 455, 464 (2001)) (emphasis added).  As discussed *infra*, the Court finds a genuine issue of material fact as to whether AFT Michigan imposed confidence and trust in Jorge.

[2] AFT Michigan does not address its conspiracy claim in the briefing.  As AFT Michigan does not argue why it is entitled to summary judgment on this claim, the Court will not decide here whether it is.  Of course, civil conspiracy is not a claim on its own; it depends on proof of "a separate, actionable tort."  *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (quotation marks and citation omitted).

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

These standards "do not change" with the filing of cross-motions for summary judgment. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (quoting *Taft Broad.*, 929 F.2d at 248).

## II. Factual Background

### A. The Parties

AFT Michigan is the state affiliate of the American Federation of Teachers, AFL-CIO. (ECF No. 233-1 at PageID.7469 ¶ 2.) More than 90 local unions, representing more than 35,000 individuals working mostly for Michigan school districts, colleges, and universities, are affiliated with AFT Michigan. (*Id.*) AFT Michigan is headquartered in Detroit, Michigan, where its officers and staff work. (*Id.* ¶ 4.) Access to the building is limited to those granted permission. (*Id.*) Visitors must be individually admitted. (*Id.*)

Project Veritas is a newsgathering organization, which primarily relies on secret recordings and undercover investigations. Jorge was a paid investigative journalist for Project Veritas from June 2016 until July 2021. (ECF No. 242-1 at PageID.7674 ¶ 2; ECF No. 233-2 at PageID.7474.) In that role, Jorge was instructed to build "cover legends"—i.e., fake identities—tailored to the specific investigations in which she was involved. (ECF No. 233-2 at PageID.7471.) During or before Spring 2017, Project Veritas assigned Jorge the topic of teachers' unions. (*Id.* at PageID.7474.) Jorge decided to focus on AFT Michigan. (*Id.*)

### B. Jorge's Internship with AFT Michigan

Posing as "Marissa Perez," Jorge pursued an internship with AFT Michigan in Spring 2017, by first introducing herself to the president of an affiliated local

4

union.  (ECF No. 233-1 at PageID.7469 ¶ 6; ECF No. 233-2 at PageID.7476.)  This individual recommended Jorge to David Dobbie, Assistant to the President of AFT Michigan.  (ECF No. 4-1 at PageID.78 ¶ 3.)  Jorge falsely identified herself to the union president and to AFT Michigan as a sophomore at the University of Michigan, studying elementary education, with the goal of becoming a second-grade teacher.  (ECF No. 233-2 at 7475-76.)  She indicated that she was interested in supporting public sector labor organizations, particularly those working in public education.  (ECF No. 233-1 at PageID.7570 ¶ 7.)  AFT Michigan hired Jorge as an unpaid intern based on her representations.  (ECF No. 233-1 at PageID.7570 ¶ 7.)

No one at AFT Michigan asked Jorge for legal documentation, a school transcript, or a resume before hiring her or during her internship.  (ECF No. 242-8 at PageID.7731-32.)  According to Dobbie, it was not part of AFT Michigan's procedures.  (*Id*.; *see also* ECF No. 4-1 at PageID.78.)

Jorge was assigned to work directly with Nate Walker, AFT Michigan's policy analyst.  (ECF No. 242-8 at PageID.7732.)  Walker served as Jorges' full-time supervisor, although Dobbie also gave her specific assignments to attend certain meetings.  (ECF 4-1 at PageID.79 ¶ 6.)  Walker testified that he discussed confidentiality with Jorge in the context of explaining that some of the things she would be doing and things she might hear at meetings were not "to be broadly

5

disclosed"—meaning, shared outside the organization. (ECF No. 242-8 at PageID.7729.) A memo Jorge sent to Project Veritas, discussing her attempt to gain access to AFT Michigan documents, reflects her understanding that certain information was confidential. (*See* ECF No. 196-6 at PageID.6225.) In the memo, Jorge informed a Project Veritas "Fields Op Director" that she was trying to get documents in a sexting case through an AFT Michigan staff member. (ECF No. 196-6 at PageID.6225.) Jorge further shared that she was "going to continue to cultivate a more in depth relationship with [the staff member]," and that he had not obtained the documents yet because "he has to go through a locked filing cabinet in the back of the office." (*Id.*)

