EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMIE MANNINA,

Plaintiff,

v. CASE NO.: 25-CV-01524-APM

O'KEEFE MEDIA GROUP,
et al.,

Defendants.
_______________________________/

**SEALED DECLARATION OF MEGAN HELLER ("HEIDI DOE")**

I, Heidi Doe (a pseudonym), declare as follows:

1. **Personal Background:** I am the individual defendant referred to in this case as "Heidi Doe." My true name is Megan Heller, which has been provided to the Court under seal. I am a 31-year-old female U.S. citizen residing in Crestview, Florida. I am employed as a family nurse practitioner at [redacted], located in Pace, Florida. I have worked in this field for approximately two years. My professional reputation is important to me, and I have always conducted myself lawfully and ethically in my occupation.

2. **Role in OMG Investigation:** I am not a salaried employee of O'Keefe Media Group (OMG) or any formal news outlet. In approximately August of 2022, I became aware that Project Veritas was seeking citizen volunteers to assist with investigative journalism projects. I was motivated initially by a nurse who had gone undercover and exposed healthcare fraud during COVID. With a strong sense of justice, courage, and a natural

interest in the betterment and health of humanity, I found that undercover journalism in light of exposing corruption has given me the opportunity to take action that moves American society towards truth much more efficiently than posting on a social media platform how I feel about the lack of transparency regarding public matters. Exposing fraud and malevolence that impacts the health and wellbeing of the American public is something I am passionate about and thankful to have the opportunity for. Because of this, I reached out to OMG and underwent training with OMG's "American Swiper" lead director and participated in conference calls, learning techniques of undercover journalism.

3. **Investigation Background.** In or around January of 2025, I found Jamie Mannina's background on a dating app; I suggested that given his background and charismatic personality, he might be an individual of possible interest with newsworthy information. I came up with the idea to film him as a potential subject leading to important information for the public. I agreed to help OMG by attempting to meet Mr. Mannina and record any newsworthy conversations. I was not paid any upfront fee for this investigation. My understanding with OMG was that if I successfully obtained valuable information and if it led to a published story, OMG might reimburse my expenses or provide a token compensation. Ultimately, after the story was published, I received $7,000.00 from OMG as an appreciation for my contribution. I have not received any other payments.

4. **The Investigation.** Posing as Heidi Thompson (a nickname and alternate identity I used), I connected with Mr. Mannina via a dating application in or about January 2025. We chatted and later met in person in January at a seafood restaurant in DC. Throughout our interactions, I presented myself as a politically liberal nurse who might be romantically interested in him, as alleged in the Complaint. I did not reveal any affiliation with OMG or

my true purpose. Consistent with OMG's guidance, I covertly recorded our in-person meetings using a button camera and hidden microphone on my person. Mr. Mannina made a number of statements during our conversations, including remarks about discussions with former generals about ways to remove former President Trump from office and the "deep state," which were of interest to OMG's investigation.

5. **Providing Sources of Information to OMG.** After collecting these recordings and making observational notes, I provided all this raw information to OMG's team. I collaborated with OMG in the sense that I answered their questions about context, but I had no role in editing the final video. My involvement ceased once I turned over the materials. OMG published the video and story on or about January or February 2025. I was not credited by name in any publication; my face was blurred or not clearly shown in any footage released.

6. **Expectation of Anonymity.** From the beginning, it was understood between me and OMG that my identity would be kept confidential. I used an alias during the operation specifically to protect myself. I was aware of the controversial nature of these stings and was frankly afraid of the potential backlash if my name became public. OMG agreed that they would not publicly reveal my identity. In OMG's communications and internal references, I was often just called "Heidi" or by a code name. I trusted that my involvement would largely remain behind the scenes. I did not anticipate being named as a defendant in any lawsuit; I was genuinely attempting to assist what I believed was legitimate journalism.

7. **Current Status and Fears.** After the OMG story on Mr. Mannina ran, there was some online speculation by observers about who the "undercover woman" might be, but my name was not made public. I have kept a low profile and have avoided discussing this matter with anyone beyond a very small circle of trust. However, I am aware that Plaintiff

filed this lawsuit and that I am identified pseudonymously as "Heidi Doe." I have been extremely anxious that my real identity could be exposed through this litigation.

