UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMIE MANNINA,

Plaintiff,

v. CASE NO.: 25-CV-01524-APM

O'KEEFE MEDIA GROUP,
et al.,

Defendants.
________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR RECONSIDERATION AS TO COUNTS III, IV, AND V**

Mr. Mannina insists that *Democracy Partners* changed nothing and, in any event, the D.C. Circuit's recent binding precedent on this Court matters only after discovery. Neither proposition conforms with the opinion itself. Contrary to Mannina's view, the D.C. Circuit did not merely reduce an award after trial. Instead, it held that actual damages proximately caused by the alleged misrepresentation are an element of D.C. fraud, rejected the dissent's proposal to preserve liability through nominal damages, and held that where protected expression contributes to the claimed loss, ordinary causation is constitutionally insufficient. *Democracy Partners, LLC v. O'Keefe*, No. 25-7080, slip op. at 20–25 (D.C. Cir. Aug. 21, 2026).

Critically, those holdings directly undermine this Court's July 29 Order's stated basis for treating causation and damages as matters that could await discovery. The question now is whether the First Amended Complaint ("FAC" or "Complaint") itself plausibly alleges a cognizable fraud injury and actual damages caused by the alleged misrepresentation under the governing constitutional rules, not whether discovery might eventually supply what Mannina's pleadings do not.

The reasoning and operative rules in *Democracy Partners* apply now. This Court's July 29 Order treated causation and damages as matters that could await discovery. *Democracy Partners* establishes that actual damages proximately caused by the misrepresentation are an element of D.C. fraud and that, where protected expression contributes to the asserted loss, the First Amendment imposes a heightened causation standard. Those are not standards to be postponed until summary judgment; they define what Mr. Mannina must plausibly plead at the outset.

Therefore, the July 29 Order warrants reconsideration of the foundational legal framework governing Counts III through V, rather than another round of litigation under a framework the Circuit has now rejected or materially qualified.

## I. ***Democracy Partners* supplies governing standards now, not merely damages instructions for later.**

The Opposition's central characterization about *Democracy Partners* is plainly incorrect: the Circuit did not address only "damages rather than liability." ECF No. 73 (hereinafter "Opp.") at 7. Responding to the dissent's proposal to preserve fraud liability and award nominal damages, the majority held that "[p]roof of actual damages stemming from the defendants' misrepresentations was an element" of the fraud claim. *Democracy Partners*, slip op. at 25 (citing *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)). Failure to satisfy that element required reversal of the verdict. *Id.* The distinction Mr. Mannina advocates here is precisely the distinction the *Democracy Partners* majority expressly rejected.

Nor did the Circuit merely preserve the existing district court analysis. It expressly rejected a lax reading of *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), reflected in the longstanding DC precedent *Steele v. Isikoff*, 130 F. Supp. 2d 23, 29 (D.D.C. 2000). This errant view held that economic losses such as lost employment escape publication safeguards because they are labeled non-reputational. *Democracy Partners*, slip op. at 15–17. Through *Democracy Partners*, this

doctrinal error was cured. The legal interest invaded, not the damages label, controls. And where protected speech contributes to the claimed loss, ordinary substantial factor causation cannot substitute for the constitutional precision required by *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). *Democracy Partners*, slip op. at 20–24. These are binding legal rules and precedent, not passing features of a particular transcript or exhibit.

More importantly, those rules displace reasoning this Court expressly relied upon in forming its earlier opinion. In denying dismissal of Count III, the Court quoted the district court decision in *Democracy Partners* for the propositions that proximate cause is "generally a factual issue" and that it would be "premature" to preclude Mannina from attempting to prove that the alleged fraud caused his employment, reputational, and emotional injuries. ECF No. 60 at 28 (quoting *Democracy Partners*, 285 F. Supp. 3d at 117–18). The Circuit has now supplied the qualification missing from that analysis: where protected expression contributes to the claimed loss, ordinary substantial factor causation is constitutionally insufficient, and the plaintiff must establish with precision that unlawful conduct was the sole, pervasive, or dominant force behind the injury. *Democracy Partners*, slip op. at 20–24. And because actual damages satisfying that standard are an element of fraud, failure on causation defeats liability itself. *Id.* at 25. The specific proposition the Order relied upon—that causation of Mannina's employment, reputational, and emotional injuries could simply be deferred because proximate cause is ordinarily factual—can no longer stand unqualified after the Circuit held that, where protected expression contributes to the loss, constitutional causation governs and failure to satisfy it defeats an element of fraud.