Jorge, on the other hand, states in an affidavit that she "was never instructed by anyone at AFT [Michigan] that any of [her] work there would be or was confidential" or "that any information garnered during [her] internship at AFT that was unrelated to my work there was confidential." (ECF No. 242-1 at PageID.7675 ¶¶ 4, 6.)

During the internship, Jorge asked to accompany Walker to collective bargaining negotiations being conducted at a school, where she was exposed to the internal bargaining decisions made by employees AFT Michigan represents. (ECF No. 4-3 at PageID.85 ¶ 9.) Jorge also accompanied Walker to meetings with education and community groups and attended internal meetings regarding several

6

projects. (*Id.* at PageID.86 ¶ 12.) She was given access to a database containing proprietary information with respect to charter schools in Michigan. (*Id.* ¶ 9.)

Jorge was not given a key to access AFT Michigan. (ECF No. 242-6 at PageID.7712) She was given limited access to certain private and proprietary information and was only occasionally authorized to access some computer terminals. (ECF No. 4-1 at PageID.79 ¶ 7.)

Nevertheless, Jorge was observed sitting in the offices of AFT Michigan staff members without authorization, using computers she was not authorized to use, and accessing files she was not authorized to access. (ECF No. 4-1 at PageID.79 ¶ 7; ECF No. 4-2 at PageID.82 ¶¶ 6-8.) On several occasions, Charles Lobaito, AFT Michigan's Assistant to the President for Finances, saw Jorge working in the office unsupervised. (ECF No. 4-2 at PageID.82 ¶ 5.) On one of those occasions, Lobaito witnessed Jorge in the office of Staff Representative John Mickles, handling files in a file drawer. (*Id.* ¶ 7.) Lobaito then heard Jorge walk to the room where AFT Michigan's copy equipment is located. (*Id.*) Jorge admits to photographing AFT Michigan's physical files. (ECF No. 242-1 at PageID.7677 ¶ 16.) She specifically admits to photographing a complaint against a teacher for sexual misconduct. (*Id.*)

Jorge obtained access to Walker's computer without his knowledge or consent and admittedly forwarded information stored on a private partition of the

7

hard drive of his computer to herself.  (ECF No. 4-3 at PageID.86 ¶ 14; ECF No. 242-1 at PageID.7677 ¶ 13.)  Jorge carried a camera and recording device throughout her internship at AFT Michigan, and she secretly recorded most of the conversations and meetings to which she was a "party."  (ECF No. 242-6 at PageID.7712-13.)  One of those meetings was a bargaining strategy session at Eastern Michigan University on August 26, 2017.  (ECF No. 242-1 at PageID.7676 ¶ 10.)  The purpose of the meeting was to discuss the union's strategy to encourage the university to modify its bargaining positions and reach agreement with the union.  AFT Michigan staff representative Sonya Alvarado invited Jorge to the meeting to observe, only.

Jorge also recorded her meeting with Mickles in his office in August 2017. (ECF No. 242-1 at PageID.7675-76 ¶ 9.)  During the meeting, Mickles took a call on speakerphone from AFT Michigan's counsel to discuss the status of a pending matter.  After the call, Jorge intensively questioned Mickles to gain information about the matter.[3]

Throughout her internship with AFT Michigan, Jorge provided a daily report to Project Veritas. (ECF No. 242-6 at PageID.7712.)  Her objectives during the internship were those of Project Veritas.  (ECF No. 233-2 at PageID.7480.)  The internship concluded on September 1, although Jorge returned to AFT Michigan's

---

[3] Jorge's recordings have been uploaded to the record.  (*See* ECF No. 239.)

headquarters one more time to meet Mickles on September 15—a meeting she recorded and Project Veritas subsequently used in publication.