8. **Professional and Safety Concerns in the Mental Health Field.** I work in a family medicine and addiction recovery clinic where the prevailing culture is mixed with liberal and conservative ideologies. If it became known that I participated in an OMG undercover sting, I strongly believe I would be ostracized and harassed by patients and/or staff, and perhaps terminated from my job. I have seen colleagues face negative consequences for far less contentious efforts. I truly fear that my career would be in jeopardy if my name is tied to this OMG journalism operation in the public domain.

However, more so than job security, I am concerned about my physical safety should my identity be publicly revealed given the nature of clientele receiving addiction medicine. The patient population we care for have severe mental illnesses and have, or currently do, pose threats to themselves or the public. Many of our patients are on court-ordered treatment due to the severity of their mental illnesses. There have been instances where other staff have needed protection from patients attempting to follow them home, threatening to cause them harm due to inability to regulate their anger after conversations over scheduling appointments. Our clinic has panic buttons underneath the desks and handheld keychain sirens that we keep on our person in case we are endangered by one of our patients and require immediate help. When treating patients with unpredictable behavior and severe emotional instability, it concerns me greatly should they discover my involvement in undercover journalism, which is something I keep strictly out of my career as a medical provider. Should our clientele discover my identity as an undercover journalist

in this case, I do not believe many of them could process the information safely or without causing me or others on their healthcare team harm.

9. **Prior Incidents of Harassment.** After Mark Zaid posted pictures of me on his X account and asked the public to try and identify me, I immediately deleted my social media accounts and stopped answering unknown callers on my phone. Despite deleting these accounts, I received telegram messages from people I met through my time with OMG asking me if I was doing undercover work, which I assumed were due to the post from Mark Zaid. I was afraid of the nature of these odd messages and deleted my telegram account after this. These prying messages felt threatening in nature. Shortly after Mark Zaid's post, which may or may not have been a coincidence, my laptop was hacked and all the data was deleted and unrecovered. This situation felt extremely violating and has left me on edge ever since given the sequential nature of the incidents.

10. **Harassment Against Undercover Journalists.** I also recall that during the time I was training with OMG, instructors mentioned that prior undercover journalists had faced reprisals. Specifically, they told us about when James was raided by the FBI and when a journalist known as "Magnolia" was publicly identified and ridiculed on public television. She told me that she was unable to work for months after this incident and struggled to financially support herself. This instilled in me a strong understanding that anonymity was crucial for safety.

11. **Mental and Emotional State.** The prospect of losing my anonymity has caused me severe distress. I have had trouble sleeping, nightmares, and have experienced panic attacks at the thought of being named publicly. I am not a public figure; I never sought fame nor would I ever want public attention in such a way. Being dragged into open court and public

controversy is my worst nightmare coming true. I am sincerely afraid for my well-being if my identity is revealed. This is not just personal embarrassment. It is a fear of harassment, potential violence, and life-altering consequences. After Mr. Zaid posted pictures of me on his X account and accused me of breaking the law, I saw many comments of men attacking my character and my appearance. It was psychologically traumatizing for me at the time and I had very few people to go to for support given the limited circle of trust that I have for social support in this delicate matter. Something I rarely disclose, but in this instance I believe is best to share, I have a medical history of PTSD after a kidnapping and rape with asphyxiation attempt which occurred in my twenties; thus the nature of such a public attack presented by Mr. Zaid and the swarm of male hatred towards me rattled me. I deleted all of my social media accounts immediately after Mr. Zaid did this as I was afraid that some of these commentators would discover my identity or try to message me. Male aggression and confrontation is a trigger for me which induces panic attacks. I still have not redownloaded or logged into any social media accounts. I have completely lost my social media community of friends, some of which are out of the country and social media platforms were the only way we could communicate, which furthers the overall sense of isolation in processing this overwhelming situation.

12. **No Prejudice to Plaintiff.** I want to note that I am not seeking to hide from the Plaintiff or avoid accountability. Through my attorneys, I have disclosed my identity to Plaintiff's counsel under the protection of the Court's order. I am willing to answer for my actions in this litigation under the pseudonym. I simply ask that my name or identifying information not be made public, because once it's out, it cannot be taken back, and the threats I fear will likely materialize.

13. **Conclusion.** I respectfully ask the Court to allow me to remain "Heidi Doe" in this case. This pseudonym has thus far allowed the case to proceed without issue. Preserving it will protect me from harms that I believe will come if my real name appears publicly. Everything I have stated in this declaration is truthful to the best of my knowledge. I make these statements under penalty of perjury, understanding the gravity of this request and this litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of November, 2025, in Crestview, FL.

By: *Megan Heller*
Megan Heller