The different procedural posture between the cases does not upend the significance of *Democracy Partners*. Defendants do not ask the Court to import a Rule 50 evidentiary burden into Rule 12(b)(6). They ask it to assess the pleaded claims under the legal standard the D.C. Circuit

has now clarified. The Court must accept well-pleaded facts and reasonable inferences in Mannina's favor; it need not accept a legal conclusion merely because he calls it his "interpretation of the facts." ECF No. 60 at 9–10; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). That distinction matters now, not merely at summary judgment. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. And the D.C. Circuit has long recognized that summary disposition has particular importance where First Amendment rights are implicated because the burden of defending speech litigation can itself chill protected expression. *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). The Circuit likewise routinely resolves threshold speech protections under Rule 12(b)(6). *See, e.g.*, *Farah v. Esquire Magazine, Inc.*, 736 F.3d 528 (D.C. Cir. 2013); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015). If the Complaint does not properly state Counts III through V under the governing constitutional rules clarified in *Democracy Partners*, discovery is not a reason to postpone that determination.

Rule 54(b) permits revision of this Order. Mr. Mannina's authorities discouraging repetitive motions do not require the Court to disregard an intervening appellate decision rejecting a material premise of the core legal theory put before it. Nor does Defendants' agreement not to seek a discovery stay concede the sufficiency of Counts III through V. Opp. 2 n.3. Counts I and II remain pending. An agreement between parties about scheduling is not agreement about liability.

## II. Private figure status does not eliminate constitutional limits on publication liability.

Mannina devotes much of his Opposition to a proposition this motion does not contest: the Court has not required him to satisfy the public figure actual malice standard. Opp. 7–9. But a different fault standard does not eliminate the First Amendment inquiry. *Democracy Partners* itself recognizes constitutional protection in actions brought by private plaintiffs involving speech on

matters of public concern. *Democracy Partners*, slip op. at 14 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)). Such plaintiffs do not recover without fault, and a private figure plaintiff suing a media defendant over speech of public concern bears the burden of proving falsity. *Gertz*, 418 U.S. at 347; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776–77 (1986). Private figure status changes the applicable fault burden. It does not eliminate constitutional protection for speech on matters of public concern. Mannina still bears the burden of establishing falsity under *Hepps*, and his use of a different tort label cannot enlarge the recovery available for the same publication injury beyond the constitutional limits governing that injury.

The opening motion did not ask the Court to reclassify Mr. Mannina as a public figure. It asked what injury his fraud claim seeks to redress. Mannina now expressly disclaims a contractual or proprietary right. Opp. 8. He identifies no promise by Defendants to keep his statements confidential or refrain from publication. Those omissions do not mean that fraud can arise only from a contract or property transfer. They mean that *Cohen*'s independent right rationale cannot be formed out of whole cloth. Publication-based reputational injury remains subject to applicable First Amendment safeguards, whatever the plaintiff's status.

This reinforcement of constitutional safeguards directly undermines a premise of the July 29 Order. The Court acknowledged that a plaintiff may not "recover defamation-type damages under non-reputational tort claims" without satisfying the constitutional safeguards governing publication but concluded there was "no concern here that Plaintiff is attempting an 'end-run around First Amendment strictures'" because Mannina had not been deemed a public figure required to plead actual malice. ECF No. 60 at 27. *Democracy Partners* illustrates why that reasoning no longer resolves the issue. The Circuit held that the threshold inquiry is not simply which fault standard applies to the plaintiff, but what legal interest the non-defamation claim seeks

to vindicate**.** *Democracy Partners*, slip op. at 15–17. Economic loss does not become independent of publication merely because it is pursued through fraud rather than defamation. Mannina's private figure status may affect the fault standard governing Counts I and II; it does not permit Count III to recover for the same publication-based reputational injury free of the constitutional rules applicable to that injury.