## III. Applicable Law & Analysis

### A. Fraud against Jorge (Count One)

AFT Michigan claims that Jorge committed fraud when she provided false information to obtain her internship. To prove this claim under Michigan law, AFT Michigan must show:

> "(1) [t]hat [Jorge] made a material representation; (2) that it was false; (3) that when [s]he made it [s]he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [s]he made it with the intention that it should be acted upon by [AFT Michigan]; (5) that [AFT Michigan] acted in reliance upon it; and (6) that [it] thereby suffered injury."

*Baltrusaitis v. UAW*, 133 F.4th 678, 686 (6th Cir. 2025) (quoting *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567 (Mich. 2012)). There is no dispute that AFT Michigan proves the first five elements: Jorge acknowledges that she misrepresented facts concerning her identity, education, interests, and beliefs to secure an internship at AFT Michigan, and that AFT Michigan relied on these misrepresentations when deciding to hire her. The only dispute is whether AFT Michigan can prove an injury resulting from Jorge's fraud.

AFT Michigan's damages were the focus of a previous motion filed by Defendants. (ECF No. 211.) In their motion, Defendants sought to disqualify AFT Michigan's damages expert, Nitin V. Paranjpe, Ph.D., who has identified three

categories of damages to AFT Michigan as a result of Defendants' infiltration of the organization. (*See* ECF No. 211-2.) The first category reflects the value of the time AFT Michigan employees spent with Jorge during her internship, resulting in "lost opportunity" ("opportunity costs"). The second category reflects the time AFT Michigan employees spent responding to the infiltration, which includes identifying the exact materials and information accessed by Jorge, meeting with AFT Michigan staff, leadership, and legal counsel, and conducting tasks related to this litigation. The third category reflects the cost of a forensic investigation to assess the documents and information Jorge accessed.

The Court denied Defendants' motion to disqualify Dr. Paranjpe but qualified his testimony in some respects. (*See* ECF Nos. 226, 237.) "The Court conclude[d] that Dr. Paranjpe may testify as to the value of the time AFT Michigan employees spent with Jorge *provided* there is evidence that these interactions diverted the employees from work benefiting their employer." (ECF No. 237 at PageID.7576.) The Court further concluded that the cost of the forensic investigation and the value of the time spent by AFT Michigan employees responding to the infiltration, to the extent independent of the time spent on this litigation, were recoverable. (ECF No. 226 at PageID.7220.) The Court ultimately did not decide whether staff time related to the litigation is a recoverable damage, as AFT Michigan indicated it would only possibly seek a recovery for that time as

10

part of a post-judgment motion for costs.. (*See* ECF No. 237 at PageID.7577 (quoting ECF No. 228 at PageID.7242).)

In response to AFT Michigan's summary judgment motion, Defendants contend that there is no evidence that any time spent by an AFT Michigan employee with Jorge diverted that employee from benefiting AFT Michigan. The Court finds from the testimony Defendants cite that their understanding of diversion (i.e., preventing the staff member from getting his or her work done for AFT Michigan) is narrower than what the Court intended (i.e., spending time with Jorge that could have been used, instead, to benefit AFT Michigan). Regardless, it ultimately is AFT Michigan's burden to present evidence that its staff members' interactions with Jorge focused their attention away from work benefiting their employer. AFT Michigan offers no proof.

Nevertheless, this is not the only injury AFT Michigan claims. Nor is it the only injury the Court has found to be recoverable. There is evidence in the record to support these other injuries. *See supra*.

For these reasons, the Court concludes that AFT Michigan is entitled to summary judgment on its fraud claim against Jorge, at least as to liability. The precise damages suffered by AFT Michigan still need to be assessed.