Nothing in *Democracy Partners* disputes the Order's general proposition that generally applicable laws apply to journalists. The intervening decision instead identifies the constitutional limit on that proposition: such laws cannot be used to impose liability for protected publication without identifying the independent legal interest invaded and applying the required causation safeguards. The question is therefore not whether fraud law applies to journalists, but what injury Count III may lawfully redress. That is a pleading question before it becomes a proof question. Mannina bears the burden at the Rule 12(b)(6) stage of alleging facts—not conclusions—that plausibly establish each element of fraud, including a cognizable injury and actual damages proximately caused by reliance on the alleged misrepresentation. *Iqbal*, 556 U.S. at 678–79; *Dresser*, 465 A.2d at 839; *Democracy Partners*, slip op. at 25. Those essential elements must appear in the complaint itself; discovery cannot be used to supply a legally cognizable injury or causal theory that the pleading does not contain.

That same requirement to identify a cognizable legal injury also answers Mannina's reliance on Maass, a journalist in the Democracy Partners investigation. *Democracy Partners* did not treat deception itself as the dividing line between protected and unprotected newsgathering. It looked to whether the deception invaded an established legal interest. The Circuit accepted the unlawfulness of Maass's office infiltration and treated the resulting footage as unprotected. However, it separately treated the recordings that were made in public settings of Scott Foval, a

political consultant, as lawfully acquired despite the elaborate false identities and deception used to obtain the conversations. Mannina correctly notes that Robert Creamer, a plaintiff in *Democracy Partners*, did not assert that the Foval encounters themselves constituted fraud. Opp. 11. That might limit the analogy but does not make the distinction irrelevant. The D.C. Circuit did not hold that every deceptive interview is lawful. Neither did it hold that an allegation of deception establishes actionable fraud and strips the resulting speech of constitutional protection.

This distinction matters because the facts Mannina pleads resemble the Foval encounters in the respects the Circuit found legally significant: a participant using a false identity met the subject in public and recorded statements the subject voluntarily made, without entering private premises, or obtaining confidential business information, or undertaking a confidentiality obligation. That does not establish that the ruse was nonfraudulent; it does defeat the premise that deception alone makes the resulting recording unlawfully acquired and strips the reporting of constitutional protection. Mannina's allegations concern participant recordings during restaurant conversations, not access to a private office or breach of a confidentiality undertaking. FAC ¶¶22–30. Those allegations require analysis of the particular wrong and injury claimed. Mr. Mannina cannot substitute his fraud label for the serious legal analysis *Democracy Partners* requires.

## III. The alleged injuries must be separated: a restaurant bill cannot carry the entire publication claim.

The Complaint identifies disclosure and publication as the mechanisms producing the employment and reputational injuries. It alleges that James O'Keefe supplied information and footage to the Department of Defense, that Booz Allen learned of the footage, and that Mannina was removed and terminated. FAC ¶¶32-33. It separately alleges injury from the later public videos and articles. *Id.* ¶¶35-45, 50, 56.

Mannina nevertheless aggregates the restaurant expenses, mental distress, lost employment, and reputational injury in a single fraud damages allegation. *Id.* ¶62. His Opposition quotes only the portion of his Complaint addressing mental distress and declares that it establishes injury distinct from publication. Opp. 10. The quoted language does not itself separate the causes of that distress. Assuming distress caused by the deception itself is cognizable and sufficiently alleged, it still must be distinguished from distress caused by what Defendants published. Repeating the same injury under another count does not change its source.

The approximately $230 in restaurant expenses presents a different question. FAC ¶¶27, 30, 62. Even assuming those expenditures support a direct reliance loss, that would not establish an entitlement to recover the entire downstream employment and reputational loss as fraud damages. *See Democracy Partners*, slip op. at 20–25; *Claiborne Hardware Co.*, 458 U.S. at 918, 926, 933–34; *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522–23 (4th Cir. 1999). A viable expense claim is not a license to recover for protected speech.