11

### B. Trespass against Jorge (Count Two)

In Michigan, "[a] trespass is an unauthorized invasion upon the private property of another." *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W.2d 607, 613 (Mich. Ct. App. 2000) (citing *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 302 (Mich. Ct. App. 1995)). "[C]onsent is an affirmative defense to a claim of trespass." *Id.* (citing *Weisswasser v. Chernick*, 242 N.W.2d 576, 578 (Mich. Ct. App. 1976)). However, consent obtained through "artifice and dishonesty" "as to the nature and quality of the invasion" is void. *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 690, 693 (Mich. Ct. App. 2010) (quotation marks and citations omitted).

AFT Michigan demonstrates that Jorge gained access to its premises by deceiving its staff as to her identity and purpose. She also accessed AFT Michigan files and the offices and computers of staff members without consent, in excess of the consent given, and/or through consent fraudulently obtained. Defendants do not dispute this proof.

What they do dispute is AFT Michigan's ability to prove damages resulting from Jorge's trespass because it did not suffer a permanent or irreparable injury. Damages are not a necessary element of the claim, however. While "[i]t is well settled that a plaintiff who establishes the tort of trespass may recover money damages from the trespassing defendants . . . once the tort of trespass has been

12

established, 'the plaintiff is presumptively entitled to at least nominal damages.'" *Wiggins v. City of Burton*, 805 N.W.2d 517, 534 (Mich. Ct. App. 2011) (*Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 222 (Mich Ct. App. 1999)); *see also Waterfront Petroleum Terminal Co. v. Detroit Bulk Storage, Inc.*, 556 F. Supp. 3d 748, 757-58 (E.D. Mich. 2021) (citing *Adams*, 602 N.W.2d at 219; Am. Law of Torts § 23:37).

Therefore, AFT Michigan is entitled to summary judgment on its trespass claim against Jorge.

### C. Breach of Duty of Loyalty against Jorge (Count Seven)

AFT Michigan claims that Jorge owed it a duty of loyalty, and that she breached that duty by accessing information outside her authorization and unrelated to her assignment and by securing and copying information not generally available to the public for the purpose of sharing that information with Project Veritas. Defendants maintain that Jorge did not owe AFT Michigan a duty of loyalty, and that AFT Michigan suffered no damages as a result of any alleged breach.

"Fundamental to the existence of an agency relationship is the right to control the conduct of the agent . . . with respect to matters entrusted to him." *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998). An agent owes his or her principal a duty of good

faith, loyalty, and fair dealing." *Nedschroef Detroit Corp. v. Bemas Enter. LLC*, 106 F. Supp. 3d 874, 882 (E.D. Mich. 2015) (quoting *H.J. Tucker & Assoc., Inc. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 188 (1999)). The Michigan courts have held that these duties prohibit an agent from "act[ing] for himself at his principal's expense during the course of his agency." *Id*. (quoting *Cent. Cartage Co. v. Fewless*, 591 N.W.2d 422, 426 (Mich. Ct. App. 1998)). "The law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal." *Id*. at 883 (quoting *Sweeney & Moore v. Chapman*, 294 N.W.2d 711, 712-13 (Mich. 1940)).

The Court finds the following decisions from the District Court for the District of Columbia instructive here: *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341-42 (D.D.C. 2011) (Kollar-Kotelly, J.) ("*CAIR I*"); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237 (2014) (*CAIR II*); *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261 (2020) (Huvelle, J.) (*Democracy Partners I*); and *Democracy Partners v. Project Veritas Action Fund*, No. 17-1047, 2025 WL 1088090 (Apr. 11, 2025) (Friedman, J.) ("*Democracy Partners II*"). Those cases arose from substantially similar kinds of undercover operations: the defendants included employees working for organizations seeking to uncover unfavorable intel about the plaintiffs to publicly expose; the employees

14

made false representations to secure unpaid internships with the plaintiffs, so they could surreptitiously record conversations and copy documents which they would not otherwise have had access to; and they shared the materials with their primary employers with the intent that the materials would be used against the plaintiffs.