*Democracy Partners* does not categorically bar damages associated with publication: it expressly allowed that damages caused by Maass's unlawfully acquired footage could be recovered. Slip op. at 18–20. Its rule is that unlawful acquisition must actually be established and cannot justify recovery for harm attributable to protected portions of the reporting. When protected and unprotected conduct contribute to a loss, the plaintiff must satisfy the heightened causation rule the Circuit adopted, not merely show that an initial deception contributed somewhere in the sequence. *Id.* at 20–24.

Mannina's refusal to concede that any speech is protected does not make those rules optional. Opp. 10, 12. Neither does the survival of Counts I and II establish that every recording, statement, or consequence alleged in the Complaint is actionable. Where identifying protected

speech or separating its effects requires a factual record, that application may await the record. The governing limits should not.

This defect is apparent from the face of the Complaint; resolving it requires no factfinding. In D.C., fraud requires actual damages proximately caused by reliance on the misrepresentation. *Democracy Partners*, slip op. at 25; *Dresser*, 465 A.2d at 839. Paragraph 62 aggregates restaurant expenses, mental distress, job loss, and reputational injury, but the Complaint's factual allegations identify disclosure and publication as the mechanisms producing the substantial employment and reputational losses. FAC ¶¶32-45, 50, 56, 62. The only specifically pleaded out-of-pocket consequence of reliance itself is approximately $230 in meal expenses. FAC ¶¶27, 30, 62.

Rule 12(b)(6) does not permit discovery to search for a missing element of a claim. Rather, the pleaded facts must themselves plausibly establish each element. *Iqbal*, 556 U.S. at 678–79. Because the Complaint does not plausibly connect its substantial consequential losses to a cognizable fraud injury independent of the subsequent disclosure and publication, Count III cannot proceed on the broad damages theory sustained by the Order. If the Court concludes that the meal expenditures plausibly constitute a discrete reliance injury sufficient to preserve some portion of Count III, the claim should at minimum be confined to injuries proximately caused by that fraud and exclude employment, reputational, or other losses attributable to constitutionally protected reporting. At minimum, those publication-derived losses must be removed from Count III now rather than left for an undifferentiated causation inquiry after discovery.

**IV. The Order's basis for allowing Count IV no longer holds.**

Count IV survived because Count III survived and because the Court, quoting the district court *Democracy Partners* decision, concluded that it could not yet determine whether Defendants' coordinated conduct was lawful or unlawful. ECF No. 60 at 29 ("Discovery will bear out those

facts"). Now, the Circuit's holding in *Democracy Partners* changes the substantive premise for that inquiry. Coordination among undercover journalists to employ deception, record conversations, and publish a story does not itself establish actionable fraud. Rather, what matters is whether Defendants agreed to invade an independently protected legal interest through actionable fraud and whether fraud caused cognizable damages. *Democracy Partners*, slip op.at 15-25.

Once the publication-derived injury is separated from Count III, the Complaint alleges agreement to use a false persona, elicit statements, record them, and publish selected excerpts. FAC ¶¶64–67. Those allegations may describe coordinated newsgathering; they do not, without the missing fraud injury and causation, plausibly establish an agreement to commit a completed fraud. *Twombly* requires more than conduct consistent with lawful coordination of newsgathering. 550 U.S. at 556–57.

**V. Count V requires a legally sufficient purpose theory, not merely a plan to investigate and publish.**

The Circuit's wiretap holding was narrow: the asserted fiduciary duty predicate failed because Maass was not a fiduciary. *Democracy Partners*, slip op. at 25–29. Defendants do not contend that the Circuit invalidated the purpose provisions. But the holding demonstrates why it is essential that a plaintiff identify a legally sufficient predicate. Calling a purpose tortious does not make it so in *ipse dixit* fashion.

The procedural premise for the Court's prior treatment of Count V has also changed. The Court expressly withheld further consideration because *Democracy Partners* was then pending and stated that it would revisit the matter "likely at that point with guidance from the Circuit." ECF No. 60 at 31. The Circuit has now provided such guidance to this Court. And the Circuit resolved the wiretap claim on the narrow ground that the asserted predicate tort (breach of fiduciary duty)

could not qualify because Maass owed no such duty. *Democracy Partners*, slip op. at 25–29. That supplies a threshold inquiry this Court did not undertake before deferring the matter: before deciding whether the purpose provisions may constitutionally reach this journalism, the Court should determine whether the Complaint plausibly alleges a legally tortious purpose at all.