> Like the defendant-interns in those cases, Jorge

> secured her internship only by making a number of affirmatively false statements and omitting material information about her background, interests, and intentions with the specific intention of inducing [AFT Michigan] to repose a measure of trust and confidence in her and as a result of the trust and confidence reposed in her, she was afforded access to confidential, proprietary, and privileged materials as well as non-public areas of [AFT Michigan's] offices.

*Democracy Partners II*, 453 F. Supp. 3d at 280 (internal quotation marks and citations omitted); *see also CAIR I*, 793 F. Supp. 2d at 341. As the court reasoned in *Democracy Partners II* when denying the defendants' motion for judgment as a matter of law as to the jury verdict on the plaintiff's breach of fiduciary duty claim:

> While [affirmative false statements and the omission of material information] may not be sufficient on [their] own [to find a fiduciary duty], [they] allow[] for reasonable inferences that [Jorge] and her colleagues at Project Veritas understood that [Jorge] could not use her true identity if she and Project Veritas wanted to gain the confidence of [AFT Michigan] and obtain access to information suitable for publication (some of it potentially confidential).

2025 WL 1088090, at *6. Also like *Democracy Partners* and *CAIR*, there is a genuine issue of material fact as to whether Jorge was instructed or implicitly

15

understood that conversations she heard and materials she accessed while interning at AFT Michigan were covered by a duty of confidentiality or non-disclosure.

AFT Michigan did not present Jorge with a confidentiality agreement, and it did not have an official policy regarding confidentiality. However, Walker testified that he discussed the need for confidentiality with her. Access to AFT Michigan's offices were controlled, and Jorge recorded meetings she knew were restricted to invited individuals. The memo Jorge sent to her Field Op Supervisor at Project Veritas reflected her understanding that she was accessing information AFT Michigan deemed confidential. Secretly accessing staff members' offices and computers when they were not there and rifling through file cabinets outside of regular work hours "would permit a reasonable jury to find that [Jorge] intended to learn and share private information[.]" *Democracy Partners*, 2025 WL 1088090, at *8. Further, a jury listening to the recorded conversation between Jorge and Mickles could conclude that, in order for her to gain the information she sought, she knew she had to gain AFT Michigan's trust.

There is no dispute that Jorge's purpose in making the recordings and copying documents was to provide them to Project Veritas. Such a purpose would be inconsistent with, and a breach of, any duty of non-disclosure. As discussed earlier, AFT Michigan has evidence to show that it was injured by Jorge's asserted breach.

16

For these reasons, the Court finds a genuine issue of material fact precluding summary judgment in favor of either side.

### D. Wiretapping in Violation of Michigan and Federal Law against Defendants (Counts Three and Eight)

AFT Michigan claims that Jorge, on behalf of Project Veritas, violated Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539c (Count Three), and the federal wiretap statute, 18 U.S.C. § 2511 (Count Eight), when she secretly recorded conversations accessed through her internship. For purposes of the pending motions, AFT Michigan focuses on recordings of: (i) the conversation in Mickles' office in August 2017; and (ii) the EMU collective bargaining meeting.

The federal wiretap statute imposes civil liability on a person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a). The statute excludes from this prohibition communications to which the person

> is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d).

Michigan's eavesdropping statute prohibits "[a]ny person who is present or who is not present during a private conversation" from "willfully us[ing] any

17

device to eavesdrop upon the conversation without the consent of all parties thereto, or . . . knowingly aid[ing], employ[ing] or procur[ing] another person to do the same[.]" Mich. Comp. Laws § 750.539c. The term "eavesdrop" is defined as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." *Id.* § 750.539a(2). Each of these statutes is a "one-party consent" law, meaning that "a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on." *Fisher v. Perron*, 30 F.4th 289, 294-95 (6th Cir. 2022) (quoting *Sullivan v. Gray*, 324 N.W.2d 58, 60 (Mich. Ct. App. 1982)).