To the extent Mr. Mannina relies on the antecedent misrepresentations themselves, he confuses the means of obtaining a recording with its intended unlawful use. *Planned Parenthood Federation of America, Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022), requires a criminal or tortious purpose separate from the recording and existing when it is made. *Fseisi* applied that rule to a dating-app investigation and dismissed the federal claim where the misrepresentations were part of obtaining the recordings rather than an intended subsequent tortious use. *Fseisi v. O'Keefe Media Group*, No. 1:25-cv-2368, slip op. at 8–9 (E.D. Va. May 14, 2026). *Fseisi* is persuasive, not controlling authority, and its plaintiff disclaimed reliance on defamatory publication. Mannina has not. That difference requires examination of his actual asserted predicate. It does not eliminate the means-versus-purpose distinction.

Paragraph 71 of the Complaint identifies that predicate as an intended defamatory or false light publication. The relevant inquiry is whether a legally cognizable tortious use was intended when the interception occurred—not simply whether Defendants intended to record, edit, criticize, or embarrass. Under *United States v. Dale*, the impermissible purpose must be a primary motivation or determinative factor in the interception. 991 F.2d 819, 841–42 (D.C. Cir. 1993). Proof of a later controversy or adverse employment consequence does not, without more, establish that purpose.

That is the shortcoming in Mannina's reliance on the later video announcing his termination. Opp. 14 n.8. Even accepting his description, taking credit for a firing is not itself an

admission of a contemporaneous plan to manufacture a legally actionable falsehood. This distinction does not require weighing any evidence in Defendants' favor. It requires defining the proposition Mannina must establish. Subsequent conduct may bear on earlier intent; it cannot replace the required tortious purpose analysis.

The Complaint's nonconclusory allegations identify the object of the operation more plainly. Heller allegedly used the false persona to induce Mannina "into making remarks"; Defendants allegedly intended "to obtain information" for videos and articles; and the conspiracy allegedly sought to "secretly record his conversations and distribute selected excerpts and clips." FAC ¶¶59, 61, 65–66. Those allegations describe information-gathering followed by publication. The related deception was the alleged means of obtaining the conversation; it was not a tort Defendants intended to commit *with* the recording. And the only asserted future tort—defamation or false light—is pleaded in Paragraph 71 largely as a conclusion that the recordings "would be manipulated, edited and spliced together" to defame or place Mannina in a false light. The Complaint does not plead facts making it plausible that, when the interceptions occurred, Defendants' primary motivation was to commit an actionable defamation or false light tort rather than to obtain material for a critical story. Paragraph 71's allegation that later editing would be "designed" to defame or place Mannina in a false light largely states the legal conclusion on which Count V depends. An intent to investigate aggressively, edit selectively, sensationalize, or publish a hostile story is not itself an intent to commit a tort.

## Conclusion

The Court should grant reconsideration and the dismissal requested in the opening motions. Alternatively, it should revise its ruling to foreclose undifferentiated recovery for publication-based losses under Counts III and IV, apply the causation requirements affirmed in *Democracy*

*Partners* wherever protected speech contributes to the claimed injury, and confine Count V's asserted tortious purpose theory to an intended use that is legally tortious under the applicable substantive and constitutional standards.

Dated: October 6, 2026.

Respectfully submitted,

*/s/ Benjamin Barr*
Benjamin Barr*
Bar No. IL0133
BARR & KLEIN PLLC
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 595-4671
ben@barrklein.com

*/s/ Stephen Klein*
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
Telephone / Fax: (202) 804-6676
steve@barrklein.com

*Counsel for Defendants*

* Admitted in Illinois and not a member of the D.C. Bar. Practicing law in the District of Columbia in federal courts pursuant to D.C. Court of Appeals Rule 49(c)(3).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2026, I caused the foregoing to be filed through the Court's CM/ECF system, which served a copy on all counsel of record.

*/s/ Stephen Klein*
Stephen R. Klein