Defendants contend that Jorge did not violate Michigan's eavesdropping statute because she was a party to any conversation she recorded. Distinguishing individuals who actively participate in a conversation and those who only observe, AFT Michigan argues that Jorge was not a "party" to the communications at issue. AFT Michigan maintains that a mere observer is not "involved in the conversation[.]" *Fisher*, 30 F.4th at 294-95 (quoting *Sullivan*, 324 N.W.2d at 60). Jorge was invited to the EMU meeting only to observe, and she was only an "observer" of the telephone conversation between Mickles and AFT Michigan's counsel.

The Court concludes that Defendants' interpretation of the statute is correct. As other district judges have observed, courts considering "the scope of the one-

18

party consent rule have concluded that 'a person whose presence is apparent in the midst of a communication is considered a party, whether or not that person actually participates verbally in the communication.'" *CAIR II*, 31 F. Supp. 3d at 255 (quoting *United States v. Brown*, No. 10-100-BAJ-SCR, 2011 WL 576901, at *3 (M.D. La. Feb. 9, 2011)); *see also Democracy Partners I*, 453 F. Supp. 3d at 286 (quoting *CAIR II*, 31 F. Supp. 3d at 25) (explaining that "the critical legal question is not whether [the individual] was 'visible' but whether her 'presence was apparent in the midst of a communication'"); *Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354, 1361 (S.D. Fla. 2005) (holding that a "party to the communication" is a person "who is present when the oral communication is uttered and need not directly participate in the conversation," in comparison to "an unseen auditor"); *Grandbouche v. Adams*, 529 F. Supp. 545, 548 (D. Colo. 1982) (citing *United States v. White*, 401 U.S. 745 (1971)) (determining that a person who holds a conversation in the presence of a third party does not have an expectation of privacy in the communication); *Williams v. United Airlines, Inc.*, No. C 19-02988, 2021 WL 77932, at *3 (N.D. Cal. Jan. 8, 2021) (concluding that the recording of a person who participates in the communication or whose presence, at the very least was known, does not violate the wiretapping statute). Jorge was not "an unseen auditor" when she recorded communications at the EMU meeting and in Mickles' office.

19

The Court therefore concludes that Defendants are entitled to summary judgment as to AFT Michigan's claim under Michigan's wiretapping statute. The federal wiretapping statute, however, does not exclude a participant from the conversation from its coverage if the individual intercepts the communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). AFT Michigan maintains that Jorge recorded the communications "as an extension of her trespassing, in furtherance of her breach of duty of loyalty, as part of her ongoing fraud against AFT Michigan[,] and as party of her conspiracy with Project Veritas." (ECF No. 233 at PageID.7464.)

Importantly, the federal wiretapping statute requires the interception to be "*for the purpose of* committing" the "criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d) (emphasis added). Courts have not uniformly construed this term, as one district judge recently observed:

> Some courts have held that committing a crime or tort must be either the actor's "primary motivation" or a "determinative factor" of the actor's decision to intercept the data. . . . Other courts use less stringent language. They find "that if the interceptor's plan for, or intended use of, the recording was criminal or tortious," the exception still applies."

*Martinez v. Mentavi, Inc.*, No. 1:25-cv-228, 2025 WL 3780427, at *3 (W.D. Mich. Oct. 9, 2025) (collecting cases). It does not appear from this Court's review that the Sixth Circuit has adopted either of these constructions or offered its own.

20

The Court agrees with Defendants that the alleged fraud and trespass were committed independent of Jorge's recordings. In other words, Jorge did not record the communications for the purpose of committing these tortious acts. On the other hand, no one disputes that Jorge's purpose in making the recordings was to provide them to individuals outside of AFT Michigan—specifically to Project Veritas—to benefit Project Veritas. Thus, if a reasonable jury found that Jorge owed a duty of loyalty to AFT Michigan and that she and Project Veritas engaged in a civil conspiracy for Jorge to breach that duty, the fact that she was a participant in the recorded communications would not preclude her liability under the federal wiretap statute. Having reached that conclusion, the Court must address Defendants' alternative basis for granting them summary judgment on this claim: that the tort-crime exception provision of the statute is facially unconstitutional or void for vagueness.

The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. A law regulating speech based on "its communicative content" is subject to "strict scrutiny," meaning the law is unconstitutional unless it is "narrowly tailored" to serve a "compelling state interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted). A content-based regulation on speech means that "the law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. (citations omitted). The question

21

is whether the law, " 'on its face' draws distinctions based on the message a speaker conveys." *Id*. (citations omitted). A law that is content neutral is subject to only intermediate scrutiny.

As the District Court for the District of Columbia observed in *Democracy Partners*, "courts analyzing interception statutes have generally considered them content-neutral and thus subject to intermediate scrutiny." 453 F. Supp. 3d at 289 (brackets omitted) (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 603 (7th Cir. 2012); *Martin v. Gross*, 340 F. Supp. 3d 87, 105 (D. Mass. 2018)). As the court further observed, the federal wiretap statute's criminal or tortious purpose limitation on single-party consent is content neutral. *Id*. While it may be necessary to consider the content of the communication intercepted to decide whether there was a criminal or tortious purpose, this does not render the provision content based. "A law is not considered 'content based' simply because a court must 'look at the content of an oral or written statement in order to determine whether a rule of law applies.'" *ACLU of Ill. v. Alvarez*, 679 F.3d at 603 (quoting *Hill v. Colorado*, 530 U.S. 703, 721 (2000)).

A content-neutral law will be sustained "if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *TikTok Inc. v. Garland*, 604 U.S. 57, 67 (2025) (quoting *Turner Broad. Sys., Inc. v. FCC*,

22

520 U.S. 180, 189 (1997)). The Supreme Court has expressly stated that "[p]rivacy of communication is an important interest." *Bartnicki v. Vopper*, 532 U.S. 514, 532 (2001). Protecting this interest "encourage[s] the uninhibited exchange of ideas and information among private parties," and "the fear of public disclosure of private conversations might well have a chilling effect on private speech." *Id*. at 532-33. There also is a significant government interest to deter criminal and tortious acts facilitated by secretly recording communications. Defendants do not maintain that the statute is not narrowly tailored, and it leaves open alternative means for them to gather news.

The crime-tort exception provision also is not unconstitutionally vague. Under the Fifth Amendment, a statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). In the First Amendment context, the Supreme Court has "permit[ed] plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Id*. (citations omitted). "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Id*. (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

23

A statute is unconstitutionally vague only if its terms are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The crime-tort exception is not unconstitutionally vague. *See Democracy Partners I*, 453 F. Supp. 3d at 290 (citing *United States v. Edelson*, 581 F.2d 1290, (7th Cir. 1978)); *see also Boddie v. Am. Broad. Cos.*, 881 F.2d 267, 272 n.5 (6th Cir. 1989) (finding previously included term "injurious" vague but noting "that "[t]he terms 'tortious' and 'criminal' are plain enough"). Defendants, in fact, are not actually contending that the terms themselves are vague. Thus, the Court rejects Defendants' constitutional challenges to the federal wiretapping statute.

In short, the Court concludes that Defendants are entitled to summary judgment on AFT Michigan's claim under Michigan's eavesdropping statute. As there are genuine issues of material fact with respect to whether Jorge breached her duty of loyalty to AFT Michigan and, thus whether the crime-tort exception applies, the Court is denying summary judgment to AFT Michigan and Defendants on the federal wiretap claim.

## IV.     Conclusion

In summary, the Court holds that AFT Michigan is entitled to summary judgment on its trespass and fraud claims (Counts One and Two), although

24

damages will need to be addressed separately.  Defendants are entitled to summary judgment on AFT Michigan's wiretapping claim under Michigan law (Count Three).  Genuine issues of material fact preclude summary judgment to either party on AFT Michigan's claims alleging a breach of duty of loyalty (Count Seven) and federal wiretapping (Count Eight).

Accordingly,

**IT IS ORDERED** that the parties' cross-motions for summary judgment (ECF Nos. 233 and 242) are **GRANTED IN PART AND DENIED IN PART**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 30, 2026